Not Reported in F.Supp.2d                                                                                              Page 1
Not Reported in F.Supp.2d, 2000 WL 1576886 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

Yeboah v. U.S.S.D.N.Y.,2000.Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Augustina YEBOAH and Moses Yeboah, Plaintiffs,
v.
UNITED STATES OF AMERICA, Defendants.
**No. 99 Civ. 4923JFK THK.**

Oct. 20, 2000.

MEMORANDUM OPINION AND ORDER

KATZ, Magistrate J.

**\*1** This personal injury action, brought under the Federal Tort Claims Act, was referred to me for general pretrial supervision by the Honorable John F. Keenan, United States District Judge. The pretrial discovery in the action has been protracted and contentious. Presently before the Court is an application by the Government, the defendant in this action, for discovery sanctions. For the following reasons, the application is granted in part and denied in part.

BACKGROUND

This action arises out of an accident plaintiff had on July 7, 1998, on steps leading to a United States Post Office. She claims that the accident was the result of an unsafe condition for which the United States Postal Service is responsible. Plaintiff alleges that as the result of her accident she sustained various injuries and she seeks, *inter alia,* damages resulting from her purported inability to work for a period of time following the accident.

When the Government deposed plaintiff on April 4, 2000, she testified that she had not been employed at any time after July 7, 1998 because of a back injury and pain she suffered as a result of the accident in issue. She further testified that she was in the process of completing a nursing degree and that she had recently attended a "work fair" where she had submitted her resume'. Two days after plaintiff's deposition, the Government served a second discovery request asking plaintiff to produce: (1) her resume' and all applications for employment that she had submitted from July 7, 1998 to the present; (2) all correspondence she had sent or received in connection with any applications for employment; and (3) all documents reflecting any paid employment held by the plaintiff since the date of her accident.

Plaintiff failed to respond to the Government's second discovery request before the June 1, 2000 deadline for completion of discovery. In response to a letter to the Court regarding plaintiff's discovery failures, her attorney, Steven F. Goldman, represented that he had "no problem with providing the loose ends of discovery to defendant's counsel." *See* June 27, 2000 Letter from Steven F. Goldman to the Court. Nevertheless, having received no further information from plaintiff for several weeks, the Government again wrote to the Court seeking relief and, by Order dated July 21, 2000, the Court ordered plaintiff to produce, by no later than August 3, 2000, all documents and information responsive to defendant's second request for discovery. Plaintiff did not produce any additional information to the Government by the August 3, 2000 deadline. Defendant's counsel nevertheless made informal attempts to secure the information from plaintiff's counsel. In response to the Government's threat of seeking further Court intervention, on August 18, 2000, plaintiff's attorney submitted a "response" to the outstanding interrogatories and document demand, which bore his signature, rather than plaintiff's. His response indicated that plaintiff had not worked since July 7, 1998 and, citing to plaintiff's earlier deposition testimony, merely indicated that defendant's document requests were "not applicable." *See* Exhibit E to Letter-Application of Assistant United States Attorney Lisa R. Zornberg, dated September 22, 2000 ("Zornberg App."). Despite this blatantly inappropriate response to the outstanding discovery request and the Court's Order, defense counsel again informed plaintiff's counsel that if plaintiff promptly provided a proper response to the outstanding discovery request, she would forego seeking Court relief. Nevertheless, by mid-September plaintiff had not provided any further information, and defendant submitted the instant application for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sanctions. FN1

> FN1. The Joint Pretrial Order was to be filed on September 26, 2000. Judge Keenan subsequently extended the submission date to October 13, 2000.

*2 The saga does not end there. In response to defendant's application, plaintiff's attorney submitted a letter to the Court professing surprise at the Government's reaction, and characterizing the issue as the simple failure of the plaintiff to sign and certify the responses submitted on August 18th "because of time constraints" that prevented plaintiff from coming to her attorney's office. *See* Letter of Steven F. Goldman, dated September 23, 2000. Not only did counsel fail to recognize the implausibility of his excuse of "time constraints," in light of the fact that the responses were due by August 3, 2000 and, as of September 23, 2000, the proper responses had still not been submitted; he also failed to acknowledge that plaintiff had still not provided the documentation requested and ordered, *e.g.*, a copy of her resume' and any letters or related job applications she had submitted in an effort to seek employment after the accident in issue. The Court held a conference with counsel on September 29, 2000. At that conference, plaintiff's attorney reiterated that Ms. Yeboah had not worked since July 7, 1998 because of her alleged injuries, as he had stated in *his* August 18th response to defendant's discovery request. The Court directed plaintiff to submit an affidavit setting forth whether or not she had worked since July, 1998, any efforts she had made to secure employment since July, 1998, and to attach to the affidavit copies of her resume' and any job-related correspondence or applications.

