UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NORTH AMERICAN KARAOKE-WORKS
TRADE ASSOCIATION, INC.

      Plaintiff and Counterclaim Defendant,

v.

ENTRAL GROUP INTERNATIONAL, LLC,

      Defendant and Counterclaim Plaintiff,

v.

SAM CHAN and RAY YIM,

      Counterclaim Defendants.

Case No. 06-CV-5158 (LTS)(MHD)

---

**MEMORANDUM OF LAW IN SUPPORT OF
ENTRAL GROUP INTERNATIONAL, LLC'S
REQUEST FOR DEFAULT JUDGMENT,
<u>PERMANENT INJUNCTION AND IMPOUNDMENT</u>**

I.     PRELIMINARY STATEMENT ........................................................................ 1
II.    PROCEDURAL BACKGROUND.................................................................... 1
III.   FACTUAL BACKGROUND............................................................................ 2
       A.   EGI's Control of the Chinese Language Audio-visual Karaoke Works................. 2
       B.   The Works................................................................................................ 3
       C.   NAKTA's Unlawful Acts and Conduct.......................................................... 4
            i.    NAKTA is Copying and Distributing EGI's Works.......................................... 4
            ii.   NAKTA, Chan and Yim Willfully Induced the Creation of and Willfully
            Copied and Distributed the Illegal Derivative Works.................................... 8
IV.    PERMANENT INJUNCTION, ORDER OF IMPOUNDMENT AND
FORFEITURE IS NECESSARY ............................................................................ 14
       A.   PERMANENT INJUNCTION................................................................ 14
       B.   ORDER OF IMPOUNDMENT AND FORFEITURE ............................... 16
V.     DAMAGES................................................................................................ 18
       A.   STATUTORY DAMAGES ........................................................................ 18
       B.   ATTORNEYS' FEES AND COSTS .......................................................... 23
VI.    CONCLUSION.......................................................................................... 24

I.     **PRELIMINARY STATEMENT**

In response to the Court's Orders of March 16, 2007, and March 28, 2007, Defendant and Counterclaim Plaintiff Entral Group International LLC ("EGI") submits this memorandum in support of its request for the adoption and entry of its Default Judgment, Permanent Injunction and Impoundment against Plaintiff and Counterclaim Defendant North American Karaoke-Works Trade Association, Inc. ("NAKTA") and Counterclaim Defendants Sam Chan and Ray Yim.  NAKTA, Sam Chan and Ray Yim are collectively referred to hereafter as the "Counterclaim Defendants."     EGI also submits a proposed Judgment, attached as Exhibit A to the Declaration of Robert E. Hanlon ("Hanlon Decl."), submitted concurrently.

II.    **PROCEDURAL BACKGROUND**

On July 6, 2006, Counterclaim Defendants commenced this action against EGI by filing a Summons and Complaint seeking a declaratory judgment.  EGI filed an answer and counterclaims against Counterclaim Defendants alleging, among other things, copyright infringement of its interests in certain Chinese language audio visual works. Counterclaim Defendants thereafter filed a motion to dismiss EGI's counterclaims.  By Order dated December 1, 2006, Judge Swain denied Counterclaim Defendants' motion to dismiss.

On December 13, 2006, an Interim Pretrial Conference was held, wherein Judge Swain dismissed with prejudice Counterclaim Defendants' claims based on their failure to appear at a scheduled hearing, failure to pay a court-ordered fine and failure to comply with previous orders of the Court.  Given the posture of the case, EGI requested that the Court strike Counterclaim Defendants' pleadings in their entirety including their answer

1

and any defenses. Counterclaim Defendants thereafter made a motion for reconsideration of the Court's imposition of sanctions and a motion to dismiss the case for lack of subject matter jurisdiction.

On March 16, 2007, after briefing by the parties, the Court denied Counterclaim Defendants' motion to dismiss and its applications for reconsideration, granted EGI's motion to strike Counterclaim Defendants' pleadings and referred the case to Magistrate Judge Dolinger for "further proceedings including inquest and a report and recommendation in connection with any application for judgment by default on EGI's counterclaims." A conference was held on March 28, 2007, before Magistrate Judge Dolinger, at which time Magistrate Judge Dolinger reaffirmed that liability had been established by Judge Swain's ruling and determined that the only remaining issues before the Court are (1) the number and identification of the Works that Counterclaim Defendants infringed, (2) whether Counterclaim Defendants infringement was willful and (3) the amount of attorneys' fees to be awarded. Each of these issues are addressed below.

III.    **FACTUAL BACKGROUND**

A.    **EGI's Control of the Chinese Language Audio-visual Karaoke Works.**

EGI is in the business of licensing and distributing Chinese language audio-visual karaoke works for commercial use in the United States. *See* Declaration of Nicolas Chai ("Chai Decl.") ¶ 2. EGI is, and at all relevant times has been, the exclusive licensee in the United States of copyright interests in all of the Chinese language karaoke audio-visual recordings, which includes both the audio and video components of these works, (the "Works") of various companies (the "Companies"), who either directly or through

2

their subsidiary labels, own and have exclusive control of all worldwide copyright interests in their respective karaoke audio-visual works.  *See* Chai Decl. ¶ 3.

