Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 22889738 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
U2 Home Entertainment, Inc. v. Bowery Music
City, Inc.
S.D.N.Y.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
U2 HOME ENTERTAINMENT, INC., Plaintiff,
v.
BOWERY MUSIC CITY, INC. and John Does I
through V, d/b/a Bowery Music City and d/b/a
Grand Import Inc, Defendants.
**No. 03 Civ. 8909(RJH).**

Dec. 8, 2003.

**Background:** Alleged infringers moved to vacate
order of seizure issued in copyright infringement
action upon plaintiff's ex parte application filed
pursuant to Copyright Act.

**Holdings:** The District Court, Holwell, J., held that:

(1) plaintiff established prima facie case of
copyright infringement, supporting seizure and
impoundment of alleged infringing items, and

(2) alleged infringers were not entitled to have
seizure order vacated.

Ordered accordingly.
West Headnotes
**[1] Copyrights and Intellectual Property 99⊂➞
71**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k71 k. Seizure and Forfeiture. Most
Cited Cases
Plaintiff established prima facie case of copyright

infringement, supporting seizure and impoundment
of alleged infringing items under Copyright Act,
when plaintiff offered evidence that it owned
exclusive United States distribution rights to many,
if not all, of copyrighted titles of Chinese-language
motion pictures and television programs seized
from alleged infringers, and plaintiff claimed in its
pleadings that alleged infringers offered those titles
for distribution or sale in violation of plaintiff's
rights. 17 U.S.C.A. §§ 106, 503(a).

**[2] Copyrights and Intellectual Property 99⊂➞
71**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k71 k. Seizure and Forfeiture. Most
Cited Cases
Alleged infringers of plaintiff's exclusive United
States distribution rights to many, if not all, of
copyrighted titles of Chinese-language motion
pictures and television programs seized from
alleged infringers were not entitled to have seizure
order vacated, inasmuch as plaintiff established
prima facie case of copyright infringement,
triggering presumption of irreparable harm, and any
countervailing hardship or injury to alleged
infringers arising from seizure did not outweigh that
presumptive harm in light of pre-seizure bond
posted by plaintiff, which provided adequate
protection for alleged infringers if seizure proved,
after trial on the merits, to have been improper. 17
U.S.C.A. §§ 106, 503(a); Fed.Rules Civ.Proc.Rule
65(b, f), 28 U.S.C.A.

DECISION AND ORDER
HOLWELL, J.
***1** Counsel for the parties in the above-captioned
action appeared before this Court on December 5,
2003, to be heard on the matter of the Order of
Seizure and Order to Show Cause issued on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 2

Not Reported in F.Supp.2d, 2003 WL 22889738 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

November 13, 2003, upon the *ex parte* application of Plaintiff pursuant to Section 503(a) of the Copyright Act, U.S.C. Title 17, and Fed.R.Civ.P. 65(b) and (f). In its memorandum of law in support of its application and in its complaint, plaintiff states that it holds exclusive importation, reproduction, and distribution rights to certain Chinese-language motion pictures and television programs in the United States, and alleges that defendant violated one or more of these rights protected by Section 106 of the Copyright Act.

[1] Under section 503(a) of the Copyright Act, a court in which an action for copyright infringement is pending may order the seizure and impoundment of "all copies ... claimed to have been made or used in violation of the copyright owner's exclusive rights " and of all devices by means of which such copies may be reproduced. Impoundment of items that allegedly infringe plaintiff's rights under the Copyright Act, 17 U.S.C. § 106, is appropriate if plaintiff establishes a *prima facie* case of copyright infringement, and therefore demonstrates a likelihood of success on the merits. A *prima facie* case of copyright infringement can be established by offering evidence of ownership of valid copyrights, and alleging that defendant violated an exclusive right conferred by that ownership.

This Court finds that plaintiff has made a sufficient showing to establish a *prima facie* case of copyright infringement. Plaintiff has offered evidence that it owns exclusive U.S. distribution rights to many if not all of the copyrighted titles seized from defendants on November 15, 2003. To its complaint plaintiff attached a list of works to which it claims exclusive U.S. rights and which it states are currently registered in the U.S. Copyright office, for which there are applications for copyrights pending, or which are protected under international copyright conventions. In reply to defendant's affirmation and supplemental affirmation in opposition to plaintiff's application, in which defendant claims that plaintiff failed to provide sufficient information showing rights to the seized titles, plaintiff provided defendant with copies of documents allegedly establishing its ownership of rights to most if not all of the works seized on November 15. Plaintiff has claimed in its pleadings that defendant has offered

these titles for distribution or sale in violation of these rights. Defendant has not produced any factual evidence contesting plaintiff's claims of rights in the seized works.

[2] Rule 65(b) of the Federal Rules of Civil Procedure provides that a temporary restraining order may be granted without notice to the adverse party or that party's attorney "only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required...." Rule 65(f) expressly makes this provision applicable to copyright impoundment proceedings. Where, as here, a *prima facie* case of copyright infringement is made out, irreparable harm is normally presumed. *Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.,* 312 F.3d 94 (2d Cir.2002) (citing cases). The Court finds that any countervailing hardship or injury to defendant arising from the seizure would not outweigh the presumptive harm to plaintiff in this case, since the bond posted by plaintiff prior to the seizure provides adequate protection for defendant should it be determined after a trial on the merits that the seizure was improper.

*2 Based on the record before it, the Court denies defendant's request to vacate the order of seizure without prejudice to defendant's right to submit further evidence in support of an application to lift the order in part or in whole. The order is hereby confirmed and will be extended so long as the interests of justice require. The parties are directed to meet and confer pursuant to Fed.R.Civ.P. 26(f) and to submit a joint pretrial report no later than January 5, 2004.

SO ORDERED.

S.D.N.Y.,2003.
U2 Home Entertainment, Inc. v. Bowery Music City, Inc.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 3

Not Reported in F.Supp.2d, 2003 WL 22889738 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**


Not Reported in F.Supp.2d, 2003 WL 22889738
(S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------

ENTRAL GROUP INTERNATIONAL, LLC,              )
                                              )
                    Plaintiff,                )        Case No: 05-cv-1914 (NGG)(CLP)
         v.                                   )
                                              )        DEFAULT JUDGMENT
FORTUNA LOUNGE RESTAURANT CORP.,              )
and LIANG CHEN LU,                            )
                                              )
                    Defendants.               )
--------------------------------------------------------

The summons and complaint in this action having been duly served on the defendants

Fortuna Lounge Restaurant Corp. and Liang Chen Lu ("Defendants") on June 2, 2005 and said

defendants having failed to plead or otherwise defend in this action, and said default having been

duly noted, and upon the annexed affidavit of default judgment,

IT IS ORDERED, ADJUDGED AND DECREED that Defendants, as well as their

parent, subsidiaries, affiliates, predecessors, successors, divisions, operating units, principals,

officers, directors, shareholders, employees, attorneys, members, agents, heirs,

representatives, spin-offs, and future assigns, and those persons in active concert or

participation with any of them, are PERMANENTLY ENJOINED and RESTRAINED from:

    a)       directly or indirectly infringing Plaintiff's rights in those copyrighted Works listed in

    Exhibit 1 to the Complaint, which are owned or controlled by Plaintiff (or any parent,

    subsidiary, or affiliate of Plaintiff); and

    b)       directly or indirectly infringing Plaintiff's rights in any other of the copyrighted

    Works, whether now in existence or later created, which are owned or controlled by Plaintiff

