UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

NORTH AMERICAN KARAOKE-
WORKS TRADE ASSOCIATION, INC.,

                Plaintiff-Counterclaim
                Defendant,

       -against-

ENTRAL GROUP INTERNATIONAL,
LLC,

                Defendant-
                Counterclaimant,

       -against-

SAM CHAN and RAY YIM,

                Counterclaim
                Defendants.

-------------------------------------------------------X

Case No.

06cv5158(LTS)(MHD)

ECF CASE

# MEMORANDUM OF LAW IN SUPPORT OF COUNTERCLAIM DEFENDANTS' OPPOSITION TO COUNTERCLAIM PLAINTIFF'S DAMAGES SUBMISSION

## DAVID J. HOFFMAN
### ATTORNEY AT LAW
29 BROADWAY
27TH FLOOR
NEW YORK, NEW YORK 10006
TEL: (212) 425-0550

Dockets.Justia.com

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES .........................................................................v

FACTUAL AND PROCEDURAL BACKGROUND......................................1

ARGUMENT ...............................................................................................2

I.    An Entry of Damages Would Compound the Procedural Defects....................2

  A.    The Court has not Followed Proper Default Judgment Procedure..................2

  B.    The Court Failed to Follow Proper Sanctions Procedure..................................2

II.   EGI Does Not State a Claim for Copyright Infringement................................3

  A.    EGI Alleges Infringement by Creation of Derivative Works ...........................3

    1.    The Audio and Video Components of the Works are Separate.....................4

    2.    EGI has no Rights to the Musical Composition ...........................................4

  B.    The Incorporation of Unaltered Sound Recordings in the NAKTA
        Works is not the Creation of a Derivative Work................................................5

    1.    EGI Acknowledges that the Sound Recordings Are Identical......................6

    2.    There is no Liability for the Performance of Derivative Works ..................6

III.  EGI does not have Standing to Sue for Copyright Infringement.....................7

  A.    Neither the Record Companies nor TCW Granted EGI the Exclusive
        Right to Create Derivative Works......................................................................7

  B.    EGI is not the Copyright Owner .......................................................................8

  C.    EGI did not Show that TCW Could Transfer its Rights....................................8

IV.   The Certificates of Registration are Defective..................................................9

  A.    EGI is not Listed as the Claimant for any Registered Work ............................9

    1.    All of the Registrations were Filed After EGI and TCW Entered Into
          the Master Agreement .......................................................................................9

i

C.  EGI has the Burden to Prove its Chain of Title in Unregistered and Late-Registered Works ..................................................................................... 10

1.  The Certificates Incorrectly Identify the Nation of Citizenship and Publication .......................................................................................... 11

2.  EGI's Failure to be Listed as Claimant Cuts Off its Claims ....................... 11

3.  Record Company Executives Confirm that EGI has no Copyrights in the Works ....................................................................................................... 12

4.  The Master Agreement, Cinepoly Agreement, Sworn Statements and Copyright Certificates All Confirm that EGI Holds no Copyrights. ................ 12

V.  EGI did not Show that its Works are not United States Works ..................... 13

A.  Failure to Register United States Works is Fatal to Copyright Infringement Claims ........................................................................................ 13

1.  EGI's Works Simultaneously Published are United States Works ............. 13

B.  EGI's Relationship with TCW can Create Simultaneous Publication ............ 14

1.  The Time Limit for Simultaneous Publication is Undefined ....................... 14

2.  EGI's Works are Simultaneously Published to TCW and EGI ................... 14

3.  The Control Catalogue is Rapidly Available in the United States ............. 15

VI.  EGI has Failed to Prove that the Record Companies Gained Rights Through the Work-Made-For-Hire Doctrine ................................................... 15

VII.  Mr. Cheng's Actions Infringe no Rights of EGI ............................................... 16

A.  The Court Lacks Subject Matter Jurisdiction to Consider Infringement Taking Place in a Foreign Country ................................................................ 16

VIII.  Mr. Chan and Mr. Yim are not Liable for Contributory Infringement ........... 17

A.  Mr. Chan and Mr. Yim are not Liable for Mr. Cheng's Actions ..................... 17

B.  Mr. Chan and Mr. Yim are not Liable for Karaoke Clubs' Actions ............... 18

C.  Mr. Chan and Mr. Yim are not Liable as Corporate Officers ......................... 18

1.  Mr. Chan and Mr. Yim did not Participate in any Infringement ................ 18

2.  Mr. Chan and Mr. Yim have not Derived any Financial Benefit ................ 18

ii

IX.   The Court Must Disregard the Purported Expert Report ............................... 19

  A.   The Expert Report is Unsworn, and Thus Incompetent .................................. 19

  B.   At Most, the Expert Report Demonstrates that EGI's Works and
       NAKTA's Works have a Common Source ........................................................ 19

X.    NAKTA, Mr. Chan and Mr. Yim did not Engage in Willful
      Infringement ..................................................................................................... 20

  A.   EGI's Claim that Mr. Chan was Affiliated with Galaxy 45 when it
       Infringed EGI's Works is False ...................................................................... 20

  B.   No Clubs Received the NAKTA Works After EGI Claimed
       Infringement ................................................................................................... 20

XI.   EGI has Unclean Hands ..................................................................................... 20

  A.   Any Infringement at Galaxy 45 is Attributable to Mr. Chai .......................... 21

XII.  EGI has no Actual Damages ............................................................................... 21

  A.   EGI Sued All Three Clubs that Received NAKTA Works .............................. 21

    1.   Two of the Clubs have Settled, One Case is Still Pending ......................... 21

    2.   EGI has no Damages Due to the Performance of Derivative Works .......... 22

XIII. EGI is not Eligible for Statutory Damages and Attorneys Fees ..................... 23

  A.   Foreign Works are not Exempt from the Registration Requirement to
       Receive Statutory Damages and Attorneys' Fees ........................................... 23

  B.   EGI's Works Were not Registered Timely ...................................................... 23

    1.   EGI was Aware of Infringement .................................................................. 23

XIV.  Any Statutory Damages Award Should be De Minimis ................................... 24

  A.   Statutory Damages Must Relate to Actual Damages ...................................... 24

  B.   NAKTA's Works are One Compilation for Damages Purposes ...................... 25

XV.   EGI Abuses the Copyright Laws ....................................................................... 25

  A.   EGI is Trying to Claim a Performance Right in Sound Recordings .............. 25

B.   By Prohibiting the Use of the Sound Recordings with Video, EGI is Engaged in an Anti-Competitive Trade Practice..............................................26

XVI.  EGI's Other Claims Provide no Basis for Relief ................................................26

A.   EGI's Federal Claims are Duplicative ................................................26

B.   EGI's State Law Claims are Pre-Empted ................................................27

XVII.  EGI Acts this Court to Ignore the Equal Protection Clause of the Constitution................................................27

CONCLUSION................................................28

## TABLE OF AUTHORITIES

### Cases

Agee v. Paramount Communications, Inc., 59 F.3d 317, 324 (2d. Cir. 1995).... 5, 6, 23

Alden-Rochelle, Inc. v. ASCAP, 80 F. Supp. 888 as amended 80 F.Supp. 890
(S.D.N.Y. 1948) ........................................................................................ 25

Armstrong v. Virgin Records, Ltd., 91 F.Supp.2d 628, 634 (S.D.N.Y. 2000) ...... 16, 17

Bollling v. Sharpe, 347 U.S. 497 (1954) ...................................................... 28

Brought to Life Music, Linc. v. MCA Records, Inc., 2003 U.S. Dist LEXIS
1967, *4 (S.D.N.Y. 2003) ........................................................................ 18

Buffalo Broadcasting Co. v. American Society of Composers, Authors and
Publishers, 744 F.2d 917, 920 (2d. Cir. 1984) ........................................... 4

