AGREEMENT This Agreement, dated June 1, 2003 (the "Effective Date"), between TC Worldwide Ltd, a British Virgin Islands corporation of P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands ("TCW") and Entral Group International, LLC, a Delaware Corporation of 245 Park Avenue, 39th Floor, New York, NY 10167 ("EGI).

**WHEREAS:**

EGI intends to establish a comprehensive licensing system in the Territory (as defined below) for coordinating Karaoke networks and/or distributing Karaoke versions of music videos in the Territory (as defined below) throughout the authorized Outlets (as defined below) therein.

EGI intends to enter into written agreements with the owners and/or operators of the Outlets which allow such Outlets to provide the Licensed Contents (as defined below) to their customers for viewing and singing Karaoke via a Karaoke System(s) (as defined below) in the respective Outlets.

EGI thereby desires to enter into an agreement with TCW pursuant to which TCW shall grant to EGI an exclusive sub-license to use certain Karaoke versions of music videos in which TCW holds an exclusive license granted by several Record Companies (listed in Exhibit 1) and to collect relevant payments on the terms and conditions of this Agreement.

The terms used in this Agreement are defined in Section 1.

**NOW, THEREFORE,** in consideration of the mutual agreements herein contained and other good and valuable consideration, the receipt of which is hereby acknowledged TCW and EGI agree as follows:

1.  **DEFINITIONS**

    In the context of this Agreement, the following terms are defined as follows:

    (a)  "Artist" means a recording artist whose performance is embodied in the recording and featured in the Licensed Content.

    (b)  "Karaoke Works" means the audiovisual recordings of songs and graphic images in audio-visual formats identified in the Back Catalogs and Control Catalogs.

    (b)  "Back Catalogs" means the audio-visual recordings (mainly performed in Mandarin and Cantonese) as licensed by the Record Companies which have been released for more than three (3) months prior to the Effective Date. A list of Back Catalogs granted as at the Effective Date is attached as <u>Attachment 1</u> hereto.



Dockets.Justia.com

(c) "Control Catalogs" means the audio-visual recordings (mainly performed in Mandarin and Cantonese) as owned and/or controlled by the Record Company which have been released within the three (3) months period prior to the Effective Date or will be released after the Effective Date. A list of Control Catalogs granted as at the Effective Date is attached as <u>Attachment 2</u> hereto.

(d) "Control Catalog Fee" means the license fee as determined and charged by EGI on the Outlets for the grant of right to use the Karaoke music video version of the Control Catalog recordings in such Outlets.

(e) "Control Catalog Royalty" means a fixed license royalty in the amount of US$40.00 per song per outlet payable by EGI to TCW with respect to the right to sublicense the Karaoke music video version of each Control Catalog recording during the Term.

(f) "Control Catalog Revenue" means the aggregate amount of the Control Catalog Fees received for sub-license to use the Control Catalog recordings for Karaoke Performances in the Outlets less the relevant Control Catalog Royalty and the necessary costs in such amount as mutually agreed between EGI and TCW.

(g) "Gross Revenue" means all amounts collected by EGI from the Outlets in connection with the existing Karaoke Works therein and the sub-license of the rights in the Licensed Contents to such Outlets for Karaoke Performances therein, including: (i) a fixed annual fee charged per each Outlet, and (ii) a fixed annual fee charged per each box/screen/television-set set out in each Outlet; but excluding Control Catalog Fees.

(h) "Karaoke System" means a closed end Karaoke system set up and maintained in each Outlet for the purpose of displaying the Karaoke Works and to permit singing and performing the Karaoke Works therein.

(i) "Karaoke Performance" means singing and performing the Licensed Contents by the customers of the Outlets therein.

(j) "Licensed Contents" means the Karaoke version of the music videos listed in the (i) Back Catalogs and (ii) Control Catalogs as owned and/or controlled by the Record Company.

(k) "Net Revenues" means the Gross Revenues less the expenses and costs up to 110% of a budget submitted by EGI to TCW on or about January 15, 2003 And every calendar year following on September 1. For the avoidance of doubt, any deduction which is more than 110% of the above mentioned agreed budget will be subject to the approval of TCW. In the event that EGI shall exceed 110% of its proposed budget for a given year, it shall notify TCW before

incurring costs in excess of 110% of that year's budget and the TCW shall notify EGI of its decision as to whether said costs are acceptable within 10 business days.

