## OUTLET LICENSE AGREEMENT

This License Agreement ("Agreement"), dated   January 1, 2004   (the "Effective Date"), between Entral Group International LLC, a Delaware limited liability company having an address at 245 Park Avenue, 39th Floor, New York, NY 10167, USA ("Licensor") and ABC Target Inc., d/b/a Galaxy 45 having an address at 45 Mott Street, Basement, New York, NY 10013 ("Licensee").

**WHEREAS**:

Licensor has the right in the United States of America, to sublicense the use of certain pre-recorded Karaoke Works for use at authorized Outlets in accordance with this Agreement.

Licensee wishes to use said Karaoke Works at the Outlet identified below pursuant to the terms of this Agreement.

**NOW, THEREFORE**, in consideration of the mutual agreements herein contained and other good and valuable consideration, receipt of which is hereby acknowledged, Licensor and Licensee agree as follows:

1. **DEFINITIONS**

In the context of this Agreement, the following words have the following meanings:

a) "Karaoke System" means a closed end karaoke system; machine or player set up and maintained in an Outlet for the purpose of karaoke entertainment.

b) "Karaoke Works" means the audiovisual recordings of songs and graphic images in audio-visual physical formats, including without limitation videocassettes, VCDs, DVDs, CD+Gs and/or LDs identified in Licensor's Catalog of works available for licensing as updated from time to time.

c) "Outlet[s]" means a physical commercial premise/venue owned or operated by Licensee in the Territory that provides Karaoke entertainment to the public via Karaoke System(s) therein, such as a KTV, a karaoke bar, a pub and a restaurant, as permitted by legal license.

d) "Use" means the playing of Karaoke Works using Karaoke Systems at an authorized Outlet for the entertainment of the end-user customers or members of the Outlet.

e) "Term" means the period described in Section 7(a) below and any extension and renewal thereof.

f) "Territory" means the United States of America.

1

2.   **GRANT OF LICENSE**

a)   Upon the terms and conditions set forth herein, Licensor grants to Licensee a non-exclusive license to use the Karaoke Works identified herein for entertainment purposes through Karaoke Systems located at the following Outlet(s):

ABC Target Inc., d/b/a Galaxy 45

45 Mott Street, Basement, New York, NY 10013

b)   This Agreement permits Licensee to use the Karaoke Works only for entertainment purposes in the ordinary course of business and during normal business hours using Karaoke Systems located at the Outlet during the Terms of this Agreement including any renewals. It does not provide any other rights to use or any ownership rights in the Karaoke Works.

3.   **LICENSEE'S REPRESENTATIONS AND WARRANTIES**

a)   Licensee represents: 1) it posses full right, power and authority to enter into and perform this Agreement; 2) it is in compliance and shall continue to be in compliance with all laws and regulations necessary for it to continue to operate its business at the Outlet and to use the Karaoke Works as envisioned in this Agreement.

4.   **LIMITATIONS ON LICENSE.**

a)   Licensee has no right to use the Karaoke Works except as expressly provided herein. Licensee acknowledges that it does not claim nor does this Agreement give to Licensee any ownership rights in the Karaoke Works or copies thereof or any copyright or other rights relating thereto. Any use that is not expressly authorized herein shall be prohibited. Any prohibition applying to Licensee shall also prohibit Licensee from authorizing, permitting or allowing others to do any of the prohibited acts. Upon termination of this Agreement, all rights licensed herein shall terminate immediately.

b)   Without limiting the foregoing, the following express limitations on use shall expressly apply.

(i)   Licensee may make a copy of or reproduce the Karaoke Works only to place a copy or copies on the equipment at the Outlet for the purpose of displaying the Karaoke Works at the Outlet, and may not sell, distribute, transfer or allow third parties outside of the Outlet to gain possession or use the Karaoke Works thereof.

(ii)   Licensee may not broadcast, telecast or transmit by any medium or means any Karaoke Works to any persons or any facility, venue or device external to the Outlet.

NEWYORK 4324416v1

(iii) Licensee shall not edit, change or alter in any way any Karaoke Works.

(iv) Licensee shall only download the Karaoke Works into the Karaoke System at the Outlet or Outlets listed under Paragraph 2a). Licensee shall not download or enable or facilitate any download of any Karaoke Works by others into a non-Karaoke System or a Karaoke System that is outside of the Outlet or Outlets listed under Paragraph 2a).. In the context of this agreement, the term download means storing a digital copy of the Karaoke Works into the Karaoke System.