The following week, the Court received an affidavit from Ms. Yeboah, in which she affirmed that she had worked at a job after her accident, for approximately one month, in September or October 1998. Ms. Yeboah also attached a copy of her resume, which she stated she had begun to circulate since her graduation from school in the Spring-Summer of 2000. She further affirmed that she had recently interviewed for a job at the N.Y.U. Medical Center and that she did not have any job applications or correspondence from job searches. *See* Plaintiff's Affidavit, dated October 2, 2000.

Defendant was understandably troubled by plaintiff's affidavit since, among other things, it directly contradicted counsel's previous representations, as well as plaintiff's earlier deposition testimony, that plaintiff had not worked at all since her accident. Moreover, although plaintiff had held some employment and had applied for other jobs, the affidavit failed to provide any detail and failed to include such information as proof of plaintiff's earnings (defendant had requested any W-2 statements reflecting earned income), the nature of plaintiff's job responsibilities, why she stopped working, the address of her previous employer, the employers to whom she circulated her resume and the type of employment she had been seeking, and whether she had any response or job offer as a result of her interview at the N.Y.U. Medical Center. To address these omissions and questions, the Court directed that plaintiff appear for a further deposition.

*3 Plaintiff's deposition was taken on October 11, 2000. At her deposition she testified that she had a W-2 statement from her post-accident employer, a copy of at least one job application she had submitted, an acknowledgment of her job application to the Mt. Sinai Medical Center, and copies of letters of reference she had submitted in connection with her recent post-accident job applications. Nevertheless, she not only failed to bring them with her to the deposition, but she also testified that her attorney had never asked her to look for such documentation. Moreover, plaintiff's testimony that she actually had a copy of one of her job applications contradicted her earlier statement in her October 2 affidavit, that she did not have any job applications related to positions for which she had applied. The day after Ms. Yeboah's deposition, her attorney submitted a letter stating that his client would search for and produce within a day or so her W-2 statement, a copy of her job application, her letters of reference, and a postcard from Mt. Sinai acknowledging her job application. Counsel also stated that despite Ms. Yeboah's deposition testimony to the contrary, he had asked her to search for these documents in advance of the deposition. *See* Letter of Steven F. Goldman, dated October 12, 2000. FN2

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-05158-LTS-MHD   Document 33-6   Filed 01/26/2007   Page 3 of 5

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 1576886 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

FN2. This summary relates solely to plaintiff's discovery derelictions with respect to defendant's second discovery request. Defendant's application for sanctions also sets forth other conduct which defendant claims is sanctionable, such as plaintiff's failure to respond to defendant's first discovery request for a period of more than seven months, and repeated attempts to depose plaintiff and her husband. Defendant was forced to secure Court Orders with respect to these failings as well. Although the Court substantially agrees with defendant's assertion that plaintiff's and her attorney's earlier conduct was unjustified and resulted in the expenditure of substantial time by counsel in order to secure the discovery to which defendant was entitled, these failings occurred earlier in the litigation and there is no evidence that once the Court issued its Orders compelling discovery, that they were disobeyed. Accordingly, the Court will only address the request for sanctions in the context of the failures to respond to the second request for discovery.

### DISCUSSION

Defendant seeks sanctions under Rule 37 of the Federal Rules of Civil Procedure and pursuant to the Court's inherent power to sanction bad-faith conduct. Specifically, defendant seeks an order precluding plaintiff from testifying at trial that her alleged injuries impaired her ability to work, and from seeking damages on that basis. In addition, defendant seeks the award of a monetary sanction against plaintiff's counsel.