As the exclusive licensee, EGI has the exclusive rights to reproduce, distribute, and commercially use the Works in commercial karaoke outlets in the United States, and to collect license fees with respect to such reproduction and use.  *See* Chai Decl. ¶ 4.  In addition, EGI also has the exclusive rights to create and distribute any derivative works that are based upon the Works.  As such, EGI has these exclusive rights to each of the Works in their entirety, as well as the components of those works, whether used in combination or independently.  *See* Chai Decl. ¶ 4.

EGI has invested and continues to invest substantial sums of money, as well as time and effort, in licensing, promoting, and marketing the Works in the United States. *See* Chai Decl. ¶ 5.  The Works were created largely in Hong Kong and are protected under the copyright laws of the United Kingdom, The People's Republic of China, the Berne Convention, and the laws of United States.

## B.    The Works

The Works which EGI licenses and distributes are audio-visual recordings, akin to music videos, which feature synchronized lead and background vocals, orchestration, and video images, as well as visual representation of lyrics.  At the viewer's option, the audio-visual works can be performed without the lead vocals, to enable the viewer to sing along in traditional karaoke style.  *See* Chai Decl. ¶ 6.  A portion of the Works, usually the Companies' more recent works, called "Control Catalogues," have never been legally distributed in any form in North America except through EGI.  Many of the "Control Catalogue" works are only available in the United States pursuant to a license from EGI,

or through illegal means. *See* Chai Decl. ¶ 7.  Upon the authorization of the Companies, EGI has registered a number of the Works with the Registrar of Copyrights in the United States Copyright Office (the "Registered Works").  *See* Chai Decl. ¶ 7.

### C.    NAKTA's Unlawful Acts and Conduct

#### i.  NAKTA is Copying and Distributing EGI's Works

NAKTA is engaged in the business and promotion of karaoke entertainment. NAKTA's business is carried out by creating and/or obtaining copies of audio-visual karaoke materials (the "NAKTA Materials"), and then distributing those works to various karaoke establishments for duplication onto a specialized computer capable of selecting and displaying those works through an audio-visual system.  NAKTA's principals, Sam Chan and Ray Yim, have attested to bringing hard drives with audio-visual works from outside of the country to the United States and distributing them to NAKTA member karaoke establishments.[1]  For example, *see* Deposition of Ray Yim, Tuesday, May 23, 2006 ("Yim Dep."), at 150:20 – 151:13, attached as Exhibit B to the Hanlon Decl.   In exchange for these services, NAKTA collects fees and donations from its member clubs. *See* Yim Dep. at 201:14-25; 202:1-15.

As with virtually all karaoke works, the karaoke works created by Counterclaim Defendants, or at Counterclaim Defendants' behest and distributed by Counterclaim Defendants, contain both a video and an audio component.  The video component of much of the NAKTA Materials differs from the video components in the Works licensed to EGI.  However, the audio components of at least a significant portion of the NAKTA Materials consist of sound recordings that are reproductions of the sound recordings

---

[1] The principals of NAKTA have been deposed and Counterclaim Defendants have produced certain documents and things in a separate litigation, *Entral Group International v. YHLC Vision Corp.* No: 05-CV-01912 (ERK)(RLM) (the "YHLC Case").

contained in the Works exclusively licensed to EGI.  *See* Chai Decl. ¶ 12.  This is readily apparent to the lay listener and has been confirmed through expert analysis.  In short, Counterclaim Defendants have created, or have induced others to create, NAKTA Materials, which are derived from EGI's Works, without the authorization of EGI or the Companies.  *See* Yim Dep. at 126:9-23; 147:4-19; 149:11-15; 161:6-20; *see also* Deposition of Sam Chan, Thursday, May 25, 2006 ("Chan Dep.") at 71-85; 93-97; 113:3-22, attached as Exhibit C to Hanlon Decl.

In response to discovery requests in the YHLC case, NAKTA produced to EGI four hard drives containing audio-visual karaoke works which Mr. Chan claimed NAKTA had made available to its members.  *See* Chan Dep. at 110:18-20.

In that case, copies of audio visual recordings used by YHLC in its club were also obtained.  Both YHLC's principal and Sam Chan acknowledge that these YHLC recordings were obtained from NAKTA.  *See* Chan Dep. at 110:18–111:6; Yim Dep. at 78:24 – 79:9.[2]  Pursuant to a court order in the YHLC case, the president of EGI, Nicolas Chai, had the opportunity to review some of the materials contained on the hard drives that NAKTA distributed to its members.  During his review, Mr. Chai identified four specific works, including *Dream A Little Dream of Me* by William So, *Corazon De Melao* by Jacky Cheung, *Sense* by Nicholas Tse and a Chinese language audio visual work of Joey Yung in concert for which there is no standard English name, that were unauthorized copies of EGI's Works in their *original* form (identical audio and visual).  *See* Chai Decl. ¶¶ 9 and 10.