    (or any parent, subsidiary, or affiliate of Plaintiff), including, but not limited to,

    commercially using any audio-visual Chinese language karaoke work created by Universal

Music Limited, EMI Group Hong Kong Limited, Emperor Entertainment (Hong Kong) Limited, Go East Entertainment Company Limited, Cinepoly Record Co., and Warner Music Hong Kong Ltd. (the "Companies");

c)   making any use, in any manner whatsoever, of the marks "ENTRAL GROUP INTERNATIONAL," "EGI" or the names or marks of the Companies, or any marks or names confusingly similar to any of the foregoing;

d)   unfairly competing with, injuring the business reputation of, or damaging the goodwill of Plaintiff, and engaging in unfair competition that in any way injures Plaintiff;

e)   publishing or distributing any promotional materials or other communication referring to EGI, the Works or the Companies, in any medium, including, but not limited to, the internet, television, radio, newspapers, magazines, direct mail or oral communication; and

f)   selling or distributing any of EGI's or the Companies products.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff is authorized, under the supervision and with the assistance of the United States Marshal, as soon as practicable after the issuance of this Judgment, to take all necessary steps to secure and remove the following:

a)   all physical copies of any of the Works, including but not limited to the Works listed in Exhibit 1 of the Complaint;

b)   all machines, devices or equipment storing copies of the Works, including but not limited to the Works listed in Exhibit 1 of the Complaint;

2

c)    machines, devices or equipment capable of copying, storing, playing or performing the Works exclusively licensed to EGI by the Companies, including but not limited to the Works listed in Exhibit 1 of the Complaint;

d)    machines, devices or equipment capable of distributing the Works, including but not limited to the Works listed in Exhibit 1 of the Complaint; and

e)    machines, devices or equipment containing software capable of loading audio-visual works onto computers capable of distributing the Works, including but not limited to the Works listed in Exhibit 1 of the Complaint;

f)    all business records relating to the receipt, copying, storing, distribution, playing or performing of Works, including but not limited to the Works listed in Exhibit 1 of the Complaint, as well as records relating to the identity of the owners, managers and agents of the Defendants and to the profits associated with the business in which the Works have been used, as may be found in the possession or control of Defendants or their agents or employees at the place of business located at 46-07 Kissena Blvd., Flushing, New York, 11355.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a trained representative of Plaintiff, on behalf of whom the Judgment is being issued, shall accompany and assist the United States Marshal in the execution of this Judgment to inspect and test equipment that may be subject to impoundment and take all necessary steps to secure and remove from the premises any and all infringing copies, materials, equipment and records as described above.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any documents impounded may be duplicated by Plaintiff or its counsel, and such original documents, other than

3

the Works themselves, shall be returned to Defendants within ten (10) business days of the impoundment.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that when executing the impoundment, the United States Marshal shall serve a copy of the Judgment of this Court, by leaving them at the place of business of Defendants, or of any agent, employee, or officer of Defendants, or at the place where such articles are found, with any person of suitable age and discretion; and that the Marshal make immediate return of service, and of such impoundment or attempted impoundment to this Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the United States Marshal may use such force as may be reasonably necessary to gain access to the premises and anyone interfering with the execution of this Judgment is subject to arrest by the United States Marshal and/or his or her representative.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the United States Marshal deliver all articles impounded to Thelen Reid & Priest LLP, counsel for Plaintiff, who shall retain and shall act as substitute custodian of any and all property impounded pursuant to the Judgment and shall hold harmless the United States Marshals Service and its employees from any and all claims, asserted in any court or tribunal, arising from any acts, incidents, or occurrences in connection with the impoundment and possession of the Defendants' property, including any third-party claims.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff or its counsel will account completely for all property impounded pursuant to this Judgment and shall compile a written inventory of all such property and shall provide a copy to the United States Marshal, who shall include such a copy with his return to the court.

NEWYORK 4412727v8

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants shall surrender and permanently forfeit to Plaintiff the following:

a)    all machines, devices or equipment storing copies of the Works, including but not limited to the Works listed in Exhibit 1 of the Complaint;

b)    machines, devices or equipment capable of copying, storing, playing or performing the Works, including but not limited to the Works listed in Exhibit 1 of the Complaint;

c)    machines devices or equipment that capable of distributing the Works, including but not limited to the Works listed in Exhibit 1 of the Complaint; and

d)    machines devices or equipment containing software capable of loading audio-visual works onto computers capable of distributing the Works, including but not limited to the Works listed in Exhibit 1 of the Complaint, as may be found in the possession or control of Defendants or their agents or employees at the place of business located at 46-07 Kissena Blvd., Flushing, New York, 11355; and

e)    all physical copies of any of the Works, including but not limited to, the Works listed in Exhibit 1 the Complaint, in any form and medium, and the media upon which such copies exist or are stored, which copies and media are in Defendants' custody or control, wherever they may be found.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Entral Group International, the plaintiff, does recover of defendants Fortuna Lounge Restaurant Corp. and Liang Chen Lu, the defendants, residing at 46-07 Kissena Blvd., Flushing, New York, 11355 the sum of $2,100,000, the amount claimed, with $520.00 costs and disbursements, amounting in all to the sum of $2,100, 520.00, plus interest at the legal rate in effect on the date of this judgment; that

Defendants are jointly and severally liable for such amount; and that the plaintiff have execution therefore.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that:

a)      Defendants, when so requested by, and without compensation from Plaintiff, shall fully cooperate, in any inquiry, investigation, enforcement or legal action initiated by Plaintiff concerning the source or distribution of the Infringing Products by third parties;

b)      for a period of five years from the date of entry of this Judgment, Defendants will allow Plaintiff, and its respective agents, employees, and officers, reasonable access to the premises of Defendants to inspect, without notice, any equipment capable of containing, playing or displaying the Works;

c)      in the event that Defendants fail to comply with any provisions of this Judgment, Plaintiff shall be entitled to recover its reasonable attorneys' fees and costs associated with the enforcement of those provisions;

d)      Defendants shall provide notice to their parent, subsidiaries, affiliates, predecessors, successors, divisions, operating units, principals, officers, directors, shareholders, employees, attorneys, members, agents, heirs, representatives, spin-offs, and future assigns, and those persons in active concert or participation with any of them, of the terms of this Judgment;

e)      this Court shall retain jurisdiction for the limited purpose of enforcement of this Judgment, as may be necessary; and that

NEWYORK 4412727v8

f)    the Clerk of this Court shall enter this Judgment forthwith.

Dated: Brooklyn, New York
       November 22, 2005

By: _____
      / District Judge

NEWYORK 4412727v8

Westlaw.

Not Reported in F.Supp.2d                                                  Page 1

Not Reported in F.Supp.2d, 2005 WL 1231645 (S.D.N.Y.), 2005 Copr.L.Dec. P 28,999
**(Cite as: Not Reported in F.Supp.2d)**

▶
U2 Home Entertainment, Inc. v. Lai Ying Music &
Video Trading, Inc.
S.D.N.Y.,2005.

United States District Court,S.D. New York.
U2 HOME ENTERTAINMENT, INC., Plaintiff,
v.
LAI YING MUSIC & VIDEO TRADING, INC.,
and Wei Ping Yuan, Defendants.
**No. 04 Civ.1233(DLC).**

May 25, 2005.

Harvey Shapiro, Sargoy, Stein, Rosen & Shapiro,
New York, New York, for the Plaintiff.
Harold Wm Suckenik, Wu & Kao, P.L.L.C., New
York, New York, for the Defendants.

### OPINION AND ORDER

COTE, J.