Country Road Music, Inc. v. Mp3.com, Inc., 279 F. Supp.2d 325, 332 (S.D.N.Y.
2003) ...................................................................................................... 25

Davis v. The Gap, Inc., 246 F.3d 152, 159 (2d. Cir. 2001)................................... 22, 24

Entertainment by J & J, Inc. v. Medina, 2002 U.S. Dist. LEXIS 3058
(S.D.N.Y. 2002)........................................................................................ 19

Freeplay Music, Inc. v. Cox Radio, Inc., 404 F.Supp.2d 548, 553 (S.D.N.Y.
2005) ................................................................................................... 4, 6, 23

Freeplay Music, inc. v. Cox Radio, Inc., 409 F.Supp.2d 259, 264 (S.D.N.Y.
2005) ...................................................................................................... 27

Gardner v. Nike, 279 F. 3d 774 (9th Cir. 2002) ........................................... 8

Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82 (2d. Cir.
1998) ................................................................................................... 15, 16

Kingvision Pay-Per-View, Ltd. v. The Body Shop, 2002 U.S. Dist. LEXIS
4113, *4 (S.D.N.Y. 2002) ........................................................................ 19

Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor Ltd.,
  2000 U.S. Dist. LEXIS 10394, *57 (S.D.N.Y. 2000) ................................................. 21

Quantitative Financial Software, Ltd. v. Infinity Financial Technology, Inc.,
  1998 WL 427710 (S.D.N.Y. 1998) ..................................................................... 16, 17

Rohauer v. Killiam Shows, Inc., 551 F.2d 484, 495 (2d. Cir 1977) ........................... 21

RSO Records, Inc. v. Peri, 596 F. Supp. 849, 862 (S.D.N.Y. 1984) ........................... 24

Scholastic, Inc. v. Stouffer, 124 F. Supp. 2d 836, 844-45 (S.D.N.Y. 2000) ............... 27

Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d
  955, 971 (2d. Cir 1997) .............................................................................................. 18

Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub., Inc., 49 F.Supp.2d 673,
  677 (S.D.N.Y. 1999) ................................................................................................... 13

United States v. Forma, 42 F.3d 759, 762 (2d. Cir. 1994) ......................................... 13

United States v. Seltzer, 227 F.3d 36, 42 (2d. Cir. 2000) ............................................ 3

### Statutes

17 USC § 102(a)(2) ........................................................................................................ 4

17 USC § 504(c)(1) ...................................................................................................... 25

17 USC §101 ........................................................................................................... 8, 15

17 USC §101(1)(A) ....................................................................................................... 13

17 USC §101(1)(C) ....................................................................................................... 14

17 USC §102(a)(7) ......................................................................................................... 4

17 USC §106 .................................................................................................................. 4

17 USC §114(a) ......................................................................................................... 4, 5

17 USC §114(b) ......................................................................................................... 5, 6

17 USC §201(d)(2) ........................................................................................................ 8

17 USC §302(a) .................................................................................. 14

17 USC §401(c) .................................................................................. 9

17 USC §411(a) .................................................................................. 15

17 USC §412 ...................................................................................... 23

17 USC §501(b) .................................................................................. 8

17 USC §504(b) .................................................................................. 22

28 USC §1338(a) ................................................................................ 16

**28 USC §1746** ................................................................................ 19

**Other Authorities**

Berne Convention, Art. 5(4) ............................................................... 14

Copyrights, Designs and Patents Act of 1988, Section 13B(2) ................. 14

**Rules**

Rule 1 ............................................................................................... 3

Rule 55 ............................................................................................. 2

Rule 55(a) ......................................................................................... 2

Rule 55(b)(1) ..................................................................................... 2

Rule 55(b)(2) ..................................................................................... 2, 3

**Rule 603** ......................................................................................... 19

**Treatises**

2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 7.16 [B][1]
    (2006) .......................................................................................... 14

2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, §7.16(c)(1), 7-
    183 (2006) ................................................................................... 23

6 McCarthy on Trademark and Unfair Competition § 32:3, at 32-14 (2006) ........... 27

**Regulations**

37 CFR §202.3(3)(A) ................................................................. 11

37 CFR §202.3(a)(3) ................................................................. 11

**Constitutional Provisions**

U.S. Const. Amend. XIV ............................................................ 28

U.S. Const., Amend. V .............................................................. 28

U.S. Const., Art. III, Sec. 2, Clause 1 ........................................ 17

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff North American Karaoke-works Trade Association ("NAKTA") is a trade association serving the Chinese-language karaoke industry. Counterclaim Defendants Sam Chan and Ray Yim are officers of NAKTA. Defendant-Counterclaim Plaintiff Entral Group International, LLC ("EGI") purports to own enforceable copyrights in certain karaoke works ("EGI Works") which are created in Hong Kong. Among the approximately 21 lawsuits that EGI has instituted in the Southern and Eastern Districts of New York, is an action entitled Entral Group International v. YHCL Vision Corp., 05-cv-1912 (E.D.N.Y.). During the course of that litigation, EGI obtained a copy of karaoke works that NAKTA had in its possession. ("NAKTA Works"). EGI also had the opportunity to depose both Sam Chan and Ray Yim, officers of NAKTA.

NAKTA filed a declaratory judgment action in the Southern District of New York. EGI asserted a Counterclaim, adding Mr. Chan and Mr. Yim as Counterclaim Defendants. On December 13, 2006, the Court scheduled a conference. On the same day, because the undersigned did not appear, the Court struck NAKTA's Complaint. The Court also struck Counterclaim Defendants' answer to the Counterclaim, and made this reference for a default judgment and inquest on damages. No clerk's entry of default has been entered. Neither has the Court ever held a hearing with respect to the sanctions and default judgment.

1

# ARGUMENT

## I.    An Entry of Damages Would Compound the Procedural Defects

### A.    The Court has not Followed Proper Default Judgment Procedure

EGI claims that a default judgment has already been properly entered and that the only matter for concern is the amount of damages.  However, the Court has not followed the default judgment procedure mandated by the Federal Rules of Civil Procedure.  No clerk's entry of default has been entered and the Court has not afforded Counterclaim defendants the opportunity for a hearing as provided under Rule 55(b)(2).  Rule 55 spells out the default judgment procedure.  The first step is the clerk's entry of default under Rule 55(a) – which has not occurred.  Under Rule 55(b)(1) and Rule 55(b)(2), default judgment must be entered as follows: The clerk may enter a judgment when the claim is one for a sum certain, but in any other case application must be made to the court for a default judgment. The allegedly defaulting party, if he or she has appeared, is entitled to three days written notice prior to the hearing on such application. Rule 55(b)(2). If the amount of damages must be ascertained, the court may conduct a hearing or order a reference. Id.

Here, EGI's claims are not for a sum certain and NAKTA, Mr. Yim and Mr. Chan have appeared in this matter.  Therefore, EGI was required to make an application to the Court for the entry of default judgment under Rule 55(b)(2).   The Court was required to hold a hearing on at least three days notice under Rule 55(b)(2).

### B.    The Court Failed to Follow Proper Sanctions Procedure

Furthermore, as the default judgment was administered as a sanction, under the United States Constitution, the Court was required to provide:

> [S]pecific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on the matter, and [the attorney] must be forewarned of the authority under which sanctions are being considered, and given a chance to defend [himself] against specific charges.