(l) "Other Record Label" means each of the labels listed in the Exhibit 1.

(m) 'Outlet" means a physical commercial premise/venue in the Territory that operates and/or offers Karaoke singing services to the public via Karaoke System(s) therein, such as a KTV, a Karaoke bar, a pub and a restaurant, as permitted by legal license.

(n) "Term" means the period described in Section 9(a) below and any extension and renewal thereof.

(o) "Territory" means United States of America ~~and Canada~~ only. 

## 2.  SCOPE OF RIGHTS GRANTED

Upon the terms and conditions set forth in this Agreement, TCW grants to EGI, during the Term and in Territory, the exclusive rights as set forth in this Section 2.

(a) The right to reproduce and use or authorize reproduction and use of the Licensed Contents (and copies thereof) in the Outlets via the Karaoke System(s) therein, including:

(i) the right to reproduce, dub and use and/or authorize reproduction, dubbing and/or usage of the Licensed Contents in such audio-visual physical formats (as ordered from the Record Company and/or manufactured or dubbed pursuant to the approval of the Record Company), including without limitation video cassettes, VCDs, DVDs and/or LDs, through the audio-visual equipments set-up in the Outlets for Karaoke Performances therein; and

(ii) where technically feasible and available, the right to authorize encoding and inclusion of the Licensed Contents in the computerized Karaoke System in the Outlets (if necessary) and the right to allow transmission of the Licensed Contents to the boxes/screens/television-sets connected to such system in the Outlets for Karaoke Performances therein; in sum, the TCW grants to EGI the right to publicly perform, display, copy, reproduce (including switching media [i.e. copying information from a disc to a hard drive]), synchronize, and commercially exploit any and all copyrighted songs, images, or video which are included in the Licensed Content in the computerized Karaoke System

(b) The rights to collect fees relating to Karaoke Performances and relevant license fees from the Outlets with respect to the usage and/or exploitation of the Licensed Contents and music contents as owned and/or controlled by the Other Record Labels via the Karaoke System therein.

776902 v1

(c)   The right to use and authorize usage of the names, photos, biographies, voices and likeliness of the Artists and the available promotional materials in connection with the Licensed Contents throughout all promotional and marketing channels in the Territory for marketing and promotion of the Outlets.

(d)   The right to pre-load the licensed contents in digital format on a Karaoke System offered for sale in North America.

3.   **LIMITATIONS & UNDERTAKINGS BY TCW**

(a)   The rights granted by TCW in this Agreement are limited to the exclusive use of the Licensed Contents in the manner expressly described in Section 2. Any and all other rights in connection with the Licensed Contents are specifically reserved by the Record Company. Unless otherwise expressly provided in this Agreement, there is no implied license or otherwise and no sublicense or assignment of any rights is permitted without TCW's consent.

(b)   EGI shall not edit, change or alter in any way any Licensed Contents.

(c)   EGI shall not enable any download of any Licensed Contents, nor shall it provide public broadcasting. Subject to the rights as granted under Section 2 above, EGI will not engage or enable any unauthorised use or utilization of the Licensed Contents, nor may it use or enable usage of any name or image of the Record Company or any Artists without the consent of the Record Company.

(d)   EGI shall ensure that proper copyright and other notices and credits are provided for in the Outlets upon Karaoke Performances of the Licensed Contents therein.

(e)   EGI shall use its reasonable endeavors to ensure that there are sufficient protection against unauthorized copying or distribution of the Licensed Contents in the Territory.

4.   **PAYMENTS**

In consideration of the rights granted hereunder, EGI shall pay to TCW should TCW duly execute and deliver this Agreement to EGI on or before May 31, 2003 together with the preliminary list of Back Catalog (including recordings as released on or before June 31, 2003, which shall be finalized and agreed by both parties within 30 days and then shall serve as Attachment 1 hereto and the list of Control Catalogs (as available at the Effective Date) as Attachment 2 hereto:

776902 v1

(a) upon obtaining a copy of Karaoke music video version of the Control Catalogs, the relevant Control Catalog Royalties;

(b) within sixty (60) days after the end of each semi-annual period (i.e. 30 June and 31 December) during the Term, 90% of the Control Catalog Revenue for the relevant accounting period;

(c) EGI shall pay to TCW a fee of $100 per station for each pre-loaded Karaoke-on-Demand system which it loads with TCW's licensed contents.