(v) This Agreement is limited to non-dramatic performances and shall not include any performance in a musical comedy, opera, play with music, revue, ballet or any other dramatico-musical work accompanied by dialogue, pantomime, dance, stage action or visual representation of any work from which the music is taken.

(vi) The rights being licensed hereunder are only those owned or controlled by the publisher of the Karaoke Works and may not cover the performance rights of the composers and/or lyricists or others of the songs on which the Karaoke Works are based. Each Outlet is responsible for obtaining any additional performance rights to the extent necessary and shall be responsible to directly deal with all publishers or owners of the musical/lyrical components of the Karaoke Works or their representatives and obtain all necessary licenses and consents required for reproduction, performance or other use of the music compositions embodied therein ("Copyright Licenses") and all payments relating thereto.

(vii) Licensee shall ensure that proper copyright and other notices and credits are provided for in the Outlets as specified by Licensor from time to time.

(viii) From time to time, Licensor shall provide a list of composers and lyricists or others whose rights of the works upon which the Karaoke Works are based are not covered by the rights being licensed by this Agreement. Then Licensee shall obtain all necessary licenses and consents from them as set forth in subparagraph (vi) above.

5. **PAYMENTS**

a) In consideration of the Agreement granted hereunder, Licensee shall pay to Licensor an up-front annual license fee of $18,000 per authorized Outlet plus $1,000 per additional room or monitor, displaying the Karaoke Works. The annual License Fee for the Licensee at the Outlet is calculated and shown on Exhibit A. This annual license fee and calculation thereof may be amended from year to year as provided in Paragraph 7.

b) Any payment for a renewal of this Agreement must be made, on or before the actual renewal date.

c) Exhibit B provides information about the Outlet and rooms where Karaoke entertainment is to be provided. Licensee hereby represents, warrants and certifies that the information contained in Exhibit B is accurate and, in particular, that the Outlet has only the

3

number of rooms operating separate Karaoke Systems as specified on Exhibit B. Licensee shall notify Licensor in writing at least thirty days in advance of any changes in the circumstances set forth on Exhibit B which would result in an increase in the license fee. Licensee shall pay any increased license fee, effective as of the initial date of such changes whether or not written notice of such change has been timely given. Licensor reserves the right to physically inspect each Outlet for purposes of insuring that Licensee is in compliance with this and other provisions of this Agreement.

        d)     Licensee shall pay any increased license fee resulting from the preceding paragraph within a 30-day period from the date upon which the additional usage occurred. In the event Licensee is or has been delinquent in the payment of any license fee due hereunder by 30 days or more, Licensee agrees to pay a finance charge on the license fee due of 1.4% per month or the maximum rate permitted by the law of the state in which the Outlet licensed hereunder is located, whichever is less, from the date such license fee become due notwithstanding when Licensor became aware of this additional obligation.

        e)     Licensee shall pay Licensor $75.00 for each copy of a Karaoke Work provided by the Licensor upon request by the Licensee.

## 6. **KARAOKE WORKS**

        a)     A list of the publisher or owner of the Licensed Karaoke Works is attached as Exhibit C. A catalogue of the licensed Karaoke Works from each of the publishers or owners will be provided upon request.

        b)     Licensor represents that is has obtained the requisite rights necessary to license the use of the Karaoke Works pursuant to the terms of this Agreement from the owner of the Karaoke Works set forth in Exhibit C, under written license agreements from each of the Owners and such agreements is currently in force and shall expire as follows:

| Owner | Date |
| --- | --- |
| Warner Music HK Limited | February 28, 2005 |
| Universal Music Limited, HK | February 28, 2008 |
| Go East Entertainment Limited | February 28, 2008 |
| Emperor Entertainment HK Limited | February 28, 2008 |
| EMI Group HK Limited | May 31, 2006 |
| BMG Hong Kong Limited | May 31, 2005 |

        c)     Licensor will endeavor to maintain and update the current catalog over time and will provide updated catalogs of Karaoke Works from time to time. The updated catalog is referred to as the "Control Catalog." Licensor reserves the rights to add new works or withdraw other works from the catalog from time to time.

        d)     At Licensee's request, Licensor shall provide Licensee with an authorized reproduction or copy of each Karaoke Work in the Control Catalog upon payment of the fee set

forth in Paragraph 5 e) for use at the Outlet ("Outlet Master"), which may be used by Licensee on the Karaoke systems located in the Outlet. Licensee shall return each Outlet Master at the termination of the License or upon notification from Licensor that the work is being recalled from the Catalogs of Licensed Karaoke Works. The provisions of Paragraph 8 shall apply to any such recall or termination.