There can be no question that defendant is entitled to a monetary sanction against plaintiff and/or her attorney. Rule 37(b)(2) explicitly provides that where a party fails to obey an order to provide discovery, "the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." *See also* Fed.R.Civ.P. 37(a)(4)(B) (requiring the party or the attorney of the party whose conduct necessitated a successful motion to compel disclosure to pay the moving party's reasonable expenses and attorney's fees); *Selletti v. Carey,* 173 F.3d 104, 110 (2d Cir.1999) (imposition of monetary sanction under Rule 37(b)(2) found to be appropriate where plaintiff failed to comply with discovery requirements); *Hoar v. Sara Lee Corp.,* 882 F.2d 682, 687 (2d Cir.1989) (affirming district court's award of costs of securing compliance with discovery orders, as sanction under Rule 37(b)); *Teletel v. Tel-Tel U.S. Corp.,* No. 99 Civ. 4811(LLS), 2000 WL 1335872, at **2-3 (S.D.N.Y. Sept. 15, 2000) (sanctioning plaintiff for the costs caused by its discovery defaults); *New Pacific Overseas Group (USA) Inc. v. Excal Int'l Dev. Corp.,* No. 99 Civ. 2436(DLC), 2000 WL 97358, at *5 (S.D.N.Y. Jan. 27, 2000) (same).

*4 The history set forth above makes it abundantly clear that plaintiff failed over the course of many months to comply with defendant's legitimate discovery requests and subsequent Court Orders, and that only as the result of persistent efforts by defendant's counsel and repeated Court intervention did plaintiff ultimately produce responsive information. The record is devoid of any legitimate justification for these failures; in fact, the information defendant sought was extremely limited and in no way burdensome, and plaintiff's counsel was given numerous opportunities to cure his and his client's derelictions. He failed to do so, and instead has repeatedly provided misleading information and hollow excuses to defendant and the Court.

Under these circumstances, Rule 37 monetary sanctions shall be awarded against plaintiff's counsel.FN3 As an attorney who is charged with knowledge of his and his client's obligations under the Federal Rules of Civil Procedure, and because his own conduct, including misrepresentations and repeated dishonored commitments, wasted the time and resources of the Government and the Court, it is most appropriate to impose this particular sanction against counsel personally.

FN3. Defendant's application is specific in seeking monetary sanctions against counsel.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-05158-LTS-MHD   Document 33-6   Filed 01/26/2007   Page 4 of 5

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1576886 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

At a conference held on October 5, 2000, the Court directed defendant's counsel to submit evidence of the time spent and expenses incurred in securing compliance with defendant's second discovery request. In a sworn declaration dated October 6, 2000, AUSA Zornberg set forth a summary of the amount of time she spent securing compliance with the Government's second discovery request and this Court's Orders. In total, and viewed conservatively, twenty-one (21) hours were expended. Based on the billing rate set by the Department of Justice, of $110.29 per hour, which is substantially lower than the amount an attorney in private practice with comparable experience would receive, the Government seeks a total monetary sanction of $2,316.09.[FN4]

> FN4. Although, in its initial application for sanctions, which was based upon the Court's inherent power and Fed.R.Civ.P. 37, the Government requested that plaintiff's attorney be ordered to pay a monetary sanction *to the Court* because of the "waste of time and resources that his conduct has caused the Government and the Court," *see* Zornberg App., at a conference with the parties held on October 5, 2000, the Court indicated that if monetary sanctions were to be awarded under Rule 37, the Court was inclined to have plaintiff or her attorney pay the sanction to the Government. Consistent with the Court's directive, AUSA Zornberg then submitted her declaration documenting the time expended in securing the discovery responses.

Plaintiff's counsel submitted a one-page letter in opposition to defendant's submission regarding the fees and expenses it had incurred. *See* Letter of Steven F. Goldman, dated October 14, 2000. His first purported objection to the imposition of sanctions is that there has been *"de facto* and now [following plaintiff's second deposition session] full compliance with all outstanding discovery orders," thus eliminating any prejudice to defendant. Even if true, this assertion is irrelevant to the imposition of Rule 37 sanctions. Counsel simply ignores the fact that the required compliance with the discovery request only came about as the result of months of effort by defendant's counsel to secure what her client had always been entitled to and what plaintiff had an obligation to provide.