---

[2] YHLC is also referred to as Black Swan.

5

Mr. Chai's review also found over one hundred other works that NAKTA distributed which contained audio tracks that were taken from EGI's works, including at least three Registered Works: *Single Man and Woman* by Sammi Cheng, and *Neighbor* and *Marriage Will Follow After Many Years* by Hacken Lee.[3] *See* Chai Decl. ¶ 11; *See* Hanlon Decl. ¶ 4, Ex. D and ¶ 5, Ex. E. Mr. Chai is very familiar with the works he distributes and is especially familiar with the registered works, having listened to them many times. *See* Chai Decl. ¶ 11. Mr. Chai was able to determine that the audio tracts from the NAKTA drives listed above were taken from EGI's Works because of nuances in the recordings, for example, background noise at concerts and vocal recognition of the original artists that were particular to EGI's Works. *See* Chai Decl. ¶ 11.

Moreover, in connection with the YHLC case, Audio Video Forensic Lab, an expert in audio video forensics, conducted an analysis of three of EGI's Works, *Neighbor* (AVSEQ01), *Marriage Will Follow After Many Years* (AVSEQ02) and *King of Karaoke* (AVSEQ03) (the "Selected Works"), comparing them with three of the works distributed by NAKTA and three corresponding works found on the YHLC machines. The expert conclusively confirmed that the three works distributed by NAKTA were derived from EGI's Works. Specifically, the expert concluded: "the musical compositions, and the matching YHLC works, instrumentations, key signatures, time signatures and data obtained through forensic analysis leads me to conclude that they are the same work as the exemplar recordings [EGI's works]." *See* Audio Video Forensic Lab Expert Report dated December 29, 2006 ("Expert Report"), p. 1, attached as Exhibit D to Hanlon Decl.

---

[3] EGI and NAKTA's version of the audio visual files of *Neighbor* and *Marriage Will Follow After Many Years* are attached to the Expert Report. Copies of each of the NAKTA Materials at issue are also contained on a CD attached to the Hanl. Decl. as Exhibit D.

Karaoke works are motion pictures (visual recordings synchronized with audio recordings). The sound recordings that form part of a motion picture (which karaoke works are) are covered under the copyright interests in that motion picture. The right to create a derivative work based on the Works, by synchronizing the sound recordings (combining the sound with a video), is exclusively licensed to EGI. Any use of the original audio component of the Works, even if coupled with a different video component, constitutes a derivative work which only EGI has the right to perform, copy, commercially use and distribute.

It is clear that many of the audio-visual works distributed by NAKTA consist of EGI's original works or works that are derived from EGI's Works. *See* Chai Decl. ¶¶ 10-11; *see also*, Expert Report. Yet, Counterclaim Defendants are not authorized by EGI, or any of the Companies, to create derivative works based on the Works, or to copy, use or perform the Works or derivative works in connection with any business or service. Despite this, Counterclaim Defendants are distributing for commercial use or inducing others to distribute or commercially use the Works (including the Selected Works and many other Registered Works) without the authorization of EGI or the Companies. *See, e.g.*, Chan Dep. at 110-113; Yim Dep. at 170:7-15.

However, as set forth in Judge Swain's March 16, 2007 Order, and as acknowledged by Your Honor, liability has already been established. Without question, Counterclaim Defendants are liable to EGI for infringing the Works. The more relevant question is whether the Counterclaim Defendants actions were willful. To prove willfulness, it is necessary to show that the infringer had actual or constructive

7

knowledge that it was infringing the owner's copyrights or else acted in reckless disregard of the high probability that it was infringing the owner's copyrights.

ii. **NAKTA, Chan and Yim Willfully Induced the Creation of and Willfully Copied and Distributed the Illegal Derivative Works**

Mr. Chan, NAKTA's chief executive officer, and Mr. Yim, NAKTA's chief operating officer, are very familiar with EGI's works and are admittedly aware of the licensing requirements necessary for the use, copying and distribution of karaoke works. *See* Chan Dep. at 67:8-75:7; Yim Dep. at 158:3-22. Indeed, Mr. Yim and Mr. Chan currently hold active licenses with EGI for their respective clubs. Mr. Chan is a majority shareholder in ABC Target Corp., which owns and operates the karaoke club "ABC Target Inc. d/b/a Galaxy 45," ("Galaxy 45") and Mr. Yim is the owner of the karaoke club "Pop Music Studio Inc." ("Pop Music Studio"). Interestingly, both Galaxy 45 and Pop Music Studio offer EGI's Works, instead of the NAKTA Materials, to their patrons for performance in their respective karaoke clubs. *See* Yim Dep. at 22:22-25; 23:1-14; 64:6-12; Chan Dep. at 23:14-25; 24-26; 42:12-23.