*1 This is an action for, among other things,
copyright infringement, brought by the exclusive
United States distributor of certain Chinese
language motion pictures manufactured in Asia
against a Manhattan music and video retailer for
importing and selling unauthorized copies of the
plaintiff's motion pictures. At the close of
discovery, the plaintiff moved for summary
judgment on its copyright claims. In addition to
seeking maximum statutory damages, the plaintiff
seeks attorney's fees and a finding of contempt
based on allegations that the defendants also
violated a permanent injunction from a prior action
before this Court. The defendants cross-move to
dismiss the Complaint for failure to state a claim.
For the following reasons, the plaintiff's summary
judgment motion is granted, and the defendants'
motion to dismiss is denied.

### BACKGROUND

Plaintiff U2 Home Entertainment, Inc. ("U2") is a
California corporation doing business as Century
Home Entertainment, New Image Audio & Video
and Tai Seng Video Marketing. U2 is a distributor
of Chinese language motion pictures in the United
States, and obtains authority from motion picture
producers and distributors in Asia to import,
manufacture, and distribute their films in the United
States in videocassette, video compact disc ("VCD"
), and digital versatile disc ("DVD") formats.

Defendants Lai Ying Music & Video Trading, Inc. (
"Lai Ying") and Wei Ping Yuan ("Yuan") are the
operators of a retail video store in Manhattan that
stocks and sells Chinese language films among
other items. U2 alleges that the defendants imported
from Asia films for which U2 was the exclusive
licensed distributor ("U2 Films").

### Prior Action and Permanent Injunction

This is not the first time U2 has sued Lai Ying for
copyright infringement. U2 commenced a case
against Lai Ying and a neighboring store owned by
Lai Lai Musical Corp. before this Court on
February 23, 2001, captioned as *U2 Home
Entertainment, Inc. v. Lai Ying Music & Video
Trading, Inc.,* No. 01 Civ. 1348(DLC). On
February 26, the plaintiffs obtained an Order of
Seizure that was executed by the U.S. Marshals
Service on March 3, wherein over 200 unauthorized
VCD copies of over sixty U2 Film titles were
recovered from the stores, at least nine titles of
which came from Lai Ying. On March 30, U2 and
Lai Ying entered into a settlement agreement that
included a permanent injunction ("Injunction")
issued by this Court on the same date. Among other
things, the Injunction enjoined Lai Ying from
infringing U2's exclusive rights in motion pictures "
including but not limited to those identified in ... the
Complaint," as well as the "[m]anufacturing,
copying, duplicating, importing; or selling, renting
or otherwise distributing, of any unauthorized

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2005 WL 1231645 (S.D.N.Y.), 2005 Copr.L.Dec. P 28,999
**(Cite as: Not Reported in F.Supp.2d)**

videocassette or videodisc copies of the Subject Motion Pictures." The Injunction provided that " [t]he Court shall retain jurisdiction of the within action to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and/or enforce the provisions of the Judgment."

*Investigations and Seizures of Unauthorized Films*

**\*2** Through purchases of seven unauthorized motion pictures at Lai Ying made by investigators, U2 became aware that Lai Ying was continuing to sell unauthorized copies of U2 Films in early 2004. U2 commenced this action on February 17, 2004. It obtained an Order To Show Cause on February 18, as well as an Order of Seizure that was executed by the U.S. Marshals Service on February 21, wherein eighteen unauthorized copies of seventeen different U2 Films were recovered.[FN1] Continued purchases by U2 investigators after the initiation of this case and the February 21 seizure indicated that Lai Ying continued to sell unauthorized copies of U2 Films. U2 investigators purchased eleven copies of ten different U2 Films, including five titles that had been seized previously on February 21 .[FN2] On August 11, a second Order of Seizure was issued, and was executed by the U.S. Marshals Service on August 14, wherein 138 copies of twenty-three different U2 Films were recovered.[FN3] In total, including films that were seized by the U.S. Marshals or purchased by U2 investigators during this litigation and the prior litigation, approximately 174 unauthorized copies of 49 different U2 Film titles have been recovered from Lai Ying.[FN4]

FN1. The following titles represent the twenty-four films either seized from Lai Ying on February 21 or purchased by U2 investigators prior to the initiation of this action. Where more than one copy was recovered, the number of copies recovered is indicated in parentheses. The seven film titles with asterisks were also seized from Lai Ying in the March 3, 2001 seizure in the prior action.
1. Anna Magdalena*

2. Bakery Amour
3. Bullets Over Summer*
4. Cat and Mouse
5. Colour of the Truth
6. Diva, Ah Hey!
7. For Bad Boys Only
8. Ghost Office (2)
9. Ghosts
10. Gimme Gimme
11. Good Times, Bed Times
12. Healing Hearts*
13. Hit Team
14. Hot War*
15. Martial Angels
16. Men Suddenly In Black
17. Merry-Go-Round
18. Midnight Fly
19. Mission, The*
20. My Left Eye Sees Ghosts
21. Running On Karma
22. Sausalito*
23. Victim, The*
24. Wesley's Mysterious File, The

FN2. The following titles represent the ten films purchased by U2 investigators between March and July 2004. Where more than one copy was purchased, the number of copies purchased is indicated in parentheses. The five film titles with asterisks were also seized from Lai Ying in the February 21, 2004 seizure.
1. Cat and Mouse*
2. Colour of the Truth*
3. Diva, Ah Hey!*
4. Good Times Bed Times (2)*
5. Itchy Heart
6. Love on the Rocks
7. Men Suddenly in Black*
8. My Left Eye Sees Ghosts
9. Nine Girls and a Ghost
10. Papa Loves You

FN3. The following titles represent the twenty-three films seized from Lai Ying on August 14. Where more than one copy was recovered, the number of copies recovered is indicated in parentheses. The sequel number "two" in *No Problem 2* is written

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 3

Not Reported in F.Supp.2d, 2005 WL 1231645 (S.D.N.Y.), 2005 Copr.L.Dec. P 28,999
**(Cite as: Not Reported in F.Supp.2d)**

in arabic, not roman, numerals, and is not intended to indicate multiple copies seized. The two film titles with asterisks were also seized from Lai Ying in the February 21 seizure, as well as purchased by U2 investigators between March and July 2004.
1. Criminals (5)
2. Death Curse, The (4)
3. Gigolo & Whore II
4. Good Times, Bed Times (8)*
5. Haunted Office (2)
6. Indecent Woman
7. Irresistible Piggies, The (33)
8. Lady in Heat (2)
9. Losers' Club, The (2)
10. Love For All Seasons (13)
11. Marry a Rich Man
12. Men Suddenly in Black (9)*
13. Musa, the Warrior (4)
14. New Blood (19)
15. Nightmare (6)
16. No Problem 2
17. Okinawa Rendez-Vous
18. Police Case
19. Raped By an Angel
20. Raped By an Angel 4-The Rapist's Union
21. Sky of Love (21)
22. Sleeping With the Dead
23. To Seduce an Enemy

FN4. The complete list of films seized or purchased from Lai Ying in the course of this action is as follows. Where more than one copy was recovered, the number of copies recovered is indicated in parentheses.
1. Anna Magdalena
2. Bakery Amour
3. Bullets Over Summer
4. Cat and Mouse (2)
5. Colour of the Truth (2)
6. Criminals (5)
7. Death Curse, The (4)
8. Diva, Ah Hey! (2)
9. For Bad Boys Only
10. Ghost Office (2)
11. Ghosts