2

<u>United States v. Seltzer</u>, 227 F.3d 36, 42 (2d. Cir. 2000)(quotes and cites omitted)

Instead, the Court sanctioned Counterclaim Defendants <u>ex parte</u>. The Court issued the sanction due to the undersigned's failure to appear at a conference on December 13, 2006. Indeed, the Court issued the order striking NAKTA's complaint on the very same day, December 13, 2006.[1]  It is obvious even to the most casual observer that the Court has failed to provide NAKTA, Mr. Chan, Mr. Yim and the undersigned their rights to due process and those rights guaranteed by the Federal Rules of Civil Procedure. In its order dated March 16, 2007, the Court treated Counterclaim Defendants application as a petition for reconsideration, not as any substitute for a <u>de novo</u> hearing as required under the default judgment procedure of <u>Rule 55(b)(2)</u> or under the Constitutionally mandated sanctions procedures outlined in <u>Seltzer</u>.

<u>Rule 1</u> of the Federal Rules of Civil Procedure requires that the rules be "…shall be construed and administered to secure the just, speedy, and inexpensive determination of every action…". As the Court has not properly followed either the default judgment procedure or the sanctions procedure, any resulting judgment will be fatally flawed. This Court should not compound these errors with an award of damages. Certainly, nothing would prevent the Court from noting these deficiencies in its report and recommendation.

## II.    EGI Does Not State a Claim for Copyright Infringement

### A.    EGI Alleges Infringement by Creation of Derivative Works

Count I of the Counterclaim alleges copyright infringement. EGI claims that Counterclaim Defendants have infringed EGI's copyrights. EGI's claim is grounded its purported exclusive right to create derivative works:

---

[1] On December 13, 2006, the undersigned was participating in a settlement conference before Your Honor.

The NAKTA Defendants have created audio visual works (the "NAKTA Materials") that are derived from the Works, or have induced others to create NATKA Materials, without the authorization of EGI or the Companies.

Counterclaim, ¶23.

The unauthorized creation of derivative works based up on the Works, and copying, distributing, displaying and/or performing the Works or unauthorized derivative works by the NAKTA Defendants infringe EGI's exclusive copyright interests in the Works.

Counterclaim, ¶45.

## 1.    The Audio and Video Components of the Works are Separate

As EGI notes in its Counterclaim, karaoke works have "audio and video components".  Counterclaim, ¶10.  While the video component has a performance right under 17 USC §106, 17 USC §114(a) bars any performance rights in sound recordings.  Id.  ("The exclusive rights of the owner of copyright in a sound recording... do not include any right of performance...").  EGI cannot claim that performance of the sound recording alone or with substitute video violates its copyright (if any) in the video portion, for to do so would grant "the holders of copyrights in sound recordings a performance right that the statute specifically declines to confer."  Freeplay Music, Inc. v. Cox Radio, Inc., 404 F.Supp.2d 548, 553 (S.D.N.Y. 2005).   EGI's assertion of synchronization rights justifies treating the music and video portions separately, as the synchronization rights inhere in the music, not the video.  Buffalo Broadcasting Co. v. American Society of Composers, Authors and Publishers, 744 F.2d 917, 920 (2d. Cir. 1984)("...the so-called synchronization right or "synch" right, that is, the right to reproduce the music onto the soundtrack of a film or videotape in synchronization with the action...").

## 2.    EGI has no Rights to the Musical Composition

Copyright law confers discrete copyrights to the musical composition, including the lyrics, 17 USC § 102(a)(2), and the sound recording, 17 USC §102(a)(7).  The copyright in the musical composition is held by the publisher of the

musical composition and the copyright in the sound recording is by the author, in this case the relevant author is the record company who produces the recording under the work-made-for-hire doctrine. Here, to the extent that EGI claims any rights to the music, those rights are only in the sound recording, not the composition. As EGI's rights at most extend to sound recordings, and not the musical compositions, EGI can claim no injury from the performance of those sound recordings as the Copyright Act clearly bars the recognition of performance rights in sound recordings. 17 USC §114(a)("… The exclusive rights of the owner of copyright in a sound recording … do not include any right of performance…"). The fact EGI admits that the composers have retained their rights to the musical compositions that are a component of the EGI Works demonstrates that EGI's claim to hold "all the copyright interests in the Works" (Counterclaim, ¶21) is false. See, e.g., Memorandum of Law, dated April 26, 2007, p.11.

### B.    The Incorporation of Unaltered Sound Recordings in the NAKTA Works is not the Creation of a Derivative Work

Whatever the status of EGI's rights, EGI does not state a claim for the infringement by the creation of derivative works. As defined by 17 USC §114(b), a derivative work of a sound recording only results where "the actual sounds fixed in the sound recording are rearranged, remixed, or otherwise altered in sequence or quality". In Agee v. Paramount Communications, Inc., 59 F.3d 317, 324 (2d. Cir. 1995), the Second Circuit definitively stated that synchronization of an unaltered sound recording with visual images does not result in the creation of a derivative work:

> To the extent that Agee contends that the mere synchronization of his sound recording with visual images created an infringing derivative work, we disagree. Although a few cases may exist where a motion picture or television program is 'based upon' a preexisting musical composition or sound recording, sound recordings are most often used in audiovisual works for background or performance, as in this case. Moveover, even if the mere transfer of Agee's recording to the soundtrack of an audiovisual work in itself amounted to a

'transformation,' such synchronization would not rearrange, remix or alter the actual sounds of the recording.

Id.

### 1.    EGI Acknowledges that the Sound Recordings Are Identical

As noted in the declaration of Nicolas Chai, dated April 20, 2007, ¶¶11-12 ("…the audio components of at least a significant portion of the NAKTA Materials consist of recordings that are reproductions of the recordings that are exclusively licensed to EGI…"), and the purported expert report of Robert Sanderson, dated December 29, 2006  ("…recordings are musically, sonically and electrically identical to each other…"), EGI claims the NAKTA Works contain exact copies of EGI's sound recordings.  Thus, as clearly stated in Agee, the NAKTA Works cannot be derivative works as defined by the Copyright Act.

### 2.    There is no Liability for the Performance of Derivative Works

Even if NAKTA's Works used EGI's sound recordings to prepare the NAKTA Works, and EGI possessed the exclusive right to create derivative works, copyright law imposes no liability for infringement for the performance of these derivative works.  As all parties agree, the NAKTA Works were prepared in the People's Republic of China by Mr. Cheng.   The Counterclaim Defendants did not prepare the NAKTA Works themselves.  In Agee, the Second Circuit held that liability resides in the party who prepares derivative works, not the party who performs them.  Id. ("The TV stations would have been entitled to perform a derivative work that Paramount had created using Agee's sound recording.  The statute states only that sound recording copyright owners have the exclusive right to prepare derivative works, see 17 USC §114(b); it says nothing about the right to perform such works.")(emphasis in original).  As NAKTA had no role in preparation of the NAKTA Works, NAKTA did not infringe any right to prepare derivative works.  See Freeplay, 404 F.Supp at 554 ("By broadcasting a putative derivative work created by a third party advertiser, the Broacasters did not prepare a derivative work any more than did the TV stations in Agee.")

6

## III.   EGI does not have Standing to Sue for Copyright Infringement

### A.   Neither the Record Companies nor TCW Granted EGI the Exclusive Right to Create Derivative Works

Even if the works are derivative, EGI does not have the exclusive right to prepare derivative works.  EGI's rights are dependent upon the rights granted from the Record Companies[2] to TCW and those in turn granted by TCW to EGI.  Of course, TCW cannot confer any greater rights than acquired.  In another case,[3] EGI submitted a declaration of Nicolas Chai, dated November 1, 2006.  Exhibit B to the Declaration of David J. Hoffman, dated July 30, 2007 (Exhibits hereafter denoted "Ex.").  As an exhibit to that declaration, Mr. Chai submitted a redacted agreement between Cinepoly Records Company Limited, dated March 1, 2003, as a "representative example of the agreement between the Companies and TCW."  Ex. B, Chai Decl., ¶7, Ex. C.  The rights granted to TCW are set forth in Section 2 of the Cinepoly Agreement (Ex. C), and none include the right to create derivative works. Furthermore, the Cinepoly Agreement explicitly stated that Cinepoly did not relinquish its copyrights:

> TCW hereby acknowledges that it asserts no ownership rights in the copyrights involved in this Agreement, and confirms that, as between itself and the Record Company, Record Company represents that the Record Company is the exclusive owner of all copyrights and other rights in and to the Licensed Contents and all Licensed Contents are and shall be and remain the sole property of the Record Company.