(d) TCW shall loan EGI $200,000 U.S. at an annual interest rate of 5% compounded monthly. The loan shall be amortized over 18 months, with the first payment taking place on January 1, 2004 and monthly installments due on the first of each month thereafter until June 1, 2005. Payments shall be remitted to TCW's main address as listed above.

(e) EGI shall file on the first day of each month a report listing reimbursable expenses related to royalty collection and TCW shall reimburse such expenses within 15 days, by the 16th day of the following month.

5. **REPRESENTATIONS & WARRANTIES**

(a) TCW represents and warrants that:

(i) it possesses full right, power and authority to enter into and perform this Agreement and to grant the rights pursuant to the terms and conditions of this Agreement;

(ii) it owns and/or controls or is licensed to use the entire copyright throughout the Territory in and to the Licensed Contents for the purpose of granting the rights under this Agreement and will continue to do so for the entire term of this Agreement and EGI's exercise of any of its rights granted hereunder will not infringe any rights of any person, firm or corporation;

(iii) it has not and will not, so long as this Agreement remains in effect, grant or attempt to grant to any other person, firm or corporation rights of any kind in any of the Licensed Contents in the Territory, the exercise of which would derogate from or be inconsistent with the rights granted to EGI hereunder;

(iv) prior to the dispatch to EGI of any masters of the Licensed Contents, TCW has obtained and will obtain all necessary consents for exploitations thereof by EGI pursuant to this Agreement (including all consents necessary for the use by EGI of the names, photographs and likeness of the Artists);

(v) except as otherwise expressly provided herein, EGI shall be under no liability whatsoever to any Artists or to any other third parties,

- 5 -



whose services and/or performances are engaged for the preparation, production and completion of the Licensed Contents for whom the Record Company (or its designated or authorised party) may be obliged to pay in connection with the use or performance of the License Contents pursuant to the relevant contracts as granted under this Agreement.

    (b)    EGI represents and warrants that:

    (i)    it is properly authorize to enter into this Agreement and will duly perform and observe the terms and conditions of this Agreement;

    (ii)    it shall comply with all applicable laws;

    (iii)    except for those licenses and consents which TCW and/or the record company is responsible for on the terms hereof, it and/or the Outlets(where applicable) shall be responsible to directly deal with all publishers of the musical/lyrical components of the Licensed Contents and obtain all necessary licenses and consents required for reproduction, Karaoke Performance or other use of the music compositions embodied in the Licensed Contents ("Copyright Licenses") and all payments relating thereto. For clarification, TCW sub-licenses only those copyrights which it possesses to EGI. TCW and the Record Companies are not required to obtain publishing clearance for the Licensed Content.

## 6. ACCOUNTING

    (a)    EGI shall furnish to TCW within 45 days of 30 June and 31 December in each calendar year during the Term a statement of account. Subject to necessary withholdings and taxes and duties, the statements shall be forwarded simultaneously with all payments due (if any) to TCW for the attention of Ms Maria Wan. Statements shall be rendered whether or not payments are due to the Record Company.

    (b)    TCW shall have the right on 10 (ten) days prior notice in writing to inspect the books of EGI (or its affiliates or agents, as the case may be) insofar as the said books relate to the use and exploitation of the Licensed Contents and any monies, fees or payments payable to TCW hereunder. In the event that any such inspection reveals an underpayment to TCW, EGI will make good any underpayment revealed by TCW within 30 days. Provided however, that if the statements are understated by 10% or more, EGI shall reimburse TCW the costs incurred for inspection up to a maximum of the underpayment itself in question together with the underpayment.



7. **TCW'S OBLIGATIONS**

(a) During the Term TCW shall, from time to time, provide and update the list of Control Catalogs to include additional recordings for license under this Agreement.