### 7. TERM & TERMINATION

a)  This Agreement shall commence on the date first above written and continue for ONE(1) year thereafter (the "Term") and renew automatically on the anniversary date unless terminated by either party by prior written notice given at least 30 days prior to the end of the then existing term. Licensor reserves the rights to amend the License Fees or other terms of the Agreement for the upcoming renewal term as a condition to renewal and will give reasonable notice to Licensee of any such changes at least sixty (60) days prior to the end of the existing terms

b)  Licensor may terminate this License in the event that Licensee is in breach of any term or condition herein, which breach is not remedied within thirty (30) days from the date of written notice by Licensor.

c)  Licensor may automatically terminate this Agreement without notice upon the following events all of which are deemed to be material breaches to this License.

(i)  Licensee attempts to make further copy or further reproduction of the Karaoke Works not authorized under paragraph 4(b)(i).

(ii)  Licensee becomes dissolved or liquidated, makes an assignment for the benefits of the creditors, files a petition under any applicable bankruptcy act, receivership statute or the like or becomes or will become bankrupt or becomes otherwise insolvent other than for the purpose of reorganization of amalgamation;

(iii)  Licensee attempts to sell, distribute or allow other parties to take possession of the Karaoke Works.

(iv)  Licensee attempts to edit or alter the Karaoke Works.

(v)  Licensee may terminate this Agreement in the event it permanently discontinues the use of Karaoke Works at the Outlet upon thirty days prior written notice. In the event of such termination, Licensor shall not be obligated to refund to the Licensee fees or any part thereof.

(vi)  Licensor may terminate this Agreement at any time in the event that Licensor should no longer have the rights to license a significant percentage of the then current Karaoke Works. In such an event, Licensor will provide written notification to Licensee thereof and refund to Licensee any unearned license fees paid in advance on a pro-rata basis calculated using a percentage based on the number of weeks remaining in the License (without renewal) divided by 52 weeks.

5

8. **EFFECT UPON EXPIRATION OR TERMINATION**

Upon termination of the License or Term hereunder, Licensee shall cease all use of the Karaoke Works for any purpose and shall immediately return all Outlet Masters to Licensor. Any violation of this provision shall be deemed to be a material breach entitling Licensor to immediate legal relief including injunctive relief. If Licensee has made any copies or reproductions of any Outlet Master in violation of this Agreement and the Copyright laws of the United States, Licensee shall be required to also return those illegal copies or reproductions. This provision shall also apply to any recalled Masters pursuant to Paragraph 6.

9. **NOTICES**

Any notice given by one party to the other shall be deemed properly given if specifically acknowledged by the receiving party in writing or when delivered to the recipient by hand, fax or special courier during normal business hours to the following addresses (or such other address as may be notified in writing from time to time by either party):

a) if to Licensor, to:   [Entral Group International LLC]

Attn: [Nicolas Chai, President]

Fax No: [646-349-4456]

b) if to Licensee, to:   [ABC Target Inc. d/b/a Galaxy 45]

45 Mott Street, Basement, New York, NY 10013

Notices shall be deemed to be received on the first business day following receipt. Each party agrees to inform the other of any change of address in writing.

10. **ASSIGNMENT**

This License is personal to Licensee and shall not be assignable or transferable by operation of law or otherwise, except by the written consent of Licensor, said consent shall not be unreasonably withheld. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns of their entire business and all other parties acting on their behalf, but no assignment shall relieve any party hereto of its respective obligations hereunder.