Counsel's second objection to the requested sanction is based on his contention that he "[does] not believe that Rule 37 allows the payment of legal fees or expenses to a governmental agency." Counsel provides no legal support for his belief, and there is no language in Rule 37 that suggests that the Government has lesser rights to sanctions than any other party. *Cf. Banjo v. United States,* No. 95 Civ. 633(DLC), 1996 WL 426364, at *7 (S.D.N.Y. July 30, 1996) (ordering plaintiff to pay attorney's fees and costs to the Government); *Svilvassy v. United States,* 71 F.R.D. 589, 594 (S.D.N.Y.1976) (ordering plaintiff's counsel to pay expenses, including attorney's fees, to the Government, incurred as a result of a motion for sanctions because of plaintiff's discovery failures).

*5 Plaintiff's counsel's final and rather startling objection to the fee request is that the hours for which compensation is sought occurred during the discovery phase of this case, and that the award of fees for time spent pursuing sanctions is contrary to the intention of the statute. *See* Goldman October 14 Letter. Again, this objection is made without any legal support, and it flies in the face of the plain language and purpose of Rule 37. Since the specific purpose of Rule 37 is to provide an array of sanctions for a party's discovery failures, the only time for which a party can legitimately be compensated as a sanction is time spent during the discovery phase of the case. Moreover, compensation for time expended in seeking sanctions for a party's failure to comply with a discovery order is explicitly provided for in Rule 37. Rule 37(a)(2) and (4) of the Federal Rules of Civil Procedure states that if a party fails to provide required disclosure, any other party may move to compel such disclosure *and for sanctions* and, if the motion is granted, the party whose conduct necessitated the motion shall be required to pay the expenses incurred in making the motion. *See also* Fed.R.Civ.P. 37(b)(2)(requiring disobedient party to pay the attorney's fees and expenses caused by its failure to comply with court-ordered discovery).

In sum, plaintiff's objections to the request for monet-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ary sanctions lack both legal and factual support. The Court has reviewed the declaration setting forth the time spent in attempting secure compliance with defendant's second discovery request and, based upon its own involvement in these matters and review of the record, concludes that the amount of compensation sought is well-justified and modest.[FN5] Accordingly, plaintiff's counsel shall pay to the Government the amount of $2,316.09, as a sanction under Rule 37.

> FN5. The Court notes that the requested sanction does not even include the time spent preparing for and deposing plaintiff a second time in order to secure complete and accurate information about her post-accident employment efforts. This deposition was made necessary by plaintiff's inconsistent, untimely and evasive responses to the second request for discovery.

Rule 37 (b)(2)(B) of the Federal Rules of Civil Procedure provides that if a party fails to obey an order to provide discovery, the Court may enter an order refusing to allow the disobedient party to support designated claims, or prohibiting that party from introducing designated matters in evidence. The Court has given serious consideration to defendant's request that plaintiff be precluded from testifying at trial that her alleged injuries impaired her ability to work, and that she be precluded from seeking damages on that basis. The history set forth above indicates that, during the course of discovery, plaintiff has provided incomplete and inconsistent information on this issue, and that her discovery failures caused defendant to spend an inordinate amount of time seeking information that should have been produced months ago. Nevertheless, in response to defendant's sanctions motion, the Court ordered plaintiff to produce additional information and permitted defendant to depose plaintiff a second time. The Court assumes that plaintiff has now produced the W-2 Statement from the job she held for approximately one month, as well as the application and letters of reference for jobs for which plaintiff has recently applied. Plaintiff testified about these matters and documents at her recent deposition session and it is difficult to imagine how any further questioning about these documents is likely to shed any additional light on plaintiff's claim that the accident impaired her ability to work. Although there is a marginal possibility that if this information had been produced earlier defendant would have been able to pursue follow-up information that would have some added impeachment value, it is the Court's view that whatever prejudice defendant may have suffered if required to proceed to trial without proper responses from plaintiff, has in large part been cured. Accordingly, the Court will not exercise it discretion to preclude plaintiff from seeking damages on the basis of her claim that her ability to work was impaired by her accident.

*6 SO ORDERED.

S.D.N.Y.,2000.
Yeboah v. U.S.
Not Reported in F.Supp.2d, 2000 WL 1576886 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:99cv04923 (Docket) (Jul. 09, 1999)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.