Mr. Yim and Pop Music Studio were previously sued by EGI for copyright violations. A judgment was entered against Pop Music Studio and Mr. Yim finding willful infringement. *See* Chai Decl. ¶ 13, Exhibit C. A settlement agreement was also executed wherein Yim and Pop Music Studio acknowledged that they have "infringed thousands of EGI's copyrights in audio-visual Chinese language karaoke Works exclusively licensed to EGI by the Companies by willfully and unlawfully copying, distributing and performing many if not all of the audio-visual Works." Moreover, as set forth in the settlement agreement, Mr. Yim and Pop Music Studio agreed to stop copying and distributing EGI's Works without a license. *See* Chai Decl., ¶ 13. A true and correct

8

copy of the Settlement Agreement between Pop Music Studio and EGI has been filed under seal and submitted herewith. *See* Chai Decl. Exhibit B. Subsequently, Pop Music Studio entered into a license agreement and was provided with legitimate copies of the EGI Works. *See* Chai Decl., ¶ 13.

With respect to Galaxy 45, after notification by EGI that Galaxy 45 was infringing its rights, Mr. Chan agreed to enter into a license agreement wherein Mr. Chan acknowledged that EGI is the exclusive licensee of the Works. Mr. Chan and Galaxy 45 were thereafter provided with legitimate copies of the EGI Works. *See* Chai Decl., ¶ 14. A true and correct copy of the License Agreement between Galaxy 45 and EGI has been filed under seal and submitted herewith.

NAKTA was founded by Mr. Chan and Mr. Yim to circumvent EGI's licensing program. *See* Yim Dep. at 82:21-84:11; Chan Dep. at 66:12-70:5. They have succeeded in doing so. Counterclaim Defendants have induced a number of EGI's licensees to cease licensing the Works from EGI and to begin licensing the NAKTA Materials instead. *See* Chan Dep. at 110: 21-25; 111:2-6.

Counterclaim Defendant Chan not only participated in and contributed to the infringing activities, Mr. Chan did so willfully. In particular, ***after*** signing a license agreement with EGI, Mr. Chan commissioned, authorized and induced the creation of the NAKTA Materials and the copying and distribution of those materials. *See, e.g.,* Chan Dep. at 80-85, 113. Mr. Chan set about finding someone to create a bundle of karaoke works that consisted, in large part, of many of the titles in the EGI collection. *See* Chan Dep. at 67:8-68:24. Mr. Chan contacted a Mr. Cheng, an individual in the People's Republic of China who agreed to create the NAKTA Materials, and Mr. Chan agreed to

9

give Mr. Cheng a computer to facilitate the creation of those Materials. Mr. Chan and

Mr. Yim, both of whom had access to the entire EGI library of Works in electronic form,

then arranged to deliver that computer to Mr. Cheng in China. *See* Chan Dep. at 75:19–

79:7; Yim Dep. at 128:12-129:7  Mr. Yim met with Mr. Cheng directly in China to

facilitate the creation of the NAKTA Materials. *Id*. This meeting also occurred ***after*** Mr.

Yim had signed a settlement agreement with EGI, and was unquestionably aware of

EGI's rights in the Works.

Some months later, Mr. Chan went to China, met with Mr. Cheng and brought

back four hard drives containing the NAKTA Materials. *See* Chan Dep. at 94:14–98:23.

He also brought with him a catalog which he testified was his "wish list" of songs to be

created by Mr. Cheng. *See* Chan Dep. at 129:8–130:14; 132:15–133:13. A large portion

of those listed songs are titles within the EGI catalog and are works owned or controlled

by the record labels that are under exclusive license to EGI. No one is permitted to create

or distribute in the U.S. those karaoke works owned or controlled by those labels other

than EGI.

Despite his direct familiarity with copyright infringement, Mr. Chan testified that,

prior to accepting the NAKTA Materials from Mr. Cheng, neither he, nor Mr. Yim, nor

anyone else acting for NAKTA, asked for or received any ownership documents or a

license relating to the use of the compositions, the audio recordings or the videos

contained in the NAKTA Materials.

> Q:  Did Mr. Cheng give you any documents concerning ownership of the hard drives?
>
> A:  Ownership of the hard drives; no. He never gave me that.
>
> Q:  Did he give you any documents concerning rights to the content of the hard drive?

10

A:    No.

Chan Dep. at 104:22–105:6.

Q:    Did he [Cheng] tell you [Chan] that anyone gave him a license or gave him rights?

A:    No, he didn't say that.  He didn't tell me anything about that.

Chan Dep. at 107:14-17

Q:    But you have never, you meaning you, Sam Chan, nor NAKWTA[4] has ever obtained a license from any other source authorizing you to make copies or distribute these works; is that correct?