12. Gigolo & Whore II
13. Gimme Gimme
14. Good Times, Bed Times (11)
15. Haunted Office (2)
16. Healing Hearts
17. Hit Team
18. Hot War
19. Indecent Woman
20. Irresistible Piggies, The (33)
21. Itchy Heart
22. Lady in Heat (2)
23. Losers' Club, The (2)
24. Love For All Seasons (13)
25. Love on the Rocks
26. Marry a Rich Man
27. Martial Angels
28. Men Suddenly in Black (11)
29. Merry-Go-Round
30. Midnight Fly
31. Mission, The
32. Musa, the Warrior (4)
33. My Left Eye Sees Ghosts (2)
34. New Blood (19)
35. Nightmare (6)
36. Nine Girls and a Ghost
37. No Problem 2
38. Okinawa Rendez-Vous
39. Papa Loves You
40. Police Case
41. Raped By an Angel
42. Raped By an Angel 4-The Rapist's Union
43. Running on Karma
44. Sausalito
45. Sky of Love (21)
46. Sleeping With the Dead
47. To Seduce an Enemy
48. Victim, The
49. Wesley's Mysterious File, The

*Procedural History*

After the February 21 seizure, a hearing was held on March 19 to address the Order To Show Cause. Although the defendants defaulted by failing to answer by that date, it was agreed at the March 19 hearing, and ordered through an Order of March 22, that defendants' time to answer would be extended to March 26. The cutoff date for fact discovery was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1231645 (S.D.N.Y.), 2005 Copr.L.Dec. P 28,999
**(Cite as: Not Reported in F.Supp.2d)**

set for June 18.

The defendants later served counterclaims on U2 based on civil RICO racketeering charges and unfair business practices. U2 served interrogatories and document requests on the defendants on April 12, and Requests for Admission on May 19. The Requests for Admission contained two requests: first, that the defendants admit that "[e]ach of Plaintiff's Motion Pictures is protected under the Copyright Laws of the United States," and second, that the defendants admit that "Plaintiff U2 Home Entertainment Inc. is the owner of exclusive distribution rights for each of Plaintiff's Motion Pictures." [FN5] A telephone conference was held on June 11 to resolve discovery issues, wherein it became apparent that the defendants had failed to produce documents in response to the April 12 document request. Defendants were ordered, among other things, to respond to U2's document requests by June 18.

> FN5. "Plaintiff's Motion Pictures" was defined as the list of motion picture titles appended to the Requests for Admission. This list contained the twenty-four titles of films either seized from Lai Ying on February 21 or purchased by U2 investigators prior to the initiation of this action as listed above in footnote 1.

A follow-up conference was held on June 18. Plaintiff's counsel explained that the defendants had produced a small number of documents that morning, but that they had failed to make a formal response or to produce any documents responsive to the vast majority of U2's requests, and that the documents they did produce were incomplete sets of purchase invoices, tax returns, and bank statements. Among other things, the defendants had not produced any documents to identify their source for the seized movies, and had not produced documents supporting their counterclaims against the plaintiff. Plaintiff's counsel also explained that the defendants' responses to U2's interrogatories were inadequate to the extent that they noted that there were ten witnesses in addition to Yuan with information but that they wished not to be identified. At the June 18 conference, the defendants were ordered, among other things, to serve a formal response to the document requests by June 28. Defense counsel was ordered to consult with his clients, review their records, and ensure that their document production was complete. The cutoff date for fact discovery other than third party discovery was extended to July 30.

**\*3** A conference was held on August 20 to address issues surrounding the August 11 seizure of unauthorized U2 Films at Lai Ying, as well as additional discovery issues. At the August 20 conference, plaintiff's counsel represented that U2 had subpoenaed bank statements from HSBC that indicated that Lai Ying had made purchases totaling over $500,000 from a Hong Kong importer over the approximately eighteen month period at issue in this litigation. Counsel for the defendants admitted that in their document production, the defendants had only produced invoices for approximately $20,000 worth of goods, leaving almost all of the defendants' purchasing activity unaccounted for. The defendants were ordered to produce invoices responsive to the plaintiff's requests by August 27 or else their counterclaims would be dismissed. As of August 20, the defendants still had not produced any documents to support their counterclaims. At the August 20 conference, the defendants also requested leave to amend their Answer to add an antitrust counterclaim. This request was denied because fact discovery between the parties had been scheduled to be completed by July 30, making such a request untimely and prejudicial to the plaintiff, particularly in light of the fact that the amendment would transform the litigation, and because the defendants had not participated in good faith over the course of the litigation by producing discovery materials. Fact discovery including discovery of third parties was scheduled to close on October 8, 2004.

By a letter dated August 27, the defendants indicated that they had not complied with the order to produce invoices responsive to the plaintiff's requests by that date, and requested an extension of the deadline to September 3. The defendants did not produce the requested invoices by September 3. At a conference on September 13, plaintiff's counsel

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2005 WL 1231645 (S.D.N.Y.), 2005 Copr.L.Dec. P 28,999
(Cite as: Not Reported in F.Supp.2d)

stated that he had received some invoices from the defendants on September 10, but that those invoices only totaled approximately $40,000 in purchases, and that they were only for sound recordings and concert DVDs, not for motion pictures. Counsel for the defendants acknowledged the limited scope of this document production, and represented that this was all the defendants had provided; he noted that no one from his law firm had visited Lai Ying's place of business or Yuan's home to confirm whether this was the complete set of invoices the defendants had on file. Consequently, the defendants' counterclaims were dismissed for their failure to participate in discovery in good faith. To this date, the defendants also have failed to respond to U2's requests for admission, and have not moved to withdraw or amend their admissions.

U2 subsequently moved for summary judgment on its copyright claims, seeking maximum statutory damages as well as attorney's fees and a finding of contempt. The defendants cross-moved to dismiss the Complaint for failure to state a claim.

## DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings. Rule 56(e), Fed.R.Civ.P.; *accord Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.,* 302 F.3d 83, 91 (2d Cir.2002).

### Copyright Infringement

**\*4** A copyright infringement claim has two elements: "ownership of a valid copyright and the copying of constituent elements of the work that are original." *Fonar Corp. v. Domenick,* 105 F.3d 99, 103 (2d Cir.1997). "A certificate of copyright registration is prima facie evidence that the copyright is valid." *Id.* at 104. *See also* 17 U.S.C. § 410(c). Section 201(d) of the Copyright Act provides for the transfer of copyright ownership:

(1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.

(2) Any of the exclusive rights comprised in a copyright ... may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.

17 U.S.C. § 201(d). Thus, although an exclusive licensee is not a copyright owner, "exclusive licensees are treated as copyright owners for the purpose of protection and remedy pursuant to § 201(d)(2)." *Morris v. Business Concepts, Inc.,* 259 F.3d 65, 70 (2d Cir.2001). For that reason, an exclusive licensee of a copyright can sue for copyright infringement. *Random House, Inc. v. Rosetta Books LLC,* 283 F.3d 490, 491 (2d Cir.2002).[FN6]

> FN6. Section 501 provides for enforcement:
> (a) *Anyone* who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 ..., or *who imports copies* or phonorecords into the United States *in violation of section 602, is an infringer* of the copyright ....
> (b) The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1231645 (S.D.N.Y.), 2005 Copr.L.Dec. P 28,999
**(Cite as: Not Reported in F.Supp.2d)**

committed while he or she is the owner of it.
17 U.S.C. § 501 (emphasis supplied).