Ex. C, Cinepoly Agreement, Section 8(a).

Likewise, in Section 2 of the Master Agreement, dated June 1, 2003 between TCW and EGI, Ex. D, there is no mention of the right to create derivative works. The Master Agreement also contains a clause fatal to EGI's claims:

---

[2] The "Record Companies are those from which EGI claims to derive its rights.

[3] Entral v. 7 Day Café, et al, 05-cv-1911 (E.D.N.Y.)

> EGI hereby acknowledges that it asserts no ownership rights in the
> copyrights involved in this Agreement, and confirms that, as between
> itself and the TCW[sic], represents that TCW is the exclusive licensee
> of all copyrights and other rights in and to the Licensed contents and
> all Licensed Contents are and shall be and remain the sole property of
> the Record Companies.

Master Agreement, Section 8(a).

## B.    EGI is not the Copyright Owner

The Copyright Act defines a "copyright owner" as "with respect to any one of
the exclusive rights comprised in a copyright, refers to the owner of that particular
right."  17 USC §101.  Thus, if EGI were the holder of any particular copyright it
would be properly identified as a "copyright owner".  Because EGI expressly
disclaimed status as a "copyright owner", EGI has no standing to pursue copyright
claims which are only extended to the "copyright owner" under 17 USC §501(b)("The
legal or beneficial owner of an exclusive right under a copyright is entitled…to
institute an action for any infringement of that particular right committed while he
or she is the owner of it.")

## C.    EGI did not Show that TCW Could Transfer its Rights

Even assuming that these agreements intended to grant exclusive rights,
EGI has not established its standing to bring this suit.  TCW is the exclusive
licensee of the Record Companies.  Under 17 USC §201(d)(2), the holder of an
exclusive right is only entitled to: "…all of the protection and remedies accorded to
the copyright owner by this title…".  The Copyright Act is silent as to whether an
exclusive licensee may transfer any exclusive rights.  Before this amendment to the
Copyright Act, under the Copyright Act of 1909, copyright licenses were not
transferable.  See Gardner v. Nike, 279 F. 3d 774, 778 (9th Cir. 2002).  EGI has
failed to show that TCW has the right to transfer its rights.  In Gardner, the Ninth
Circuit determined that an exclusive license was not transferable without the
consent of the original licensor.  Id. at 780 ("Thus, we hold that the 1976 Act does
not allow a copyright licensee to transfer its rights under an exclusive license,

8

without the consent of the original licensor.")   As EGI has not demonstrated that it has the consent of each Record Company, EGI does not have standing.

## IV.    The Certificates of Registration are Defective

### A.    EGI is not Listed as the Claimant for any Registered Work

While EGI claims infringement of registered works, the certificates of registration prove that EGI does not have the right to enforce copyrights in those works.  The Copyright Act provides that the certificate of registration is prima facie evidence of the facts stated therein.  17 USC §401(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.")  EGI attached several copyright registrations to its Counterclaim and three registrations to on this motion – and EGI is not listed as the claimant for any of them; in fact, the Copyright Office does not list EGI as claimant for any works at all.  Ex. A (chart derived from Exhibits to Counterclaim).  Certainly, the identity of the copyright claimant is one of the "facts stated in the certificate".  17 USC §401(c).  For the certificates attached to Mr. Chai's April, 20, 2007 declaration  – Neighbor by Hacken Lee, Marriage Will Follow After Many Years by Hacken Lee, and Single Man and Woman by Sammi Cheng, examining section 4 of the registrations, the claimant for these works are respectively identified as Universal Limited Hong Kong for the first two, and Warner Music Hong Kong for the third.  The transferee section is blank in each one. In each registration, EGI is only identified as the "authorized agent" (Section 8). As president of EGI, Mr. Chai signed these certificates on behalf of the Record Company copyright holders, and is estopped from now impeaching their contents.

### 1.    All of the Registrations were Filed After EGI and TCW Entered Into the Master Agreement

EGI's claim to be the holder of registered copyrights is even more inexplicable because the registrations were applied for after TCW entered into the Cinepoly Agreement, dated March 1, 2003, and EGI entered into its Master Agreement with

TCW, dated June 1, 2003.  The respective dates that each registration was applied for are October 15, 2003, October 15, 2003, and September 8, 2003.  While there may be circumstances where a claimant make an unrecorded assignment after registration, EGI implausibly asks this Court to recognize an assignment that occurred before registration.

In fact, none of the registrations attached to the Counterclaim antedate either the Cinepoly Agreement (dated March 1, 2003) or the Master Agreement (dated June 1, 2003) under which EGI claims rights; and none identify EGI as claimant.  Ex. A. In addition to these deficiencies, for seven of the certificates[4], reveal that the registration date was more than five years after the date of first publication.  Ex. A. Among the certificates that have a larger than five-year gap between publication and registration is <u>Single Man and Woman</u> by Sammi Cheng, one of the works that EGI focused on in its motion papers.  In order to obtain the benefits under <u>17 USC §410(c)</u>, the registration must be made "before or within five years after first publication".  Thus, these certificates do not provide any prima facie evidence of validity or of the facts stated therein.

### C.    EGI has the Burden to Prove its Chain of Title in Unregistered and Late-Registered Works

Even assuming that EGI otherwise has enforceable rights in the registered works, to the extent that EGI claims infringement of the unregistered works or the seven registered works with a greater-than-five-year gap, it is EGI's burden to prove its chain of title in those works.   In its moving papers, EGI has utterly failed to do so.  While the Cinepoly Agreement is available, EGI has not produced any of the other agreements under which the record companies allegedly transferred rights to TCW.  The record is also bereft of any proof as to how the Record Companies obtained their rights in the works.

---

[4] <u>When Love Becomes a Habit</u> by Jacky Cheung, <u>Tacit Understanding</u>, <u>Our Theme Song</u>, <u>Close Relationship</u>, <u>Beauty for Life</u>, <u>Unwilling to Let You Go</u>, <u>Single Man and Woman</u>, and <u>Not Owing Anything</u>, all by Sammi Cheng.

### 1.    The Certificates Incorrectly Identify the Nation of Citizenship and Publication

For all of the registered works, the author is identified as a citizen of "Hong Kong".  Furthermore, the "nation" (certificate of registration, Section 3(b)) of first publication of each of the registered works is identified as "Hong Kong", with one exception,[5] which identifies "Taiwan" as the "nation" of first publication.   Neither Hong Kong nor Taiwan are "nations" nor is either of these entities a contracting party to the Berne Convention.  As to the unregistered works, EGI has remained silent.

### 2.    EGI's Failure to be Listed as Claimant Cuts Off its Claims

If EGI were indeed the copyright holder for any of these works, EGI must be listed as the claimant.  While EGI claims to hold all of the copyright interests in the works in the United States, (Counterclaim, ¶21), the CFR defines the claimant as:

[A] copyright claimant is either:

(i) The author of a work;

(ii) A person or organization that has obtained ownership of all rights under the copyright initially belonging to the author.  This category includes a person or organization that has obtained, from the author or from an entity that has obtained ownership of all rights under the copyright initially belonging to the author, the contractual right to claim legal title to the copyright in an application for copyright registration.