(b) Within thirty (30) days after the Effective Date, TCW shall provide Karaoke music video versions of the Back Catalogs (as listed out in Attachment 1 and if necessary) and the Control Catalogs (subject to payment of the relevant Control Catalog Royalties) as listed out in Attachment 2 which are available as at the date thereof. Throughout the Term, TCW shall provide EGI a list of the Karaoke music video version of any new Control Catalogs on a monthly basis and within fifteen (15) days thereafter, provide one copy for each of the Karaoke music video version of the relevant Control Catalogs to EGI for usage on the terms under this Agreement. In such case, EGI shall pay the Control Catalog Royalties in respect of the Licensed Contents so provided and delivered. All copies as provided in accordance with this Section 7(b) will be provided in such formats as determined by TCW. The copies shall be delivered by TCW to the 245 Park Avenue, 39th Floor, New York, NY 10167 office of EGI as specified by EGI from time to time.

(c) Upon formal execution of this Agreement, TCW shall provide all necessary documentation (including letter of authorisation or warranty) confirming its rights and/or ownership to the Licensed Contents and the grant of the relevant rights therein to EGI for EGI's exercise and/or implementation of the rights under this Agreement, including carrying out the copyright registration in the Territory.

8. **OWNERSHIP**

(a) EGI hereby acknowledges that it asserts no ownership rights in the copyrights involved in this Agreement, and confirms that, as between itself and the TCW, represents that TCW is the exclusive licensee of all copyrights and other rights in and to the Licensed Contents and all Licensed Contents are and shall be and remain the sole property of the Record Companies.

(b) EGI shall take all reasonable steps to prevent any unauthorized usage of the License Contents in the Territory for the scope as specified under this Agreement and shall ensure that no such unauthorized usage is carried out in any Outlets in the Territory. EGI shall immediately notify TCW in the event that it is aware of any infringement or potential infringement of the rights as granted hereunder with respect to the Licensed Contents. In the event of any such infringement or potential infringement, EGI shall have the right to determine whether a proceeding should be brought against any third parties and if EGI decides to take necessary actions, TCW shall provide all documentation and assistances to EGI for the purpose of carrying out the actions.

776902 v1



9. **TERM & TERMINATION**

(a) This Agreement shall commence on the Effective Date and continue for two (2) years thereafter (the "Initial Term"), unless renewed or otherwise extended or early terminated pursuant to the terms hereunder.

(b) Upon the expiration of the Initial Term, The contract will be renewed automatically for one additional year; unless either party provides written notice of its intention not to renew to the other party 60 day prior the expiration date.

(c) Either party may terminate this Agreement on the following events:

(i) the other party is in material breach of any of its representations, warranties, agreements or obligations hereunder, which breach is not remedied within thirty (30) days from the date of written notice by the non-breaching party;

(ii) the other party is or will become dissolved or liquidated, makes an assignment for the benefits of the creditors, files a petition under any applicable bankruptcy act, receivership statute or the like or becomes or will become bankrupt or otherwise insolvent other than for the purpose of reorganisation of amalgamation;

(iii) either party is prevented from fulfilling its obligations due to a force majeure event for more than six (6) months from the occurrence of such event, then either party shall have the right to terminate the Agreement with immediate effect by written notice. For the purpose of this Section 9(c)(iii), a "force majeure event" means a event which results in failure or delays in performing the obligations of either party hereunder and which arises from cause(s) beyond such party's control, including but not limited to acts of God, acts of civil or military authority, fires, strikes, lockouts or labour disputes, governmental restrictions, wars, riots, earthquakes, typhoons.

10. **EFFECT UPON EXPIRATION OR TERMINATION**

Upon termination or early expiration of the Term hereunder, EGI shall by its reasonable endeavours:

(a) cease to use and requesting cessation by the Outlets to continue to use any Licensed Contents and any digitization (if any), reproduction thereof; and

(b) return or destroy (at TCW's reasonable prior instruction in writing) all Licensed Materials (and all copies thereof) if the same are in direct possession and control of EGI as at the time thereof.

Upon the expiration the Term or earlier termination of this Agreement, all rights granted by the Record Company shall forthwith revert to the Record Company.