11. **INDEMNIFICATION**

a) Both parties shall at all times defend, indemnify and hold the other harmless and against any and all third party claims, damages, liabilities, costs and expenses (including reasonable legal expenses and fees) arising out of any material breach by said party,

or clam of a breach, which if true, would constitute a material breach by said, of any representation, warranty, obligation or agreement made by that party in this Agreement.

      b)    Licensor shall fully indemnify, defend and hold harmless Licensee from and against all claims, losses, damages, expenses, and liability, including claims of copyright infringement, arising from Licensee's authorized use of Karaoke Work pursuant to this Agreement except where Licensee fails to perform its obligations set forth under this Agreement and specifically in paragraph 4(b)(viii)

### 12.  MISCELLANEOUS

      a)    This Agreement states the entire understanding between the parties relating to the subject matter hereof and supersedes all prior communications, whether written or oral, between the parties. All amendments and modifications to this Agreement shall be made by an instrument in writing signed by both parties.

      b)    This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

      c)    If any part, term or provision of this Agreement is held to be void, illegal, unenforceable or in conflict with any law of a state or government having jurisdiction over this Agreement, the validity of the remaining portions or provisions shall not be affected thereby.

      d)    Nothing in this Agreement shall constitute a partnership, agency relationship or joint venture among the parties nor constitute one party the agent of the other party and vice versa. Except as set out in this Agreement, no party shall have express or implied authority to bind or represent any other party for any purpose whatsoever unless expressly agreed in writing by the party concerned.

      e)    Should Licensee becomes aware of any unauthorized usage of Karaoke Works, Licensee shall immediately so notify Licensor and shall provide Licensor with such assistance as Licensee may reasonably request at Licensor's cost. Licensor shall have the sole right to determine whether a proceeding should be brought against any third parties for infringement of or improper use of the Karaoke Works.

      **IN WITNESS WHEREOF**, the parties hereto have caused their duly authorized representatives to execute this Agreement as of the date set forth above.

| Entral Group International LLC | [Licensee] |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Name: Nicolas Chai | Name: Dean Lui |
| Title: President | Title: President |

7

## Exhibit A
## Licensing Fee Calculation

|   | Description / Instruction | Venue Information | | Licensing Fee Calculation | |
|---|---|---|---|---|---|
|   |   | Pre-filled Data | Correct Data | According to Pre-fill data | According to Corrected data |
| A | Number of Rooms |   |   |   |   |
| B | Number of Monitors | 8 |   |   |   |
| C | Enter the higher number from row A or B | 8 |   |   |   |
| D | Annual Licensing Fee Per Venue / Location |   |   | $18000 |   |
| E | Annual Licensing Fee Per Monitor / Room |   |   | $1000 |   |
| F | Annual Licensing fee for all monitor or room | Multiple row C to row E | | $8000 |   |
| G | Total Annual Licensing Fee | The sum of row A and F | | $26000 |   |
| H | Less 20% discount |   |   | $5200 |   |
| I | Total Annual Licensing Fee Due |   |   | $20800 |   |

The 20% discount is one-time early sign up promotion and is only applicable if the Sub-licensee completes the contract and submits the appropriate licensing fee on or before December 1, 2003.

Entral Group International LLC reserves the right to change the fee schedule without prior notice.

Payment Schedule

| Upon Contract Execution | $5,200 |
|---|---|
| February 1, 2004 | $5,200 |
| March 1, 2004 | $5,200 |
| April 1, 2004 | $5,200 |

8

## EXHIBIT B

### Declaration of Venue Information

| | |
|---|---|
| Corporation Name | ABC Target Inc. |
| D/B/A (if applicable) | Galaxy 45 |
| Venue Address | 45 Mott Street, Basement, New York, NY 10013 |
| Mailing Address (if different from above) | |
| Business Phone | 212-693-1888 |
| Contact Person | Mr. Dean Lui |
| Title | President |
| Other Contact Numbers | |
| Number of Monitors | 8 |
| Number of Rooms | 8 |

I am hereby to certify that the above information is all true to my best knowledge and I am authorized to provide this information. I am also understand that Entral Group International LLC shall have the right to visit the venue during its business hours to audit the provided information. I am also understand that Entral Group International LLC will have the right to assess different or additional licensing fees.

| | |
|---|---|
| Authorized Signature | X  /s/ *[signature]* |
| Print Name | Dean Lui |
| Title | President |
| Date | 1/13/2004 |

9

## EXHIBIT C

## List Of The Publisher or Owner

- BMG Hong Kong Limited
- Go East Entertainment Company Limited
- Cinepoly Records Company Limited
- What's Music International (HK) Limited
- Warner Music Hong Kong Ltd.
- Emperor Entertainment Group
- Universal Music Limited
- EMI Group Hong Kong Limited

10