A:    Yes. You are correct.

Chan Dep. at 112:17-22.

Tellingly, Chan chose not to even inquire as to how the NAKTA Materials were made, *i.e.* whether Mr. Cheng used the original artists' vocals, (which would be an infringement of the publishers' recordings and the composers "synch" rights), or hired other artists to sing vocals to be incorporated into the karaoke works (which would be an infringement of the composers' synch rights).

Q:    Did Mr. Cheng tell that you the recordings, that the audio recordings were the original artists?

A:    I didn't ask him.

Q:    Did he tell you that they were not the original artists?

A:    He didn't tell me that.

Chan Dep. at 104:5-11.

Q:    Do you know whether Mr. Cheng hired that singer or recorded that singer?

A:    I never asked him how to do it because he do it for free, we don't want to like interrogate this guy, how much you make, what list and things like that.  He is doing a free service, a

---

[4] North American Karaoke-works Trade Association is, at various times, referred to as both "NAKTA" and "NAKWTA."  There is no distinction.

LEGAL02/30316817v5

> really nice guy, you know, so we never given any questions
> like that.

Chan Dep. at 88:10-17.

Chan chose not to ask whether Mr. Cheng had obtained recordings that had already been made or had arranged for new recordings to be made.

> Q:  Is it your understanding that Mr. Cheng obtained recordings
>     that had already been made, or did whether Cheng arrange
>     for a new recording to be made?
>
> MR. HOFFMAN: Objection.
>
> A:  I have no idea about that.

Chan Dep. at 93:3-8.

Perhaps most significantly, Mr. Chan admitted that with respect to the video work "I took Cheng's word that he created it. That he created the whole thing. I told my members Cheng created that." Chan Dep. at 109:23-25.

Similarly, Counterclaim Defendant Yim personally and directly participated in, and contributed to, the infringing activities. In particular, after a judgment was entered against him and signing a settlement agreement and license agreement with EGI. Mr. Yim traveled to China to induce and facilitate the creation of the NAKTA Materials and the copying and distribution of those materials. *See, e.g.,* Yim Dep. at 126–129; 146–149; 158–161. Mr. Yim recognizes that creating karaoke works requires a certain amount of professionalism and skill. Yet, Mr. Yim never questioned the fact that Mr. Cheng was not in possession of a computer to create the works; never obtained Mr. Cheng's business card; and received no documents or a contract from Mr. Cheng. *See* Yim Dep. at 128 & 148. Mr. Yim claims that he had some vague representation from Mr. Cheng about ownership of the Materials but did not seek or obtain any supporting documentation or proof whatsoever.

12

Q:   So it was your impression that this was Mr. Cheng's work, that he owned this material?

A:   Yes.  According to what he said, yes.

Q:   Mr. Cheng was going to give you a copy and let you use it?

A:   Yeah.

Q:   Is there any written agreement between you and Mr. Cheng about these activities?

A:   No.

Q:   Did you ever send him an e-mail about these activities?

A:   No.

Q:   Did you ever send him any fax or letter or any kind of written communication of any sort asking a question or giving him an instruction about these activities?

A:   No.

Yim Dep. at 156-157.

Beyond doubt, Counterclaim Defendants have knowingly or with reckless disregard facilitated the creation of unauthorized derivative works, the NAKTA Materials, copied and induced others to copy the NAKTA Materials, including NAKTA Materials that are derivative works based on certain of EGI's Works, without the authorization of EGI or the Companies.  Counterclaim Defendants have commercially profited, and continue to commercially profit, through their unauthorized use of the Works, and EGI has been, and continues to be, injured by Counterclaim Defendants' unlawful acts.  As a result of Counterclaim Defendants' unauthorized use of the Works, NAKTA has gained an unfair advantage with respect to EGI's customers and potential customers.  Counterclaim Defendants have performed the acts complained of herein willfully and with knowledge of the infringement that they would cause, and with intent to cause confusion, mistake, and deception.

13

IV.    **PERMANENT INJUNCTION, ORDER OF IMPOUNDMENT AND FORFEITURE IS NECESSARY**

A.  **PERMANENT INJUNCTION**

The Copyright Act provides that a court has the authority to issue a permanent injunction on such terms as it deems reasonable to prevent NAKTA Counterclaim Defendants from their continued infringement of EGI's copyright interests. *See* 17 U.S.C. § 502(a). Typically, the moving party must show the threat of a continuing violation in order to be entitled to injunctive relief. *Barrera v. Brooklyn Music, Ltd.*, 346 F.Supp.2d 400, 412-413 (S.D.N.Y. 2004).