Rights which, if licensed, may be vindicated by an exclusive licensee in a copyright action, include the right to distribute a work. *See Gamma Audio & Video, Inc. v. Ean-Chea,* 11 F.3d 1106, 1112 (1st Cir.1993). *See also* 17 U.S.C. § 106(3).[FN7] The right to distribute a work includes the right to import it. 17 U .S.C. § 602(a).[FN8] This right exists despite the doctrine that is labeled the "first sale doctrine." Under that doctrine, a copyright owner is deemed to have consented to subsequent sales of a copyrighted work once the copyright owner has authorized the first sale of the item. This right of an acquirer to resell copies is limited, however, to his possession of authorized copies. Under the first sale doctrine, the owner of copies of a work may resell or otherwise dispose of those copies without seeking permission from the copyright owner only so long as the copies were "lawfully made under this title." 17 U.S.C. § 109(a).[FN9] In this context, the Supreme Court has stated:

> FN7. The relevant portion of Section 106 reads as follows:
> *[T]he owner of copyright under this title has the exclusive rights* to do and to authorize any of the following:
> ....
> (3) *to distribute copies* or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending....
> 17 U.S.C. § 106 (emphasis supplied).

> FN8. Section 602(a) provides:
> *Importation* into the United States, *without the authority of the owner of copyright under this title,* of copies or phonorecords of a work that have been acquired outside the United States *is an infringement* of the exclusive right to distribute copies or phonorecords under section 106, actionable under section 501.
> 17 U.S.C. § 602(a) (emphasis supplied). The provision excludes importation for

government, private, or educational use. *Id.*

> FN9. The relevant portion of Section 109(a) states:
> Notwithstanding the provisions of section 106(3), *the owner of a particular copy* or phonorecord *lawfully made* under this title, *or any person authorized by such owner, is entitled,* without the authority of the copyright owner, *to sell* or otherwise dispose of the possession of *that copy* or phonorecord.
> 17 U.S.C. § 109(a) (emphasis supplied). Section 106(3), which is quoted *supra* at n. 7, gives a copyright owner the exclusive right to distribute copies. 17 U.S.C. § 106(3).

If the author of the work gave the exclusive United States distribution rights-enforceable under the Act-to the publisher of the United States edition and the exclusive British distribution rights to the publisher of the British edition, however, presumably only those made by the publisher of the United States edition would be "lawfully made under this title" within the meaning of § 109(a).
*Quality King Distributors v. L'anza Research Int'l, Inc.,* 523 U.S. 135, 148 (1998). Consequently, the importation of copies into the United States of a work manufactured in a foreign country can form the basis for a copyright infringement claim by an exclusive licensed U.S. distributor without regard to the first sale doctrine. *See id.* at 152; *Lingo Corp. v. Topix, Inc.,* No. 01 Civ. 2863(RMB), 2003 WL 223454, at *4 (S.D.N.Y. Jan. 31, 2003).

**\*5** Under Rule 36, Fed.R.Civ.P., a party may serve upon another party written requests for admissions of the truth of statements of fact, or the application of law to facts, pertaining to the pending action. The matter of which an admission is requested "is admitted unless, within 30 days after service of the request, ... the party to whom the request is directed serves ... a written answer or objection addressed to the matter, signed by the party or the party's attorney." Rule 36(a), Fed.R.Civ.P. "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Rule 36(b),

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1231645 (S.D.N.Y.), 2005 Copr.L.Dec. P 28,999
**(Cite as: Not Reported in F.Supp.2d)**

Fed.R.Civ.P. *See Moosman v. Joseph P. Blitz, Inc.,* 358 F.2d 686, 688 (2d Cir.1966); *Commodity Futures Trading Comm'n v. Int'l Fin. Servs. (N.Y.), Inc.,* 323 F.Supp.2d 482, 506 (S.D.N.Y.2004) (Lynch, J.). It is "well settled that a failure to respond to a request to admit will permit the District Court to enter summary judgment if the facts as admitted are dispositive." *Moosman,* 358 F.2d at 688.

The defendants attempt to resist summary judgment primarily on the ground that U2 has not proven its chain of title to any exclusive right of copyright ownership in any film at issue here.[FN10] The defendants do not dispute any of the factual matters surrounding the seizures and purchases of U2 Films in this case, including that the seized copies had not been sold to the defendants by U2 or otherwise lawfully obtained for resale. Consistent with their failures to respond to discovery requests in this matter, the defendants have failed to respond to U2's requests for admission, and therefore they are deemed to have admitted the facts and legal conclusions contained therein. As a result, the defendants have admitted that U2 has exclusive distribution rights in the twenty-four titles listed in footnote 1. The defendants have not moved to withdraw or amend their admissions. Therefore, summary judgment is granted in favor of U2 for those twenty-four titles.

> FN10. The defendants' argument that U2 cannot rely on *res judicata* or collateral estoppel is inapposite, as U2 does not advance such arguments.

With respect to the remaining twenty-five titles, U2 has provided copies of the copyright registration, as well as the licensing and distribution agreements that lead to U2's current ownership of exclusive U.S. distribution rights.[FN11] The defendants assert that U2 has failed to prove its chain of title to such rights, but their analysis stops at this assertion. The defendants do not point to any missing link in U2's chain of title for any of the U2 Films. Moreover, although the defendants argue that U2 cannot prove that any elements of the U2 Films are original, they offer no reason why the U2 Films are not original,

and therefore cannot defeat the prima facie validity of the certificates of copyright registration. *See Fonar Corp.,* 105 F.3d at 104. Consequently, summary judgment is granted in favor of U2 for the other twenty-five titles.[FN12]

> FN11. U2 has also provided such documents for the twenty-four titles listed in footnote 1, although the defendants' failure to respond to U2's Requests for Admission makes reference to those documents unnecessary. Nonetheless, even if the defendants had responded to and denied U2's Requests for Admission, summary judgment would be granted in favor of U2 based on its production of chain of title documents for the twenty-four titles listed in footnote 1.

> FN12. Although the plaintiff alleged trademark infringement and unfair competition claims in the Complaint, the plaintiff has agreed to waive those claims in the event summary judgment is granted on the copyright claims.

*Damages and Contempt*

Section 504(a) of the Copyright Act states that "an infringer of copyright is liable for either-(1) the copyright owner's actual damages and any additional profits of the infringer ...; or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a). Subsection (c) provides that "the copyright owner may elect ... to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). In addition, where the court finds willful infringement, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). *See also N .A.S. Import, Corp. v. Chenson Enters., Inc.,* 968 F.2d 250, 252 (2d Cir.1992). "[N]o award

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 8

Not Reported in F.Supp.2d, 2005 WL 1231645 (S.D.N.Y.), 2005 Copr.L.Dec. P 28,999
**(Cite as: Not Reported in F.Supp.2d)**

of statutory damages ... shall be made for ... any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412. *See also On Davis v. The Gap, Inc.,* 246 F.3d 152, 158 n. 1 (2d Cir.2001). [FN13]

> FN13. In their motion to dismiss, the defendants argue that U2 is not entitled to statutory damages and attorney's fees under a registration in the name of another party. Earlier analysis, however, demonstrates that the importation of copies into the United States of a work manufactured in a foreign country can form the basis for a copyright infringement claim by an exclusive licensed U.S. distributor, and that such distributor can vindicate the rights of the copyright registration owner. Consequently, a licensed distributor may be entitled to statutory damages and attorney's fees without having the copyright registration in its own name.

*\*6* "In determining an award of statutory damages within the applicable limits set by the Act, a court may consider the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendant's conduct, and the infringers' state of mind-whether wilful, knowing, or merely innocent." *N.A.S. Import,* 968 F.2d at 252 (citations omitted). "[S]tatutory damages are not meant to be merely compensatory or restitutionary. The statutory award is also meant to discourage wrongful conduct." *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 113-14 (2d Cir.2001) (citation omitted).