37 CFR §202.3(a)(3)

Even if EGI asserts that its rights are some subset of those owned by the copyright claimants identified in the registrations, separate registrations are required where more than one claimant has rights in a work.  The regulations only permit a single registration where, for all copyrightable elements, "…the copyright claimant is the same…".   37 CFR §202.3(3)(A).  As the Record Companies are

---

[5] Thank You by Eason Chan.

identified as the sole copyright claimant in each work in its entirety, EGI cannot claim to be the registrant of those works through these registrations.

### 3.     Record Company Executives Confirm that EGI has no Copyrights in the Works

Furthermore, EGI has submitted identical sworn statements from record company executives in the many cases that it has filed in both the Southern and Eastern Districts of New York.  In those statements, the record company executives indicate that no portion of the registrable copyright has been transferred to EGI.  In the affidavit of Hung Tk, dated December 17, 2003, who is identified as the Managing Director of Universal Music Limited (Tk Affd. , ¶1), Mr. Tk states that:

> The Company has authorized TCW and its authorized affiliates to file and maintain copyright registrations in respect of the Videos in the United States and Canada as in our name on our behalf.

Ex. E, Tk. Affd., ¶6.

In his affidavit dated October 29, 2003, Raymond Lo, the "Finance Director of Warner Music Hong Kong Ltd." (Lo Affd. ¶1), Mr. Lo made the identical statement:

> The Company has authorized TCW and its authorized affiliates to file and maintain copyright registrations in respect of the Videos in the United States and Canada as in our name on our behalf.

Ex. F, Lo Affd. ¶6.

Thus, both of the Record Company executives[6] stated that the copyrights were registered "in [the record company's] name" and "on [the record company's] behalf" – not on EGI's or even TCW's behalf.

### 4.     The Master Agreement, Cinepoly Agreement, Sworn Statements and Copyright Certificates All Confirm that EGI Holds no Copyrights.

_____

[6] Identical statements were also submitted by an executive from other Record Company executives. See Ex. G.

Thus, as shown under the Master Agreement, the Cinepoly Agreement, the sworn statements of the Record Company executives, and the copyright certificates themselves, the Record Companies never relinquished any of their rights to either TCW or EGI. While the Master Agreement and the Cinepoly Agreement (and other agreements with the Record Companies) may protect EGI against suit by the Record Companies, these agreements do nothing to authorize this suit.

## V.    EGI did not Show that its Works are not United States Works

### A.    Failure to Register United States Works is Fatal to Copyright Infringement Claims

EGI provides no proof that its works are published in a manner exempting them from treatment as "United States works". Regardless of the procedural posture of this case, this Court must examine its subject matter jurisdiction. United States v. Forma, 42 F.3d 759, 762 (2d. Cir. 1994)(" if there was no subject matter jurisdiction over the Formas' counterclaim, then the default judgment entered against the Government is void and must be vacated"). This Court has no subject matter jurisdiction to entertain a suit concerning unregistered United States works. Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub., Inc., 49 F.Supp.2d 673, 677 (S.D.N.Y. 1999)("…district courts are without subject matter jurisdiction to hear claims for federal copyright infringement unless a party asserts in his pleadings that he has received an actual certificate of registration or its denial from the Copyright Office…"). This limitation applies to counterclaims as well. Id. ("…this Court does not have subject matter jurisdiction to hear the counterclaim for copyright infringement, and, accordingly, this counterclaim must be dismissed…").

### 1.    EGI's Works Simultaneously Published are United States Works

In the definitional section of the Copyright Act, a work is a United States work if it is first published "simultaneously in the United States and another treaty party or parties, whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States". 17 USC §101(1)(A).

### B.    EGI's Relationship with TCW can Create Simultaneous Publication

EGI's relationship is solely with TCW, an entity organized in the British Virgin Islands.  EGI's Counterclaim (at ¶13) states that its works are protected by the copyright laws of the United Kingdom.  For audiovisual works,[7] the United Kingdom provides for a death plus 70 year copyright term, Ex. H, <u>Copyrights, Designs and Patents Act of 1988, Section 13B(2)</u>, as does United States law under <u>17 USC §302(a)</u>.  Thus, a work first published simultaneously in the United States and under United Kingdom law (which EGI admits applies to its works) will deemed a United States work under the Copyright Act.  Likewise, works simultaneously published a non-signatory country (such as the Republic of China (Taiwan)) and United States are United States works, regardless of the copyright term offered in the non-signatory country.  <u>17 USC §101(1)(C)</u>(United States work where first published "simultaneously in the United States and a foreign nation that is not a treaty party…").  The text of the Berne Convention defines simultaneous publication as when a work is published in two or more countries within thirty days of its first publication.  <u>Berne Convention, Art. 5(4)</u>("A work shall be considered as having been published simultaneously in several countries if it has been published in two or more countries within thirty days of its first publication.")

### 1.    The Time Limit for Simultaneous Publication is Undefined

The United States formerly codified the thirty-day rule, but that limitation was excised by amendments in 1998.  <u>See</u> 2 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u>, § 7.16 [B][1] (2006).  Thus, without that old bright-line rule, the new rule may be less rigid as to the interpretation of first publication and the later date.  <u>Id.</u>  NAKTA asks that the Court adopt a ninety-day window for simultaneous publication.

### 2.    EGI's Works are Simultaneously Published to TCW and EGI

---

[7] Defined as "films" under United Kingdom law.  Copyright, Designs and Patents Act of 1988, Section 5B.

Certainly, it is likely that at least some of the works are published "simultaneously" in the United States works within the meaning of 17 USC §101, thus rendering those works United States works.  Because EGI's rights flow through TCW, a company subject to United Kingdom law, the works must be simultaneously published both to TCW and EGI.

### 3.    The Control Catalogue is Rapidly Available in the United States

To the extent that EGI's claims arise out of its "Control Catalogues" (Counterclaim, ¶19), those works are identified as "recent works" and the rapidity with which these become available in the United States is noted by the fact that these videos bear a notice that they are "promotional copies" or the like. Furthermore, the application dates for some of the registered works are only a whisker longer than thirty days after first publication abroad.  Ex. A. For example, the application dates of Believing with Conviction by Kelly Chen and Brother An's Song by Andy Hui are only forty days after first publication abroad.  Ex. A. If this Court should determine that the simultaneous publication date is longer than thirty days, then many of EGI's Works should be deemed United States works.

To the extent that EGI seeks to enforce copyrights in works that are United States works, the lack of a copyright registration is fatal to its claims as this Court does not have subject matter jurisdiction to entertain such claims.  17 USC §411(a) ("…no action for infringement of the copyright of any work shall be instituted until registration of the copyright claim has been made in accordance with this title…").

## VI.    EGI has Failed to Prove that the Record Companies Gained Rights Through   the Work-Made-For-Hire Doctrine

Insofar as EGI claims that its works were originally works made for hire in Hong Kong, EGI has not made any presentation of the law applicable in Hong Kong. In Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82 (2d. Cir. 1998), the Second Circuit warned against the blithe extraterritorial application of United States law particularly with respect to works-made-for-hire.  Id. at 88 ("…Choice of law issues in international copyright cases have been largely ignored

15

in the reported decisions and dealt with rather cursorily by most commentators…Several courts have applied the United States work-for-hire doctrine, [cite omitted] without explicit consideration of the conflicts issue…").   The Second Circuit directs that courts look to the law of the state with the most significant relationship to the works.  <u>Id.</u> at 90 ("Since the works at issue were created by Russian nationals and first published in Russia, Russian law is the appropriate source of law to determine issues of ownership of rights.")   Thus, the question of which nation these works were first published in, or which nations citizens actually created the work is central to resolving the chain of title in the works.  At least some of the works (including <u>Single Man and Woman</u> by Sammi Cheng) antedate the transfer of sovereignty from the United Kingdom to the People's Republic of China