## 11. INDEMNIFICATION

Each party shall at all times defend, indemnify and hold harmless the other party from and against any and all third party claims, damages, liabilities, costs and expenses (including reasonable legal expenses and fees) arising out of any material breach by the indemnifying party, or clam of a breach, which if true, would constitute a material breach by the indemnifying party, of any representation, warranty, obligation or agreement made by the indemnifying party in this Agreement.

## 12. NOTICES

Any notice given by one party to the other shall be deemed properly given if specifically acknowledged by the receiving party in writing or when delivered to the recipient by hand, fax or special courier during normal business hours to the following addresses (or such other address as may be notified in writing from time to time by either party):

(a) if to TCW, to:    TC Worldwide, Ltd.
Attn: Maria Wan
Fax No: 1-646-349-4456

(b) if to EGI, to:    Nicolas Chai, President
Entral Group International LLC
(Delaware)
245 Park Avenue, 39th Floor,
New York, NY 10167

Notices shall be deemed to be received on the first business day following receipt. Each communication and document made or delivered by one party to another pursuant to this Agreement shall be in the English language.

## 13. CONFIDENTIALITY

Each party ("Receiving Party") shall not disclose to third parties nor use for any purpose other than for the proper fulfillment, compliance or performance of this Agreement, this Agreement or any technical, financial or

- 9 -

776902 v1



commercial information ("Information") received from the other party ("Disclosing Party") in whatever form under or in connection with this Agreement without the prior written permission of the Disclosing Party. The above mentioned limitations shall not apply to Information which:

    (a)    was in the possession of the Receiving Party prior to disclosure hereunder; or

    (b)    was in the public domain at the time of disclosure or later became part of the public domain without breach of the confidentiality obligations herein contained; or

    (c)    was disclosed by a third party without breach of any obligation of confidentiality owed to the Disclosing Party; or

    (d)    was independently developed by personnel of the Receiving Party having no access to the Information; or

    (e)    was required to be disclosed by any laws, regulations and/or rules of stock exchange.

### 14. ASSIGNMENT

EGI shall not be entitled to assign or transfer all or any of its rights, benefits and obligations under this Agreement without the prior written consent of the Record Company save and provided that nothing herein shall affect the right of TCW under Section 2(d) above.

TCW may transfer or assign, in whole or in part, this Agreement (or its rights, interests or obligations hereunder) to any of its affiliates, or to any person becoming an affiliate of the Record Company.

### 15. MISCELLANEOUS

(a) This Agreement states the entire agreement between the parties relating to the subject matter hereof and supersede all prior communications, whether written or oral, between the parties. All amendments and modifications to this Agreement shall be made by an instrument in writing signed by both parties.

(b) Governing Law and Jurisdiction

This Agreement shall be governed by and construed in accordance with the laws of the state of New York and the parties hereby submit to the exclusive jurisdiction of New York State.



776902 v1

(c)     Severability

If any part, term or provision of this Agreement is held to be void, illegal, unenforceable or in conflict with any law of a state or government having jurisdiction over this Agreement, the validity of the remaining portions or provisions shall not be affected thereby.

(d)     Parties Not Partners

Nothing in this Agreement shall constitute a partnership, agency relationship or joint venture among the parties nor constitute one party the agent of the other party and vice versa. Except as set out in this Agreement, no party shall have express or implied authority to bind or represent any other party for any purpose whatsoever unless expressly agreed in writing by the party concerned.

**IN WITNESS WHEREOF**, the parties hereto have caused their duly authorised representatives to execute this Agreement as of the date set forth above.

Entral Group International LLC

By: _____
Name: Nicolas Chai
Title: President

TC Worldwide Ltd.

By: _____
Name: Maria Wan
Title: Chairwoman and C.O.O.

776902 v1

A.   **ATTACHMENT 1**

**LIST OF BACK CATALOGS**

ATTACHMENT 2

776902 v1

B.  ATTACHMENT 2

<u>LIST OF CONTROL CATALOGS</u>
<u>(as at the Effective Date)</u>

1. EXHIBIT 1

## LIST OF LABELS

1. Virgin Hong Kong
2. EMI Hong Kong
3. BMG
4. Warner Music
5. Universal Music Group
6. Emperor Entertainment Group
7. Go East

EXHIBIT 1

776902 v1