As demonstrated by Counterclaim Defendants' continued infringement of EGI's copyright interests, it is apparent that, unless Counterclaim Defendants are permanently enjoined from using the Works, Counterclaim Defendants will continue to willfully and blatantly copy, distribute and perform the Works, including derivative works based on EGI's Works, without EGI's permission and in violation of EGI's copyright interests. *See Barrera v. Brooklyn Music, Ltd.*, 346 F. Supp. 2d 400, 412-13 (S.D.N.Y. 2004) (holding permanent injunctive relief warranted since competitor failed to respond to copyright holder's assertion of rights under Copyright Act, suggesting significant threat of continuing infringement of copyrighted photograph). *See also Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 659 (S.D.N.Y. 1996) (finding evidence that behavior of owners of bar in infringing copyrighted musical compositions despite knowledge of copyrights and continuing to have copyrighted music performed at bar without authorization warranted permanent injunction against unauthorized public performance of any copyrighted compositions licensed through plaintiff's performing rights licensing organization).

14

NAKTA was *created* to engage in this illegal copying scheme. Counterclaim Defendants Chan and Yim have previously engaged in infringing conduct with respect to their own clubs, and have now formed NAKTA to induce other clubs to drop licensed EGI Works and to engage in infringing conduct using the NAKTA Materials. Chan and Yim do this while they themselves are hiding behind the shield of the EGI licenses they purchased after settling their prior infringement suits.

NAKTA Chan and Yim should each be permanently enjoined from any production, copying or distribution of any Chinese-language karaoke works. Despite knowing of the requirement of licenses, and knowing of EGI's exclusive rights to the Works, they set about, once again, to infringe and induce others to infringe. They have shown a blatant disregard for, and an unwillingness to abide by, copyright law.

Unless this Court orders a permanent injunction prohibiting Counterclaim Defendants from copying, distributing or performing the Works exclusively licensed to EGI, as well as Chinese language works created by and licensed to others, it is clear from their behavior thus far that Counterclaim Defendants will continue to willfully and blatantly infringe EGI's copyright interests, as well as those of other artists, publishers and licensed distributors. In the absence of such an injunction, EGI is likely to face a new crop of karaoke works created and distributed by them with new titles which would then require an extensive review process and analysis process to identify additional instances of infringement. In fact, Counterclaim Defendants returned from China with a "wish list" of many thousands more works that they intend to create and distribute, all without ownership or licenses.

B.  ORDER OF IMPOUNDMENT AND FORFEITURE

Pursuant to section 503(a) of the Copyright Act, a court in which an action for copyright infringement is pending may order the seizure and impoundment of all copies claimed to have been made or used in violation of the copyright owner's exclusive rights and of *all devices* by means of which such copies may be reproduced. 17 U.S.C. § 503(a) (emphasis added).  "Impoundment of items that allegedly infringe plaintiff's rights under the Copyright Act, 17 U.S.C. § 106, is appropriate if plaintiff establishes a *prima facie* case of copyright infringement…." *U2 Home Entertainment, Inc. v. Bowery Music City, Inc.*, No. 03 Civ. 8909 (RJH), 2003 WL 22889738 (S.D.N.Y. Dec. 8, 2003).  Courtesy copy attached to the Hanlon Decl. as Exhibit I.  As delineated in detail above, and as further delineated in the supporting declaration of Nicolas Chai, EGI has clearly established copyright infringement by demonstrating that it owns valid copyrights and that Counterclaim Defendants have engaged in unauthorized copying.  As such, an order providing for the seizure of all physical copies and any equipment containing the Works exclusively licensed to EGI, including derivative works based on EGI's Works, in Counterclaim Defendants' possession is proper.  This should take the form of the seizure of all hard drives containing the NAKTA Materials in the possession of the Counterclaim Defendants.  It should also include hard drives containing NAKTA Materials in the possession of any individual or commercial establishment to whom NAKTA or its principals have given that Material for use or copying.

That copyright owners may impound, retain, and even destroy, infringing copies of protected works is well established. 17 U.S.C. § 503(b); s*ee RSO Records, Inc. v. Peri*,

596 F. Supp. 849, 863 (S.D.N.Y. 1984) (destruction of seized inventory which was used substantially for unlawful purposes was appropriate).    EGI is also entitled to impound and permanently retain or destroy the equipment used by NAKTA Counterclaim Defendants as the means of carrying out their infringing conduct, as well as that of individuals or commercial establishments acting in concert with them.  Having obtained an entry of default, EGI has established a *prima facie* case of copyright infringement. Further, impoundment of all copies made or used, and of all equipment capable of containing, playing or displaying the Works in violation of the EGI's exclusive rights is not only warranted, but is necessary to prevent Counterclaim Defendants from continuing their illegal activities.   In *Century Home Entertainment, Inc. v. Laser Beat, Inc.*, 859 F.Supp. 636 (E.D.N.Y. 1994).  The Court upheld an impoundment order where the Court found that the non-movant party was in possession of illegally made copies of the movant's videocassettes and that there was good cause to be concerned that copying would continue.   In rejecting the non-movant's attempt to contest the equipment impoundment by alleging that the equipment was also being used in legitimate copying of the tapes, the Court stated "even if equipment may be used for a legitimate purpose, it is not protected from seizure if it has been employed for the illegal purposes alleged." *Id*. at 639.