"[A] defendant's copyright infringement will be found willful pursuant to § 504(c)(2) where the defendant had knowledge that its conduct constituted infringement or showed reckless disregard for the copyright holder's rights." *Lipton v. Nature Co.,* 71 F.3d 464, 472 (2d Cir.1995). "

Although courts are generally reluctant to dispose of a case on summary judgment when mental state is at issue, it is permissible to do so where there are sufficient undisputed material facts on the record to make the question appropriate for summary judgment." *Id.* "Knowledge of infringement may be constructive rather than actual; that is, it need not be proven directly but may be inferred from the defendant's conduct. Reckless disregard of the copyright holder's rights suffices to warrant award of the enhanced damages." *Knitwaves, Inc. v. Lollytogs, Ltd.,* 71 F.3d 996, 1010 (2d Cir.1995) (citation omitted).

Findings of contempt for violation of a court order can be either civil or criminal in nature. *N.Y. State Nat'l Org. for Women v. Terry,* 159 F.3d 86, 93 (2d Cir.1998).
Civil contempt fines seek one of two objectives. One is coercion-to force the contemnor to conform his conduct to the court's order. The second is compensation. Where the contumacious conduct has caused injury to the beneficiary of the court's order, a civil fine may be imposed on the contemnor to compensate the victim for the loss or harm caused by the unlawful conduct. Criminal fines, by contrast, are intended primarily to punish the contemnor and vindicate the authority of the court.

*Id.* Factors supporting the conclusion that a contempt fine is civil in nature include whether the fine is "calibrated to damages caused by the contumacious activities," and whether the fine is payable to the injured party. *Id.* at 94 (citation omitted). The Second Circuit has upheld maximum statutory damages, as well as awards of attorney's fees, where a defendant continued to infringe a copyright in violation of a court's injunction. *Kepner-Tregoe, Inc. v. Vroom,* 186 F.3d 283, 289 (2d Cir.1999).

U2 seeks statutory damages for 47 of the 49 infringed U2 Films and a finding of contempt.[FN14] If there was any question as to the defendants' knowledge that their importation of films from Asia could violate U2's copyrights, that question was eliminated at the conclusion of the prior action with the Injunction. Since the Injunction's issuance, however, the defendants have flagrantly disregarded

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1231645 (S.D.N.Y.), 2005 Copr.L.Dec. P 28,999
**(Cite as: Not Reported in F.Supp.2d)**

it. They have willfully continued to import at least seven of the same films that were seized as part of the prior action, if not more. In addition, they have recklessly disregarded U2's copyrights, importing a slew of copies of other protected films.

> FN14. U2 does not seek statutory damages for two of the infringed U2 Films-*Men Suddenly in Black* and *The Death Curse* -because they do not meet the requirement in 17 U.S.C. § 412 that the infringement of copyright commenced after the effective date of a work's copyright registration, or before the registration where registration was made within three months after the first publication of the work.

**\*7** The defendants also have consistently failed to take this litigation seriously. Not only did they continue to stock and sell infringing imported copies of U2 Films after the February 21, 2004 seizure, leading to a second Order of Seizure, but they refused to participate in discovery in any meaningful way, resulting in, among other things, unacceptably inadequate document production. Indeed, the defendants' near desertion of the discovery process has made it impossible to ascertain the true extent of their infringing activities. Maximum statutory damages for willful and reckless infringement in the amount of $150,000 per infringed title are therefore appropriate, leading to statutory damages of $7,050,000.

Because the defendants have willfully, knowingly, and intentionally violated the terms of the Injunction enjoining them from infringing U2's exclusive rights in motion pictures "including but not limited to those identified in ... the Complaint," a finding that the defendants are in contempt is appropriate. As maximum statutory damages have already been awarded for 47 of the 49 titles at issue, additional contempt fines will not be levied with respect to those titles.

With respect to the remaining two titles, a civil contempt fine equivalent to maximum statutory damages and payable to the plaintiff is appropriate,

leading to a total award to U2 of $7,350,000. The award on these two titles is intended to compensate the plaintiff for the losses suffered due to the infringing conduct and the associated harm to its business reputation. In the absence of access to the defendants' business records it is difficult to calibrate the sanction to the damages suffered from the contemptuous conduct, but as the defendants themselves have created that difficulty, it is appropriate to apply the statutory formula for damages as a reasonable proxy.

### Attorney's Fees

The Copyright Act permits a court "in its discretion" to award costs, including a "reasonable attorney's fee," to the prevailing party in a copyright infringement action. 17 U.S.C. § 505 ("Section 505" ). In deciding whether to award such costs and fees, courts may consider, among other factors, " frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v.. Fantasy, Inc.,* 510 U.S. 517, 534 n. 19 (1994).[FN15] Such factors must be applied in a manner that is " faithful to the purposes of the Copyright Act," *id.,* with such purposes including an interest in encouraging defendants to litigate copyright defenses "to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* at 527. A finding that a defendant's copyright infringement was willful can support the award of attorney's fees to the plaintiff. *Kepner-Tregoe,* 186 F.3d at 289. Moreover, a finding of contempt against a defendant can support an award of attorney's fees unless such an award is otherwise prohibited by statute. *See Herman v. Davis Acoustical Corp.,* 196 F.3d 354, 357 (2d Cir.1999). As in the case of statutory damages, the Copyright Act prohibits awarding attorney's fees for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412. Even if a losing party's claims were objectively reasonable, fees may

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 10

Not Reported in F.Supp.2d, 2005 WL 1231645 (S.D.N.Y.), 2005 Copr.L.Dec. P 28,999
(Cite as: Not Reported in F.Supp.2d)

still be awarded, *Matthew Bender & Co. v. West Publ'g Co.,* 240 F.3d 116, 123 (2d Cir.2001), because "bad faith in the conduct of the litigation is a valid ground for an award of fees." *Id.* at 125.

> FN15. Counsel for the plaintiff argues that awarding attorney's fees to plaintiffs in copyright cases is "the rule rather than the exception" and "should be awarded routinely." Counsel cites *Matthew Bender,* 240 F.3d 116, as well as *Whimsicality, Inc. v. Rubie's Costume Co.,* 891 F.2d 452, 457 (2d Cir.1989), and *Diamond v. Am-Law Pub. Co.,* 745 F.2d 142, 148 (2d Cir.1984), for this proposition. Not only does this rule not appear in *Matthew Bender,* but the rule as expressed in *Whimsicality* and *Diamond* was rejected by the Supreme Court eleven years ago in *Fogerty,* 510 U.S. at 521 n. 8, 534, a case plaintiff's counsel also cites.

**\*8** The defendants have presented no evidence to support any defense in this action, and have refused to participate in the discovery process. Given the defendants' willful infringement and contempt, as well as their bad faith participation in this litigation, an award of attorney's fees is appropriate.

*Defendants' Motion To Dismiss*

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P. Pleadings are to give "fair notice" of a claim and "the grounds upon which they rest" in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case. *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512 (2002). "The federal rules allow simple pleadings and rely on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Phillip v. Univ. of Rochester,* 316 F.3d 291, 293 (2d Cir.2003) (citation omitted).