## VII.   Mr. Cheng's Actions Infringe no Rights of EGI

### A.   The Court Lacks Subject Matter Jurisdiction to Consider Infringement Taking Place in a Foreign Country

Furthermore, even assuming that Mr. Cheng's actions were infringing and that they were authorized or induced by NAKTA, Mr. Chan or Mr. Yim, this Court has no subject matter jurisdiction to entertain those claims.  Extraterritorial acts cannot form the basis for allegations of copyright infringement.  <u>Armstrong v. Virgin Records, Ltd.</u>, 91 F.Supp.2d 628, 634 (S.D.N.Y. 2000)("…it is not seriously disputed that United States copyright laws do not have extraterritorial effect, and that infringing acts that take place outside the United States are not actionable under our copyright laws…")  This Court lacks subject matter jurisdiction to adjudicate claims of copyright infringement occurring outside the United States.  <u>Quantitative Financial Software, Ltd. v. Infinity Financial Technology, Inc.</u>, 1998 WL 427710 (S.D.N.Y. 1998)("The district courts do not have subject matter jurisdiction, under <u>28 USC §1338(a)</u>, of actions for infringements outside of the United States.")  Although EGI identifies Counts I and II of its Counterclaim as arising under the Berne Convention, the Berne Convention does not provide an

independent basis for jurisdiction. Id. ("Neither the Berne Convention Implementation Act nor the Berne Convention confers subject matter jurisdiction to entertain an action asserting copyright infringement outside the United States.")

Likewise, this Court has no subject matter jurisdiction to entertain a copyright infringement action based upon the authorization of an act taking place outside the United States. Armstrong v. Virgin Records, Ltd., 91 F.Supp. 2d 628, 634 (S.D.N.Y. 2000)("...it is now generally accepted that there can be no liability under the Copyright Act for authorizing an act that itself could not constitute infringement of rights secured by United States law..."). Even if United States law did provide a remedy, EGI's rights are limited to the United States, and thus has no standing to complain of activities that took place in China. EGI's Master Agreement identifies its "Territory" as the "United States of America". Ex. D. Furthermore, even in this context, it is appropriate for the Court to examine the standing of EGI to bring these claims. Standing is required for this Court to act within its Constitutional authority to hear cases or controversies. U.S. Const., Art. III, Sec. 2, Clause 1.

## VIII.   Mr. Chan and Mr. Yim are not Liable for Contributory Infringement

### A.    Mr. Chan and Mr. Yim are not Liable for Mr. Cheng's Actions

Thus, EGI's claims that Mr. Chan and Mr. Yim are liable for copyright infringement on account for the "inducement" (Counterclaim, ¶52) of Mr. Cheng to create the NAKTA Works must fail, as Mr. Cheng's actions which took place entirely in the People's Republic of China, presents no cognizable claim under United States law.

Neither Mr. Chan nor Mr. Yim nor NAKTA itself induced or commissioned Mr. Cheng to create the NAKTA Works. All Mr. Cheng ever received was a worthless, outdated computer, which would hardly justify the time to create hundreds of videos. Declaration of Sam Chan, dated July 30, 2007, ¶¶6-7. Clearly, Mr. Cheng produced these videos for his own purposes. Chan Decl. ¶5,

### B.    Mr. Chan and Mr. Yim are not Liable for Karaoke Clubs' Actions

Furthermore, there is no basis for the liability of NAKTA, Mr. Chan or Mr. Yim for the performance of the NAKTA Works in karaoke clubs for the reasons stated in <u>Agee</u>.   As the performance of a derivative work does not violate any copyright, it is tautological that NAKTA, Mr. Chan or Mr. Yim cannot be liable for inducing the performance of derivative works.

A claim for contributory infringement must be predicated on a claim for direct infringement.   <u>Brought to Life Music, Linc. v. MCA Records, Inc.</u>, 2003 U.S. Dist LEXIS 1967, *4 (S.D.N.Y. 2003)("A plaintiff must allege that the defendant knew of, and substantially participated in, the alleged direct infringement, for a claim of contributory infringement to stand.")  EGI's claim for contributory infringement must fail for the same reasons that the underlying copyright infringement claim fails.

### C.    Mr. Chan and Mr. Yim are not Liable as Corporate Officers

### 1.    Mr. Chan and Mr. Yim did not Participate in any Infringement

In order to sustain a claim for contributory infringement by a corporate officer, EGI must allege "substantial participation" in infringing activities.  <u>Id.</u>  A bare allegation that a copyright was infringed with knowledge falls short of the mark.  <u>Id.</u> at *6 (motion to dismiss granted where allegation was that "copyright was infringed with knowledge").  The liability for contributory infringement must be based upon an "obvious and direct financial interest".  <u>Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.</u>, 118 F.3d 955, 971 (2d. Cir 1997)(no contributory infringement where evidence established that individual was only "president of Dragon and a shareholder").

### 2.    Mr. Chan and Mr. Yim have not Derived any Financial Benefit

Messrs. Chan and Yim have not derived any financial benefit whatsoever from their affiliation with NAKTA.  Chan Decl. ¶17.  As noted in EGI's memorandum, both Galaxy 45 and Pop Music Studios (Messrs. Chan and Yim's

clubs respectively) are EGI licensees in good standing.  EGI itself has argued that its licensee customers are injured by the proliferation by the circulation of allegedly infringing works.  Ex. I, p. 7, Memoradum of Law, ("Unlicensed clubs often obtain pirated copies of the Works before legitimate clubs which await the authorized distribution of the Works. This disadvantage to Licensees caused by pirating by Melody and others further damages EGI, the Companies and EGI's customers.")  Of course, EGI's customers include Galaxy 45 and Pop Music.

## IX.    The Court Must Disregard the Purported Expert Report

### A.    The Expert Report is Unsworn, and Thus Incompetent

The purported expert report of Robert Sanderson is deficient and should be disregarded by the Court.  This unsworn document is not competent evidence.  In separate decisions concerning default judgments, Judge Taylor Swain has decreed that the evidence submitted  Kingvision Pay-Per-View, Ltd. v. The Body Shop, 2002 U.S. Dist. LEXIS 4113, *4 (S.D.N.Y. 2002)(Taylor Swain, J.)("…the Court granted Plaintiff permission to make a motion for a default judgment, such motion to be accompanied by admissible evidence Plaintiff would have proffered to meet the burden of proof on its direct case had a trial been held in this action…"); Entertainment by J & J, Inc. v. Medina, 2002 U.S. Dist. LEXIS 3058 (S.D.N.Y. 2002)(Taylor Swain, J.)("…in connection with any motion for a default judgment, Plaintiff file evidentiary material to meet its burden of proof on its direct case had a trial been held in this action…")  Rule 603 of the Federal Rules of Evidence requires that all testimony be sworn:  "Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so."  While 28 USC §1746 permits the use of unsworn declarations, such declarations must indicate that they are made under penalty of perjury.  As the Mr. Sanderson did not do so, his report must be excluded.

### B.    At Most, the Expert Report Demonstrates that EGI's Works and NAKTA's Works have a Common Source

19

Even if Mr. Sanderson's report were considered by this Court, that report, at most, proves that the three sound recordings he analyzed in the NAKTA and EGI Works have a common origin.  Mr. Sanderson, for example, did not compare the NAKTA Works to the EGI Works in use at either Galaxy 45 or Pop Music.  Furthermore, as EGI has alleged, EGI's Works are published in Hong Kong, and therefore copies of its works abound there.  There is no evidence that the NAKTA Works were prepare from the EGI Works that are in the rightful possession of either Galaxy 45 or Pop Music.