Forfeiture of the equipment is also proper.  Courts have routinely decided to deprive infringers of the instrumentalities of their bad acts when there was reason to believe that those defendants would likely continue to willfully engage in those bad acts, and also as a deterrent to others from engaging in similar illegal conduct. 17 U.S.C.

17

§ 503(b); s*ee RSO Records,* 596 F. Supp. at 863 (destruction of seized machinery which was used substantially for unlawful purposes was appropriate).  In the recently decided case, *Entral Group International, LLC v. Fortuna Lounge Restaurant Corp., et al*., Case No. 05-CV-1914, Courtesy copy attached as Exhibit I to the Hanlon Decl.  Judge Nicholas G. Garaufis granted EGI's request for an order of impoundment and permanent forfeiture.

For the above reasons, an order providing for the impoundment and forfeiture of all physical and electronic copies of the Works and any hard drives containing the Works that are in Counterclaim Defendants' possession, custody or control or that of the entities to which they have distributed the Works, is proper and necessary.

## V.    DAMAGES

### A.  STATUTORY DAMAGES

Under the Copyright Act, the copyright owner is entitled to statutory damages in lieu of actual damages and profits, "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1).  Moreover, where the copyright owner is able to establish willful infringement, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2).

In determining an award of statutory damages, a court must first address the question of willfulness.  To prove willfulness, the copyright owner must show that the infringer had actual or constructive knowledge that it was infringing the owner's copyrights or else acted in reckless disregard of the high probability that it was infringing

the owner's copyrights. *Arclightz and Films Pvt. Ltd v. Video Palace Inc.*, 303 F. Supp. 2d 356, 361-62 (S.D.N.Y. 2003). EGI has established both.

Counterclaim Defendants were on actual notice of EGI's exclusive rights to the works both through their license arrangements and the prior claims asserted against them by EGI. They were on actual notice that distribution and use by anyone, including NAKTA and its members without a license, was an infringement. Despite this, they simply refused to obey the law. By their own admission the Counterclaim Defendants knew that copyright notices were needed for copying and use of karaoke audio-visual works. *See* Chan Dep. at 67:8-75:7; Yim Dep. at 158:3-22. In this age of *Napster* and other highly public litigations that reach even to the level of the adolescent consumer, no commercial establishment can reasonably claim that it is unaware that it needs a license to download, copy and distribute audio and audio-visual materials for commercial use. Mr. Chan's refusal to ask questions of Mr. Cheng "because he do it for free, we don't want to like interrogate this guy," is, at best, reckless disregard of the high probability that these works were infringing.

When setting the damages for willful infringement, several factors are considered including "the expenses saved and the profits earned by the defendant, the revenues lost by the plaintiff, *the deterrent effect*, if any, that such an award will have on the defendant and on third parties, the cooperation of the defendant in providing evidence concerning the value of the infringing material, the defendant's state of mind and the conduct and attitudes of the parties." *Arclightz,* 303 F. Supp. 2d at 362. (emphasis added).

EGI has found that hundreds of its Works have been infringed by NAKTA. Because these are Berne Works (non-U.S. works), they are entitled to protection without

registration.  However, actual damages or actual profits are difficult to quantify.  Further

the greatest harm is the deliberate undermining of the licensing program – NAKTA's

effort to induce clubs to forgo legitimate Works from EGI in exchange for NAKTA

Material.  Actual damages would not be sufficient to compensate EGI for the harm done

nor sufficient to deter the Counterclaim Defendants and others from engaging in such

conduct.

EGI should be awarded the maximum statutory damages permitted by law for

each act of willful infringement alleged in the cross-claim and proven pursuant to the

entry of default.  By awarding EGI the maximum amount of damages permitted under

section 504(c) of the Copyright Act, both Counterclaim Defendants and similar infringing

establishments will be deterred from engaging in further illegal conduct.  Chan and Yim

have previously been engaged in infringing conduct and have chosen to engage in such

conduct once again, as well as to induce others to infringe.  They, and their vehicle

NAKTA, have created a body of infringing works and a scheme for distributing them.

This egregious, serial infringement requires a stern remedy.

This Court has broad discretion to set the amount of statutory damages, within the

minimum and maximum amounts, in order to serve the two objectives of the Copyright

Act – compensation and deterrence.  *See F.W. Woolworth Co. v. Contemporary Arts,*

*Inc.,* 344 U.S. 228, 233 (1952) (statutory rule not only "compels restitution of profit and

reparation for injury but also is designed to discourage wrongful conduct").

Under the Copyright Act, an infringer is liable for damages for each of the

original works infringed. 17 U.S.C. § 504(c)(1).  To determine the number of violations,

the court need only total the number of separate, individual works which were the subject of the defendants' infringing activities.