Because Rule 8 is fashioned in the interest of fair

and reasonable notice, not technicality, "extensive pleading of facts is not required." *Wynder v. McMahon,* 360 F.3d 73, 77 (2d Cir.2004) (citation omitted). If it is clear, however, that "no relief could be granted under any set of facts that could be proved consistent with the allegations," the complaint should be dismissed. *Swierkiewicz,* 534 U.S. at 514. In construing the complaint, the court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). Applying the same test later enunciated in *Swierkiewicz,* the Seventh Circuit has held that copyright infringement claims need not be pled with particularity. *Mid America Title Co. v. Kirk,* 991 F.2d 417, 421 (7th Cir.1993). Copyright infringement claims "simply alleging present ownership by plaintiff, registration in compliance with the applicable statute, and infringement by defendant, have been held sufficient." *Id.* at 421 n. 8. In addition to the pleadings, the court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) (citation omitted).

The defendants' main argument in support of their motion to dismiss is that the Complaint fails to specify the works that were the subject of this action where it states: "Upon information and belief, Defendants have from time to time within the past three years engaged in or authorized the illegal and unauthorized importation or duplication of plaintiff's copyrighted motion pictures, *including but not limited to* certain of those listed in Exhibit A." (Emphasis supplied.) Exhibit A contains copyright registration forms for seven U2 Film titles, [FN16] as well as copyright registration list of all U2 Films as of January 30, 2004, including each motion picture's copyright registration number and copyright registration date. Collectively, Exhibit A contains 40 of the 49 U2 Film titles seized or purchased from Lai Ying in the course of this action as listed in footnote 4.[FN17] That the Complaint contains an unrestrictive clause providing for the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 11

Not Reported in F.Supp.2d, 2005 WL 1231645 (S.D.N.Y.), 2005 Copr.L.Dec. P 28,999
**(Cite as: Not Reported in F.Supp.2d)**

inclusion of other motion pictures not listed in Exhibit A does not cause the Complaint to run afoul of Rule 8's liberal pleading standard.

> FN16. The seven U2 Film titles are: *Cat and Mouse; Good Times, Bed Times; Diva, Ah Hey!; My Left Eye Sees Ghosts; Running On Karma; Colour of the Truth;* and *Men Suddenly In Black.*

> FN17. The nine U2 Films that are not contained in Exhibit A to the Complaint are: *Anna Magdalena; The Death Curse; Hot War; Itchy Heart; Love on the Rocks; Papa Loves You; Police Case; Raped By An Angel;* and *Sky of Love.*

**\*9** Although the defendants also argue that the Complaint fails to allege when and how they infringed U2's copyrights, the Complaint alleges that the defendants "engaged in or authorized the illegal and unauthorized importation or duplication of plaintiff's copyrighted motion pictures" within the "past three years." This states the basis for recovery with sufficient clarity, and to the extent that the cases defendants cite can be read to require more, this Court respectfully declines to follow them. *See Marvullo v. Gruner & Jahr,* 105 F.Supp.2d 225, 230 (S.D.N.Y.2000); *Hartman v. Hallmark Cards, Inc.,* 639 F.Supp. 816, 820 (W.D.Mo.1986); *In re "Santa Barbara Like It Is Today" Copyright Infringement Litig.,* 94 F.R.D. 105, 108 (D.Nev.1982).

To the extent that the defendants argue that the Complaint does not allege U2's ownership interest in any specific work nor how U2 obtained that interest, such particularity in pleadings is not required. The Complaint sufficiently alleges ownership where it states that "[a]t all times material hereto, Plaintiff was and is the sole and exclusive licensee in the United States for the importation, reproduction and distribution of certain Chinese language motion pictures which consists [sic] of theatrical motion pictures and television programs originally produced and released in various Asian countries." To the extent that the defendants complain about the "murkiness" of the

plaintiff's allegations of chain of title, it is unnecessary for the Complaint to include such detailed factual recitation; to the extent that the defendants complain about the "murkiness" of the plaintiff's actual chain of title for the film *Men Suddenly In Black,* they have already conceded, by failing to respond to the Requests for Admission, that U2 is the owner of exclusive distribution rights for that film. Therefore, the defendants' motion to dismiss is denied.

### CONCLUSION

U2's summary judgment motion is granted. U2 is awarded $7,050,000 in statutory damages and $300,000 in civil contempt fines. U2 is also awarded attorney's fees in an amount to be determined. The defendants' motion to dismiss is denied.

SO ORDERED:

S.D.N.Y.,2005.
U2 Home Entertainment, Inc. v. Lai Ying Music & Video Trading, Inc.
Not Reported in F.Supp.2d, 2005 WL 1231645 (S.D.N.Y.), 2005 Copr.L.Dec. P 28,999

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                 Page 1

Slip Copy, 2007 WL 1031659 (C.A.2 (N.Y.))
**(Cite as: Slip Copy)**

**H**
U2 Home Entertainment, Inc. v. Wei Ping Yuan
C.A.2 (N.Y.),2007.
Only the Westlaw citation is currently
available.This case was not selected for publication
in the Federal Reporter.RULINGS BY SUMMARY
ORDER DO NOT HAVE PRECEDENTIAL
EFFECT. CITATION TO SUMMARY ORDERS
FILED AFTER JANUARY 1, 2007, IS
PERMITTED AND IS GOVERNED BY THIS
COURT'S LOCAL RULE 0.23 AND FEDERAL
RULE OF APPELLATE PROCEDURE 32.1. IN A
BRIEF OR OTHER PAPER IN WHICH A
LITIGANT CITES A SUMMARY ORDER, IN
EACH PARAGRAPH IN WHICH A CITATION
APPEARS, AT LEAST ONE CITATION MUST
EITHER BE TO THE FEDERAL APPENDIX OR
BE ACCOMPANIED BY THE NOTATION: "
(SUMMARY ORDER)", UNLESS THE
SUMMARY ORDER IS AVAILABLE IN AN
ELECTRONIC DATABASE WHICH IS
PUBLICLY ACCESSIBLE WITHOUT
PAYMENT OF FEE (SUCH AS THE
DATABASE AVAILABLE AT
HTTP://WWW.CA2.USCOURTS.GOV), THE
PARTY CITING THE SUMMARY ORDER
MUST FILE AND SERVE A COPY OF THAT
SUMMARY ORDER TOGETHER WITH THE
PAPER IN WHICH THE SUMMARY ORDER IS
CITED. IF NO COPY IS SERVED BY REASON
OF THE AVAILABILITY OF THE ORDER ON
SUCH A DATABASE, THE CITATION MUST
INCLUDE REFERENCE TO THAT DATABASE
AND THE DOCKET NUMBER OF THE CASE
IN WHICH THE ORDER WAS ENTERED.Please
use FIND to look at the applicable circuit court rule
before citing this opinion. Second Circuit Rules §
0.23. (FIND CTA2 s 0.23.)
United States Court of Appeals,Second Circuit.
U2 HOME ENTERTAINMENT, INC.,
Plaintiff-Appellee,
v.
WEI PING YUAN and Lai Ying Music & Video
Trading, Inc., Defendants-Appellants.

Nos. 05-2782-CV(L), 05-5390-CV(CON).

March 30, 2007.

Appeal from the United States District Court for the
Southern District of New York (Cote, J.).

Hanbin Wang, Law Offices of Hanbin Wang, New
York, NY, for Appellant.

Harvey Shapiro, Sargoy, Stein, Rosen & Shapiro,
New York, NY, for Appellees.

Present: ROSEMARY S. POOLER, REENA
RAGGI, Circuit Judges, LEONARD B. SAND,[FN*]
District Judge.

> FN* The Honorable Leonard B. Sand,
> United States District Court for the
> Southern District of New York, sitting by
> designation.