## X.    NAKTA, Mr. Chan and Mr. Yim did not Engage in Willful Infringement

### A.    EGI's Claim that Mr. Chan was Affiliated with Galaxy 45 when it Infringed EGI's Works is False

EGI makes the unsupported and false assertion that Mr. Chan has been involved in the infringement of EGI's works through his affiliation with Galaxy 45.  Memo, p. 9 ("…after notification by EGI that Galaxy 45 was infringing its rights, Mr. Chan agreed to enter into a license agreement…")   In fact, Galaxy 45 has held a license from EGI since January 1, 2004 (just six months after EGI entered into the Master Agreement) Ex. J, and Mr. Chan did not become involved with Galaxy until early 2005.  Chan Decl. ¶12; Ex. K. Thus, at all times that Mr. Chan has been affiliated with Galaxy 45, it has held a valid license from EGI.

### B.    No Clubs Received the NAKTA Works After EGI Claimed Infringement

As to the alleged "willfulness" of any infringement, nothing in EGI's standard license indicated that EGI claimed synchronization rights.  Furthermore, NAKTA never made its works available after receiving the letter dated April 5, 2006 (Ex. L) from EGI's counsel that claimed that the NAKTA Works are infringing.  Chan Decl. ¶10.

## XI.   EGI has Unclean Hands

### A.     Any Infringement at Galaxy 45 is Attributable to Mr. Chai

Mr. Chai is poacher turned gamekeeper.  While Mr. Chai now claims that Galaxy 45, infringed EGI's videos before signing a license, Mr. Chai conveniently omits the fact that he was the manager of Galaxy 45 during this period.  Ex. K.  Not only was Mr. Chai the manager of Galaxy 45, but Mr. Chai personally traveled to Hong Kong, and purchased karaoke equipment for Galaxy 45 which had preloaded many of the same Cantonese videos that EGI claims rights in.  Chai Decl. ¶¶14-15, In spite of EGI's current bellicose rhetoric about infringement, any infringement of the videos by Galaxy 45 is properly attributed to Mr. Chai, not Mr. Chan.  Such unclean hands are properly considered by this Court and militate against any damages award.  See, e.g., Rohauer v. Killiam Shows, Inc., 551 F.2d 484, 495 (2d. Cir 1977)("Plaintiff Rohauer is alleged to come into court with unclean hands since he frequently exhibited the movie prior to 1965 without obtaining a license either from Miss Hull or from the proprietors of the motion picture copyright….If we were obliged to rule on these defenses, we would regard them as warranting somewhat more consideration than did the district judge.").  As the claim of unclean hands relates directly to the same works that EGI is now claiming infringement, the defense of unclean hands is properly applied.   Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor Ltd., 2000 U.S. Dist. LEXIS 10394, *57 (S.D.N.Y. 2000)(defense of unclean hands available where "…the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action…")(cite and quote omitted).

## XII.   EGI has no Actual Damages

### A.     EGI Sued All Three Clubs that Received NAKTA Works

### 1.     Two of the Clubs have Settled, One Case is Still Pending

EGI euphemistically argues that its actual damages are "difficult to quantify".  Memo, p. 20.  That is because they are nonexistent.  Although EGI claims that its licensees have ceased using EGI's Works in favor of the NAKTA

Works (Counterclaim, ¶37) or have avoided licensing EGI's Works because of NAKTA's works (Counterclaim, ¶38), EGI knows that these claims are false.  Not one karaoke club has ceased licensing EGI's works in order to use NAKTA's works. Only three karaoke clubs ever obtained the NAKTA works: Galaxy Bar & Restaurant (not to be confused with Galaxy 45, Mr. Chan's club) d/b/a 100 Fun, Melody of Flushing d/b/a Melody, and YHCL, d/b/a Black Swan, and Melody never commercially used the NAKTA Works.  Chan Decl. ¶9, Ex. L.  Furthermore, EGI sued each one of these clubs[8] and has settled with 100 Fun (Ex. M) and Melody (Ex. N), and released those clubs for any previous infringement.  Under 17 USC §504(b), "double recovery is not permitted".  Davis v. The Gap, Inc., 246 F.3d 152, 159 (2d. Cir. 2001).  As the Copyright Act has expressed its strong policy against double recovery, this Court must guard against such abuses.  Furthermore, the Court should not permit EGI to avoid this strong policy by splitting its claims against NAKTA and the clubs into different suits.  As EGI has already been fully compensated with respect to both 100 Fun and Melody, any attempt by EGI to collect damages amounts to double-dipping and should be denied.

## 2.    EGI has no Damages Due to the Performance of Derivative Works

Furthermore, even if the NAKTA Works infringe EGI's rights, performances of the NAKTA Works by the karaoke clubs are not infringements of EGI's rights.  In discussing the Second Circuit's decision in Agee, Judge Lynch explained:

> The logic of Agee is that regardless of any violation of reproduction rights that may have occurred in the creation of a piece of programming, a party who has the right to perform the copyrighted work can perform it without itself becoming liable for the underlying infringement.  It makes no difference whether the broadcaster has the right to perform the work because no exclusive performance right existed in the first place (as with the sound recording in Agee), or

---

[8] Entral Group International, LLC v. Galaxy Restaurant & Bar, Inc., 05-cv-5550 (E.D.N.Y.)(RJD)(CLP); Entral Group International, LLC v. Melody of Flushing, Inc., 05-cv-1917(E.D.N.Y.)(CBA)(VVP); Entral Group International, LLC v. YHCL Vision Corp., 05-cv-1912(E.D.N.Y)(ERK)(RLM); the undersigned was counsel for Melody.

because the performance right existed but had been licensed to the broadcaster (as with Freeplay's musical compositions here).  Either way, the point is the same: the broadcaster has the right to perform the work, and the fact that the 'program was "tainted" by the producer's unauthorized used of the work' does not defeat that right.

Freeplay Music, Inc. v. Cox Radio, Inc., 404 F.Supp.2d 548, 553 (S.D.N.Y. 2003) quoting Agee, 59 F.3d at 326 (emphasis in original).

Thus, EGI was not damaged by any club's use of the NAKTA Works.

## XIII.  EGI is not Eligible for Statutory Damages and Attorneys Fees

### A.    Foreign Works are not Exempt from the Registration Requirement to Receive Statutory Damages and Attorneys' Fees

The fact that EGI is not the claimant of any registered work bars its eligibility for statutory damages and attorneys fees.  Even though Berne Convention works are exempt from the filing requirement to file suit, unregistered Berne Convention works are not eligible for statutory damages and attorneys' fees under 17 USC §412.  2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, §7.16(c)(1), 7-183 (2006)(…the loss of remedies under Section 412 due to failure to register is applicable to works of foreign origin as well as to domestic works…").

### B.    EGI's Works Were not Registered Timely

#### 1.    EGI was Aware of Infringement

EGI alleges that Galaxy 45 engaged in infringement before entering into a license agreement on January 1, 2004.  Assuming the truth of EGI's allegations, EGI was aware of infringement sometime in 2003.  An additional requirement of 17 USC §412 is that the registration occur the earlier of either three months after publication or within one month of learning of the infringement.  17 USC §412 (registration must occur "…before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the

infringement…").  Only four of the so-called registered works were registered within three months of publication.[9]  The remainder, including the three works that EGI focuses, <u>Neighbor</u> by Hacken Lee, <u>Marriage Will Follow After Many Years</u> by Hacken Lee, and <u>Single Man and Woman</u> by Sammi Cheng, were registered outside the three-month limit, and are therefore subject to the one-month limit.  The respective dates of registration are: October 15, 2003, October 15, 2003, and September 8, 2003.  EGI filed its first infringement case, Entral Group International, LLC v. Pop Music Studios, Inc., 03-cv-6453 (RJD)(RML), on December 24, 2003 in the Eastern District of New York against Pop Music Studios, Before EGI entered into the Master Agreement, on June 1, 2003 no one was collecting license fees those works that EGI now claims rights to.  Thus, no later than June 1, 2003, EGI knew that the works were being infringed.  The fact the registrations were delayed by more than three months after publication and more than one month after EGI knew about the infringement, bars statutory damages.