EGI observed that at least three Works registered with the Registrar of Copyrights were being infringed by Counterclaim Defendants at the time the cross-claim was filed: *Single Man* and *Woman*, *Neighbor* and *Marriage Will Follow After Many Years*. These are in addition to hundreds of other unregistered works subject to enforcement under the Berne Convention and U.S. law.

In light of Counterclaim Defendants' willful and extensive infringement of EGI's copyright interests, and in an effort to deter similar establishments as intended by the Act, EGI requests that the Court award the maximum of $150,000 for each work that EGI has proven. Beyond question, EGI has established that at least three of the Selected Works, registered with the Copyright Office, have been willfully infringed. At the very *least*, EGI should be awarded $150,000 for each of these three Works, totaling $450,000 in statutory damages.

Courts in this circuit have recently awarded the maximum statutory amount in similar cases where Defendants engaged in willful and continued patterns of copyright infringement. *See, e.g., U2 Home Entertainment, Inc. v. Lai Ying I*, 2005 WL 1231645, at *7 (S.D.N.Y. May 25, 2005) (awarding $150,000 per infringed title for 49 titles for a total of $7,350,000 in statutory damages) *aff'd in part, rev'd in part on other grounds* 2007 WL 101659 (2d Cir., Mar. 30, 2007). Courtesy copies attached as Exhibit I to the Hanlon Decl. In the recently decided case, *Entral Group International, LLC v. K B 28, et al.*, Case No: 05-CV-1652, Judge I. Leo Glasser awarded EGI $150,000 for each of the

registered works claimed infringed in the complaint.  Courtesy copy attached as Exhibit I to the Hanlon Decl.

An award of the maximum amount of statutory damages per Work proven to have been infringed is both warranted and necessary in this case.  Such an award would not only compensate the copyright owner whose works have been infringed by Counterclaim Defendants egregious behavior, but would also fulfill the other key objective of the Copyright Act – the deterrence of future infringement on the part of these and other infringers.  An award of the maximum award per Work in this case is the best deterrent.

Finally, public policy strongly favors an award of the maximum statutory damages.  The United States has been engaged in an ongoing effort to obtain cooperation of the government and courts of the Peoples' Republic of China in the enforcement of copyright interests.  While there have recently been reports of some progress in this area, there remains a serious concern that the copyright interests of U.S. citizens and corporations are being routinely violated, and that enforcement is less than effective.

In the present case, we are attempting to enforce the copyright interests of Chinese companies who have entrusted their licensing program to a U.S. entity.  Those Chinese copyright interests are being grossly and flagrantly violated by the Counterclaim Defendants and other U.S. karaoke clubs who believe that they can act with impunity because China is far away, and no one will attempt to enforce, or that the penalties upon enforcement will be insignificant and worth the risk.  Vigorous enforcement by the U.S. courts of treaty-established copyright obligations is in the public interest, both in upholding U.S. law, but also in establishing a commitment to a reciprocal enforcement of

the rights of the citizens of our treaty partners, just as we wish them to enforce our citizens' rights.  If we lead, China may follow.

In any event, EGI respectfully requests that the Court award the maximum statutory damages permitted by law, in the amount of $150,000 for each of the three incontrovertible instances of infringement, totaling $450,000.

### B. ATTORNEYS' FEES AND COSTS

Section 505 of the Copyright Act gives the Court explicit authority to grant the recovery of full costs and reasonable attorneys' fees to the prevailing party. 17 U.S.C. § 505.  As the prevailing party in this action, EGI is entitled to the attorneys' fees it has incurred in this action.

EGI has incurred $75,203.00 in fees to date, and will incur an additional estimated $16,000 in fees in implementing the proposed Judgment.  A breakdown of those fees is provided in the declaration of Robert E. Hanlon, lead counsel on this matter for Alston & Bird, submitted concurrently. *See* Chai Decl., ¶ 15; *see also* Hanlon Decl., ¶¶ 7-15, Ex. F. Plaintiff is therefore entitled to be awarded a total of $91,203.00 for attorneys' fees in this action.

## VI.    CONCLUSION

For the foregoing reasons, the Court should enter EGI's Proposed Default Judgment, Permanent Injunction and Impoundment, granting EGI a permanent injunction enjoining Counterclaim Defendants from infringing the Works and from copying and distributing any Chinese-language karaoke works, granting EGI's request for impoundment and forfeiture of all physical copies of the NAKTA Materials and the hard drives containing that Material in the Counterclaim Defendants' possession or in the possession of those acting in concert with them, as well as granting EGI an award of damages, attorneys' fees and costs as enumerated above.


Dated: New York, New York

April 20, 2007

Respectfully submitted,


s/ Robert E. Hanlon
Robert E. Hanlon (RH-8794)
Alston & Bird LLP
90 Park Avenue
New York, New York 10016
(212) 210-9400
*Attorneys    for    Defendant-Counterclaim Plaintiff,*
*Entral   Group   International, LLC*