**SUMMARY ORDER**

**\*1 ON CONSIDERATION WHEREOF, IT IS
HEREBY ORDERED, ADJUDGED, AND
DECREED** that the judgment of said District Court
be and it hereby is **AFFIRMED** in part and
**VACATED AND REMANDED** in part.

Defendants-appellants Lai Ying Music and Video
Trading, Inc. and Wei Ping Yuan appeal the May
25, 2005, judgment of the United States District
Court for the Southern District of New York (Cote,
J.), granting summary judgment for plaintiff U2
Home Entertainment, Inc. ("U2") on its claims of
copyright infringement, awarding U2 $7,050,000 in
damages, and ordering defendants to pay U2
$300,000 as a civil contempt fine. Defendants also
appeal the district court's September 12, 2005, order
denying defendants' motion to amend, modify, or
withdraw the judgment pursuant to Rule 59 of the
Federal Rules of Civil Procedure. We assume the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                     Page 2

Slip Copy, 2007 WL 1031659 (C.A.2 (N.Y.))
**(Cite as: Slip Copy)**

parties' familiarity with the facts, procedural history, and specification of issues on appeal.

Defendants argue that the district court erred in granting summary judgment and then awarding maximum statutory damages based on a finding of willful infringement. We review a district court's summary judgment ruling de novo. *See Blanch v. Koons,* 467 F.3d 244, 249 (2d Cir.2006). We review the district court's determination that defendants willfully infringed U2's copyright for clear error, *see Hamil Am. Inc. v. GFI,* 193 F.3d 92, 97 (2d Cir.1999), and we review the court's award of damages for abuse of discretion, *see Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,* 166 F.3d 65, 74 (2d Cir.1999). We affirm the summary judgment ruling and the award of damages for substantially the same reasons set forth in the district court's opinion. Although defendants now attempt to point to defects in the title documents supporting U2's claim of copyright ownership, defendants raised only general objections to these documents before the district court. Thus, defendants' specific claims of defect are waived, because they were raised for the first time on appeal. *See Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 114 (2d Cir.2005).

Defendants also argue that the district court improperly calculated the civil contempt fine levied with respect to two of the forty-nine films at issue. We review a contempt order for abuse of discretion. *See OSRecovery, Inc. v. One Groupe Int'l, Inc.,* 462 F.3d 87, 93 (2d Cir.2006). However, "because the power of a district court to impose contempt liability is carefully limited, our review of a contempt order for abuse of discretion is more rigorous than would be the case in other situations in which abuse-of-discretion review is conducted." *Id.* (internal quotation marks omitted). In contrast to the punitive nature of a criminal contempt order, a civil contempt order is remedial in nature. *Id.* at 92 n. 2. A civil contempt fine may be coercive or compensatory. *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 657 (2d Cir.2004). Where a fine serves a coercive purpose, a "court has broad discretion to design a remedy that will bring about compliance." *Id.* (internal quotation marks omitted).

On the other hand, where a fine is compensatory, " the district court has less discretion." *Id.* at 658. Unlike a coercive fine, a compensatory fine is payable directly to the opposing party. As a result, " the sanction should *correspond at least to some degree with the amount of damages.*" *Id.* (emphasis added) (internal quotation marks omitted). While a fine may be both coercive and compensatory, "*some proof of loss must be present* to justify its compensatory aspects." *Id.* (emphasis added) (quoting *N.Y. State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1353 (2d Cir.1989).

**\*2** In this case, the record indicates that the challenged award was intended to be compensatory and not coercive. The district court ordered defendants to pay a contempt fine "to compensate the plaintiff for the losses suffered due to the infringing conduct and the associated harm to its business reputation." **[SA 36]** In calculating the award, the court explained that "[i]n the absence of access to the defendants' business records it is difficult to calibrate the sanction to the damages suffered from the contemptuous conduct." **[SA 36]** Therefore, the court concluded that it was " appropriate to apply the statutory formula for damages as a reasonable proxy" for compensatory damages. **[SA 36]** We recognize that defendants' failure to participate adequately in discovery made it very difficult for the district court to calculate the appropriate fine. Such conduct should hardly inure to their benefit. *See RSO Records, Inc. v. Peri,* 596 F.Supp. 849, 662 (S.D.N.Y.1984) ("Any information which may be available on the exact amount of profits or damages is entirely in the hands of the defendants.... They have chosen to remain silent. Plaintiffs should not be penalized thereby."). However, while some approximation may be necessary, we emphasize that the "sanction should correspond at least to some degree with the amount of damages ." *Paramedics Electromedicina Comercial, Ltda,* 369 F.3d at 658 (internal quotation marks omitted). We do not foreclose the possibility that in some civil contempt cases, statutory damages may be useful in estimating actual damages. *See, e.g., Time Warner Cable of N.Y. City v. U.S. Cable T.V., Inc.,* 920 F.Supp. 321, 329 (E.D.N.Y.1996). But in this case, the district court erred in imposing civil contempt sanctions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1031659 (C.A.2 (N.Y.))
**(Cite as: Slip Copy)**

equivalent to the maximum statutory damages for "willful" copyright violations under 17 U.S.C. § 504(c)(2) because such damages are punitive in nature, *see On Davis v. The Gap, Inc.,* 246 F.3d 152, 172 (2d Cir.2001), and thus inconsistent with the remedial purpose of a compensatory civil contempt fine. In sum, the district court abused its discretion when it ordered defendants to pay a civil contempt fine that was implicitly based not only on compensating plaintiff's reasonably estimated loss but also on punishing defendants' willfulness. Accordingly, we vacate and remand for further proceedings following discovery with respect to the compensatory fine as to two of the forty-nine films at issue. Should defendants not participate adequately in such discovery, the district court may, after further submissions from U2, conclude that the fine it initially imposed continues to be its best estimate of "proof of loss" under the circumstances, so long as the basis for the district court's conclusion is not the statutory damages figure for "willful" infringement.

We have considered defendants' remaining arguments and find them to be without merit. For the reasons set forth above, the judgment of the District Court is hereby **AFFIRMED** in part and **VACATED AND REMANDED** in part.

C.A.2 (N.Y.),2007.
U2 Home Entertainment, Inc. v. Wei Ping Yuan
Slip Copy, 2007 WL 1031659 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    NOV 2 1 2005    ★

P.M.
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

ENTRAL GROUP INTERNATIONAL, LLC,    )
                                    )    Case No: 05-cv-1652
              Plaintiff,            )
                                    )
         v.                         )    DEFAULT JUDGMENT
                                    )
K B 28, INC, XIU XIN TAN, and SU JIANG,    )
                                    )
              Defendants.           )
--------------------------------------------------------------

The summons and complaint in this action having been duly served on the

defendants K B 28, Xiu Xin Tan, and Su Jiang on April 7, 2005 and said defendants

having failed to plead or otherwise defend in this action, and said default having been

duly noted, and upon the annexed affidavit of default judgment,

NOW, on motion of David Wienir, the attorney for the plaintiff, it is hereby

ORDERED and ADJUDGED that Entral Group International, the plaintiff, does

recover of K B 28, Xiu Xin Tan, and Su Jiang, the defendants, residing at 6212A 11th

Avenue, Brooklyn, New York, 11219 the sum of $2,100,000, the amount claimed, with

$595.00 costs and disbursements, amounting in all to the sum of $2,100,595.00, plus

interest at the legal rate in effect on the date of this judgment; and, that the plaintiff have

execution therefore.


Dated: Brooklyn, New York
       October____, 2005
       November 10,                    By: _____
                                            District Judge