## XIV.  Any Statutory Damages Award Should be De Minimis

### A.    Statutory Damages Must Relate to Actual Damages

Assuming that EGI may elect statutory damages, "statutory damages should bear some relation to actual damages suffered." <u>RSO Records, Inc. v. Peri</u>, 596 F. Supp. 849, 862 (S.D.N.Y. 1984).  EGI has failed to establish any actual damages, or even any reasonable basis for calculating actual damages.  The rule in this Circuit favors a "lost license" means of determining actual damages.  <u>Davis</u>, 246 F.3d at 166.  Certainly, synchronization licenses are common to the industry.  EGI has avoided submitting such information because it would not support the gargantuan damages EGI seeks.  For example, in <u>EMI Entertainment World, Inc. v. Priddis Music, Inc.</u>, 2007 U.S. Dist. LEXIS 37074 (D. Ut. May 21, 2007), EMI licensed hit

_____

[9] <u>Chauvinist Man</u> by Andy Hui, <u>Triad Girl Saga</u> by Miriam Yueng, <u>Believing with Conviction</u> by Kelly Chen, and <u>Brother An's Song</u> by Andy Hui.

songs (each of which was in the top ten Billboard Hot Country Songs) for a mere $0.15 per copy after an initial fee.  Ex. O.

### B.     NAKTA's Works are One Compilation for Damages Purposes

As to EGI's claim for statutory damages, NAKTA's works comprise one compilation and thus are defines as "one work" under the copyright act.  17 USC § 504(c)(1) ("… all the parts of a compilation or derivative work constitute one work…"); Country Road Music, Inc. v. Mp3.com, Inc., 279 F. Supp.2d 325, 332 (S.D.N.Y. 2003)("…the Copyright Act unambiguously provides that a 'compliation,' although composed of 'separate and independent works, constitutes one work' for the purposes of calculating statutory damages…")(citing 17 USC §504(c)(1)).  As any violation here has been de minimis, the Court should only entertain the minimum statutory damages.

## XV.   EGI Abuses the Copyright Laws

### A.     EGI is Trying to Claim a Performance Right in Sound Recordings

EGI abuses the copyright laws.  EGI's business model is a backdoor attempt to secure a performance right in sound recordings, which has been forbidden by decades of jurisprudence.   The Court can properly consider whether EGI is abusing the copyright laws as avoiding such abuse and anti-competitive actions is an important public policy that transcends Counterclaim Defendants particular circumstances.  EGI's conduct here is directly analogous to the conduct of ASCAP condemned almost sixty years ago.  In Alden-Rochelle, Inc. v. ASCAP, 80 F. Supp. 888 as amended 80 F.Supp. 890 (S.D.N.Y. 1948), ASCAP was found to be engaging in illegal anticompetitive conduct that mirrors that of EGI.  As the holder of copyrights in musical compositions (in which performance rights do exist), ASCAP required movie exhibitors to obtain performance licenses for its works.  The movie producers required that the movie exhibitors show the movies in unaltered form, thus ASCAP's songs could not be deleted from the soundtrack.

### B.    By Prohibiting the Use of the Sound Recordings with Video, EGI is Engaged in an Anti-Competitive Trade Practice

Here, EGI, TCW and the record companies are engaged in a similar enterprise.  As no performance right exists in the sound recordings, karaoke clubs can play any sound recordings without stepping on any rights held by EGI, TCW or the record companies.  It is only through the video component that EGI has any colorable claim to block the performance of these particular sound recordings.  In fact, EGI claims the exclusive right to control the performance of the sound recordings in karaoke works and has never made these songs available other than accompanied by particular video components.  EGI now claims the right to block the stripping of its video components.  Thus, by marrying sound recordings to particular videos, and demanding that the sound recordings be performed only accompanied by those particular videos, EGI is asserting a right to block the performance of sound recordings through its control of the performance right in the video component.  As the performance right in the sound recordings has been expressly rejected, the basis for EGI's complaints is contrary to the public policy of the United States.

## XVI.  EGI's Other Claims Provide no Basis for Relief

### A.    EGI's Federal Claims are Duplicative

As EGI tacitly acknowledges by making no submissions directed to these issues, EGI's Lanham Act (Counts III and IV) and state law claims (V-IX) are merely duplicative and are no basis for separate relief.  Although EGI seems to allege a nebulous trademark claim (see, e.g., Counterclaim, ¶35) , EGI does not have standing to assert trademark claims as it has not demonstrated that it is, in fact, the registrant of any trademark:

> If plaintiff is the owner of a federal mark registration, it may sue in
> federal court for infringement of that registered mark…[I]t is clear
> that plaintiff must allege that it is in fact the 'registrant' of an already
> issued and outstanding registration.  Only the federal 'registrant' has
> standing to sue under the Lanham Act Sec. 32(1)[15 USC §1114(1)]

<u>6 McCarthy on Trademark and Unfair Competition § 32:3</u>, at 32-14 (2006).

To the extent that EGI alleges other violations of the Lanham Act, as the factual allegations are substantively identical to the copyright claims, EGI is entitled to no relief under those claims. <u>Scholastic, Inc. v. Stouffer</u>, 124 F. Supp. 2d 836, 844-45 (S.D.N.Y. 2000)("...in order for a Lanham Act claim to survive in addition to a copyright claim, an aggrieved author must show more than a violation of the author's protected right to credit and profit from a creation...").

### B.    EGI's State Law Claims are Pre-Empted

The state law claims alleged by EGI are also nothing more than a rehash of its copyright claims. To survive, such claims must possess an extra element that makes them qualitatively different that EGI's copyright claim. As EGI has not identified additional elements, EGI is not entitled to separate relief on these claims. <u>Freeplay Music, inc. v. Cox Radio, Inc.</u>, 409 F.Supp.2d 259, 264 (S.D.N.Y. 2005)("Because Freeplay has failed to allege any 'extra element' beyond simply the same charge that defendants produced, exploited and distributed in interstate commerce certain radio programming containing certain of Plaintiff's compositions and sound recordings...its state law causes of action are pre-empted by the Copyright Act...").

## XVII. EGI Acts this Court to Ignore the Equal Protection Clause of the Constitution

Finally, EGI concludes its memorandum with a stomach-turning argument. First, EGI claims that the "maximum statutory damages" are justified because: (1) "the copyright interests of U.S. citizens and corporations are being routinely violated" (Memo, p. 22) in the People's Republic of China; and (2) that "copyright interests are being grossly and flagrantly violated by the Counterclaim Defendants and other U.S. karaoke clubs who believe that they can act with impunity" (Memo, p.22). In sum, EGI requests that this Court dole out extra punishment to Mr. Chan and Mr. Yim, both citizens of the United States, because they are Americans of

Chinese descent.  NAKTA, Mr. Yim and Mr. Chan respectfully refer EGI to the Fifth and Fourteenth Amendments to the United States Constitution, which guarantee equal protection of the law. U.S. Const., Amend. V.; U.S. Const. Amend. XIV; Bollling v. Sharpe, 347 U.S. 497 (1954).

## CONCLUSION

For the reasons stated above, EGI should be denied any claim of damages.

Dated:          New York, New York
                July 30, 2007

                                        /s/David J. Hoffman
                                        David J. Hoffman (DH 7605)
                                        Attorney at Law
                                        29 Broadway
                                        27th Floor
                                        New York, New York 10006
                                        Tel: 212-425-0550
                                        Fax: 212-797-3545

                                        ATTORNEY FOR COUNTERCLAIM
                                        DEFENDANTS NORTH AMERICAN
                                        KARAOKE WORKS TRADE
                                        ASSOCIATION, INC., SAM CHAN,
                                        AND RAY YIM